Nos. 25-1018, 25-1019, 25-1024

# In the United States Court of Appeals for the Fourth Circuit

Jefferson Griffin,

*Petitioner-Appellee,*

*v.*

North Carolina State Board of Elections,

*Respondent-Appellant,*

and

Allison Riggs, et al.,

*Intervenors-Respondents.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

## OPPOSITION TO MOTION TO EXPEDITE

| | |
|---|---|
| Mark M. Rothrock | Kyle D. Hawkins |
| Lehotsky Keller Cohn LLP | *Counsel of Record* |
| 8513 Caldbeck Drive | William T. Thompson |
| Raleigh, NC 27615 | Lehotsky Keller Cohn LLP |
| (336) 416-3326 | 408 W. 11st Street, 5th Floor |
| mark@lkcfirm.com | Austin, TX 78701 |
| | (512) 693-8350 |
| | kyle@lkcfirm.com |

*Counsel for Petitioner-Appellee*

Justice Riggs's motion to expedite insists that this dispute must be resolved swiftly—but the most efficient way to achieve a swift (and just) final outcome is to allow the Supreme Court of North Carolina to decide the weighty and complex issues of state law at the heart of this case, without impediment or distraction. The Supreme Court has given every indication that it will do so. It has ordered an extraordinarily accelerated briefing schedule, with Judge Griffin's opening brief due in six days, the Board's opposition due a week later, and reply briefing due 16 days from today—making this case ripe for decision before the end of this month. There is no need to divert the parties from that process—and delay resolution of this case— through parallel expedited briefing in this Court on federal procedural issues unrelated to the merits of Judge Griffin's state-law claims.

To the extent the motion to expedite complains of potential delays in federal court proceedings, those delays are entirely self-inflicted and unnecessary. The Supreme Court was prepared to decide this dispute swiftly many weeks ago before it was improperly removed to federal court. The district court below correctly recognized that these complex state law issues should be resolved by state courts, and remanded them accordingly. The motion to expedite now asks this Court to derail the orderly process already underway in state court by deciding, several weeks (if not months) from now, whether the district court's abstention decision was correct, all in the name of relitigating the merits of this dispute in federal court

notwithstanding any decision the Supreme Court of North Carolina might issue in the meantime.

It does not have to be this way. The speediest and most just way to resolve this dispute is to allow the Supreme Court of North Carolina to issue its merits decision unimpeded. That should be the parties' focus—not expedited briefing deadlines on ancillary and unnecessary federal abstention questions. And there is no reason for the federal courts to enter into a race to a decision with the Supreme Court of North Carolina, which has an insurmountable head start.

The motion to expedite should be denied.

1.     This case arose when Judge Griffin identified that thousands of individuals cast ballots in violation of state law. In response, he filed election protests, requesting a correction to the vote count. D.E. 1-4 at 18-21.[1] Contrary to Justice Riggs's arguments here, Mot. at 2-3, 6, Judge Griffin's protests only alleged violations of state law—he did not contend that any federal law supported relief, D.E. 1-5 at 10-30.

2.     After the Board denied Judge Griffin's protests, he sought review of that decision by the North Carolina Supreme Court by filing a petition for writ of prohibition. *See generally* D.E. 1-4. That petition argued that the Board

---

[1] Citations to "D.E." throughout this brief refer to docket entries found on the district court docket for this case, *Griffin v. North Carolina State Board of Elections*, No. 5:24-cv-00724-M-RN (E.D.N.C.).

2

erred when it denied his protests on state-law grounds. *See generally id.* It also contended that the court should reject the federal defenses that the Board had raised as alternative grounds to deny his protests. *Id.* Indeed, Judge Griffin argued that the federal statutes the Board had raised—the National Voting Rights Act and the Help America Vote Act—have "nothing to do" with this case. D.E. 1-4 at 40; *cf.* Mot. at 3. There are no "substantial" questions of federal law in this case. *Cf.* Mot. at 2; D.E. 50 at 11 (concluding that "no issue of federal law is *necessarily* raised" here).

3.   Justice Riggs claims that, by filing his protests and petition, Judge Griffin is seeking to "retroactively gerrymander a win." Mot. at 2. That could not be further from the truth. The state election laws upon which his claims are based were all in effect years before the November 2024 general election. *See* N.C. Const. of 1776, art. VIII; N.C. Const. art. VI, §§ 2(1), (4), 3(2); N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1). Asking a court to enforce them will therefore not result in a "retroactive change" in the state's voting laws. Mot. at 2. Instead, it will hold the Board accountable for disregarding those laws, and will thereby serve the important public interest in election integrity that those laws ensure. *See, e.g., Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Vote.Org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023). It will also ensure that the millions of other North Carolina voters who followed state law when they voted are not disenfranchised by having their votes diluted by unlawful ballots. *See Bush v. Gore,* 531 U.S. 98,

3

105 (2000); *Reynolds v. Sims,* 377 U.S. 533, 555 (1964); *James v. Bartlett,* 359 N.C. 260, 270 (2005).

      4.      The Supreme Court of North Carolina is clearly the best-positioned court to decide the complex state-law questions on which Judge Griffin's petition turns. The state laws upon which Judge Griffin's based his protests and petition do not incorporate by reference federal law. *See, e.g.,* N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-230.1(e)(3). That sets this case apart from *Republican National Committee v. North Carolina Board of Elections*, 120 F.4th 390, 401 (4th Cir. 2024) (finding removal appropriate where the state law under which the plaintiffs' claims arose, N.C. Gen. § 163-82.11(c), simply required the Board to "meet the requirements of [S]ection 303(a) of [HAVA]"). *Cf.* Mot. at 2-3. The North Carolina Supreme Court is therefore best positioned to decide the unsettled and difficult issues of state election law presented in this case. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940). And to the extent the Supreme Court of North Carolina may need to decide ancillary federal questions, it is well positioned to do so, since "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The U.S. Supreme Court has "consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). And the U.S. Supreme Court has repeatedly reaffirmed that "'there is no intrinsic reason why the fact that a man is a federal judge

4

should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Titlow*, 571 U.S. at 19 (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

5. Before the North Carolina Supreme Court could decide Judge Griffin's petition, however, the Board removed that proceeding to federal court. D.E. 1. Upon studying the Board's arguments, the district court remanded the case to the state's highest court, abstaining under *Burford* based on its correct determination that this case rests upon unsettled questions of state law and involves the state's paramount interest in governing elections for state offices. D.E. 50. Indeed, Judge Griffin had raised abstention as grounds for remand in his motion for a preliminary injunction, D.E. 39 at 9-10, but the Board and Justice Riggs failed to respond to that argument, *see generally* D.E. 39, 40. And while Justice Riggs contends that *Burford* abstention does not apply here, that this case involves challenges to votes does not mean that abstention was inappropriate. To the contrary, many courts—including this one—have employed abstention in cases involving voting rights. *See, e.g.*, *Wise v. Circosta*, 978 F.3d 93, 100-03 (4th Cir. 2020); *cf.* Mot. at 4.

6. The district court's remand was effective immediately. *See Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007). And since then, the North Carolina Supreme Court has acted quickly. On January 7, 2025, it entered a stay prohibiting the Board from issuing a certificate of election and it entered a briefing schedule which will render Judge Griffin's

5

petition ripe for a decision before the end of this month, likely before this Court's late-January sitting. *See* Dkt. 10 App'x at 91-92 (North Carolina Supreme Court's briefing order); Mot. at 6. It is therefore that court's proceedings which promise to deliver the "fast-paced" resolution to Judge Griffin's election protests contemplated by state law. *Bouvier v. Porter*, 900 S.E.2d 838, 850 (N.C. 2024).

7. The motion to expedite, if granted, would achieve nothing more than to sidetrack the parties from swiftly obtaining a final and just resolution to their dispute in the North Carolina Supreme Court. Parallel merits briefing in both this Court (on ancillary federal questions about abstention doctrines) and in the North Carolina Supreme Court (on the core merits questions) is not only inefficient and burdensome on everyone, but it also threatens to delay further the final resolution that the motion to expedite claims is critical. Even if this Court were to find—in February, or in the weeks or months thereafter—that the district court's abstention were improper, there will have been even more proceedings (and perhaps a merits decision) in the Supreme Court of North Carolina. That all but guarantees the "'rat's nest of comity and federalism issues'" that the Board has insisted this Court should avoid. *See* Dkt. 10 at 23 (quoting *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 16-cv-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016)).

## CONCLUSION

The motion to expedite should be denied.

                                                        Respectfully submitted.

|  |  |
|---|---|
| Mark M. Rothrock | /s/ *Kyle D. Hawkins* <br> Kyle D. Hawkins |
| LEHOTSKY KELLER COHN LLP | *Counsel of Record* |
| 8513 Caldbeck Drive | William T. Thompson |
| Raleigh, NC 27615 | LEHOTSKY KELLER COHN LLP |
| (336) 416-3326 | 408 W. 11st Street, 5th Floor |
| mark@lkcfirm.com | Austin, TX 78701 |
|  | (512) 693-8350 |
|  | kyle@lkcfirm.com |

                                                        *Counsel for Petitioner-Appellee*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2025 this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

                                                        /s/ *Kyle D. Hawkins* <br>
                                                        Kyle D. Hawkins

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this motion complies with Fed. R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), and Local Rule 27.

Dated: January 8, 2025

                                                        /s/ *Kyle D. Hawkins* <br>
                                                        Kyle D. Hawkins