Nos. 25-1018, 25-1019, 25-1024

# In the United States Court of Appeals for the Fourth Circuit

JEFFERSON GRIFFIN,

*Petitioner-Appellee,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Respondent-Appellant,*

*and*

ALLISON RIGGS, ET AL.,

*Intervenors-Respondents.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

## OPPOSITION TO STAY

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
 *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com

*Counsel for Petitioner-Appellee*

# Table of Contents

Page

Introduction................................................................1

Background ................................................................3

Standard of Review ........................................................3

Argument..................................................................4

    I.   A stay is substantively and procedurally improper. ..........................4

        A.  This case has already been remanded, so a stay would
not accomplish anything..............................................5

        B.  The Board does not identify the status quo that a stay
would maintain pending appeal.......................................7

        C.  The Board failed to seek relief in district court and does
not show that moving first in the district court would
have been impracticable..............................................8

    II.  The *Nken* factors do not support a stay. .................................9

        A.  The Board is unlikely to succeed on the merits of its
appeal...............................................................9

        B.  The Board faces no prospect of irreparable harm absent
a stay. .............................................................17

        C.  The relief the Board requests will irreparably harm
Judge Griffin and will not serve the public interest...................19

Conclusion................................................................21

# Introduction

The Board's stay request is fundamentally unsound because it asks this Court to stay an event that has already happened. On January 6, the district court remanded these actions to the North Carolina state courts, where Judge Griffin originally brought them. The district court below consummated and effectuated that remand through the issuance of a formal order and accompanying letter. *See* Mot. App'x at 31. At that very moment, the federal district court lost—and the North Carolina courts reacquired—jurisdiction. 28 U.S.C. § 1447(c); *see Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007) ("the state court regained jurisdiction when the district court remanded . . . to state court"); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438 (5th Cir. 2001) ("Once the remand order is certified and mailed, however, the matter remanded is removed from federal jurisdiction."). Recognizing the need for "expeditious[]" resolution, the Supreme Court of North Carolina stayed the Board's certification of the 2024 election for Seat 6 on the Supreme Court of North Carolina and set an expedited schedule to complete briefing by January 24, 2025. *See* Mot. App'x at 91-92. Indeed, Petitioner's opening brief is due today. *See id.*

This Court can no more stay the effectuated remand order below than it can stay publication of last Monday's *New York Times*. The Board's lead case confirms as much. The Board relies on *Forty Six Hundred LLC v. Cadence Education, LLC*, 15 F.4th 70, 79 (1st Cir. 2021), to support the need to "preserve

the Board's right to appeal," Mot. at 5. But *Cadence* itself recognizes that once a remand has already occurred, "there [i]s nothing left for [the appellate] court to stay," which is why the appellant there wisely withdrew its stay motion. 15 F.4th at 73 n.2. And the so-called "retrieval" relief that court ordered came at the judgment stage, following plenary review on the merits. The Board does not cite a single case—and Judge Griffin knows of none—in which a federal appellate court purported to stay a remand order that had already been effectuated.

Not only can a stay not stop an event that has already happened—it also cannot compel a district court to request the "retrieval" of a case currently being litigated and briefed in state courts. Stays exist merely to stop a lower-court decision from "taking effect." *Nken v. Holder*, 556 U.S. 418, 425 (2009); *see also id.* at 429 (explaining that, unlike an injunction, a stay does not "direct[] an actor's conduct"). Here, the relevant decision has *already* "tak[en] effect." *Id.* at 425. The office of the stay simply does not contemplate injunctive-style orders commanding the district court to take affirmative acts, and the Board cites no example to the contrary.

A stay is thus off the table. In any event, the Board's request fails because each *Nken* factor weighs against a stay. First, the Board is unlikely to prevail on appeal because the district court correctly abstained from deciding complicated questions of state law. And there are multiple independent bases to affirm the decision below, as the district court lacked removal jurisdiction. Second, the Board faces no harm absent a stay; a stay that somehow purports

to block an event that already occurred will have no impact on anything or anyone. Finally, the public interest and equities all counsel against the imposition of a stay that will impact nothing, and they all counsel in favor of the correct application of North Carolina law and a swift resolution of the merits of this case.

The application for a stay should be denied.

## Background

Judge Griffin's briefing on the administrative stay sets out the relevant background. *See* Dkt. 17. The only relevant addition to that history is that, after the parties' completed briefing on the administrative-stay motion, this Court entered an order "defer[ring] all other motions pending oral argument," which is set for January 27, 2025. Dkt. 33.

## Standard of Review

The Board's motion for a stay fails to explain this Court's standard of review. The extraordinary remedy of a stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation omitted). As "[t]he party requesting a stay," the Board "bears the burden of showing that the circumstances justify" a stay based on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially

3

injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433-34 (citation omitted).

Because the Board challenges a decision committed to the district court's sound discretion, it cannot prevail absent "a strong showing" that the district court abused that discretion. *Id.* at 434 (citation omitted). "This Court reviews a district court's decision to abstain for abuse of discretion." *Hennis v. Hemlick*, 666 F.3d 270, 274 (4th Cir. 2012). This standard of review is highly deferential, *see Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 101 (4th Cir. 2022), and a district court's exercise of discretion is permissible "even if an appellate court suspects that it might have ruled otherwise in the first instance," *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002).

## ARGUMENT

## I. A stay is substantively and procedurally improper.

The Board's motion for a stay should be dead on arrival because a stay is unavailable in this context. First, the remand has already occurred, and "there [i]s nothing left for this court to stay." *Cadence Educ.,* 15 F.4th at 73 n.2. A stay thus "would be pointless" and "a futile gesture." *Int'l Found. for Genetic Rsch. (Michael Fund) v. Shalala*, 57 F.3d 1066 (4th Cir. 1995) (per curiam) (unpublished table decision); *see also GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 376 (6th Cir. 2007) ("issuing a stay now would be a futile exercise of our equitable powers"). Second, the Board does not identify a status quo that the stay would maintain. Third, the Board neither sought a stay in district court

nor showed why doing so would have been impracticable, in violation of
Rule 8.

### A.   This case has already been remanded, so a stay would not accomplish anything.

Because stays exist to prevent a district court's order from "taking ef-
fect," they should not issue when an order has *gone* into effect, as is the case
here. *Nken*, 556 U.S. at 425; *see also United States v. Texas*, 144 S. Ct. 797, 798
(2024) (Barrett, J., concurring in denial of applications to vacate stay) (ex-
plaining that stays generally exist to prevent a district court's order from
"go[ing] . . . into effect"). The office of a stay is to "temporarily divest[] an
order of enforceability." *Nken*, 556 U.S. at 428; *see also id.* at 428-29. But the
district court's remand order is not some ongoing injunction—it was a sin-
gular act with an immediate effect that has already been completed and con-
summated, as the Board admits. Mot. at 5 ("[T]he district court has already
returned this case to state court"); *id*. at 22 ("[T]he district court also imme-
diately entered an order effecting that remand"). Just as a court "cannot stay
the execution of a judgment that already has been executed," *GenCorp*, 477
F.3d at 376, neither can this Court stay execution of an interlocutory order
that already has been executed.

The Board's contrary argument rests primarily on two cases, but both
cases counsel against a stay. First, the Board relies on *Cadence Education*, but
as noted above, *Cadence Education* recognizes that once the remand has al-
ready happened, "there [i]s nothing left for this court to stay." 15 F.4th at 73

5

n.2; *accord Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 392 (5th Cir. 2006) (noting that, aside from any "future proceedings" in federal court, "there was nothing left for the district court to stay" after it had remanded an action to state court). Moreover, just three years later, in *United States v. Sastrom*, the First Circuit declined to extend *Cadence Education*'s remedy to a transfer case where "[t]he likelihood of this process providing any practical benefit to [the movant] is remote." 96 F.4th 33, 40 (1st Cir. 2024).

Here, because there is no "formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court," the most this Court could do following full plenary review on the merits is order the district court to "request the[] return" of the remanded cases. *Cadence Educ.*, 15 F.4th at 80 (citation omitted); *but see Nken*, 556 U.S. at 429 (indicating that stays do not provide a court of appeals with authority to "direct[] an actor's conduct"). But there is no reason to believe the state courts would send the cases back. And there is every reason to believe they will not: They have already expended judicial and party resources exercising their jurisdiction, issuing orders, and directing the parties to prepare briefs to resolve questions of state law. Indeed, Judge Griffin's opening brief in his case before the Supreme Court of North Carolina is due today. Mot. App'x at 92. The Board emphasizes that the Supreme Court decided to proceed "expeditiously" "in the absence of a stay from federal court," *id.* at 91, but that supports Judge Griffin's point: The Supreme Court determined that it could hear the merits of Judge Griffin's petition because the federal court *had not* entered a stay of

its order *before* the remand took effect. It does not suggest that the Supreme Court would voluntarily transfer jurisdiction back to the federal district court (even assuming such a procedure existed) based on issuance of a "stay" order at this point.

Second, the Board cites *Republican National Committee v. North Carolina State Board of Elections*, but in that case, the district court "stayed remand until [a date certain] to allow for [an] appeal." No. 24-2044 (4th Cir. Oct. 21, 2024), Dkt. 21 at 5-6. Here, the district court did not impose a stay but instead effectuated the remand due to the urgency of the pending preliminary injunction motion—leaving nothing to stay.

The Board cites no case in which a federal appellate court stayed a remand that had already happened. Judge Griffin is aware of no such case. The reason is obvious—no such relief is available.

## B.    The Board does not identify the status quo that a stay would maintain pending appeal.

The purpose of a stay is to "suspend[] judicial alteration of the status quo." *Nken*, 556 U.S. at 429 (citation omitted). But the Board neither identifies the status quo it is trying to maintain in its motion for a stay, nor in the reply it filed to its motion for an administrative stay. That is because when the Board filed its stay motion in this Court, the case had already been transferred to the North Carolina state courts, and those courts had already exercised that jurisdiction to issue orders. As things stand today, this case is

7

being actively litigated in state courts. The Board's requested stay will thus upend the status quo.

**C.    The Board failed to seek relief in district court and does not show that moving first in the district court would have been impracticable.**

Last, the Board failed to follow Rule 8's directive to "move first in the district court" for a stay, Fed. R. App. P. 8(a)(1)(A), and that is an additional basis to deny relief, *see, e.g.*, *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (explaining that movant's failure to move first in the district court for a stay or explain why doing so was impracticable "constitutes an omission we cannot properly ignore" and thus denying the motion); *see also Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020) ("The State's failure to show the impracticability of moving first in the district court is sufficient grounds to deny its motion."); *Hirschfeld v. Bd. of Elecs. in City of N.Y.*, 984 F.2d 35, 38 (2d Cir. 1993) (explaining that by not first moving for a stay in the district court, the movant failed to "follow proper appellate procedure in their motion for a stay").

Despite the Board now having had two opportunities to address its failure to follow appellate procedure—both in its motion and its reply in support of an administrative stay—the Board's only argument on this point is contained in a single footnote. There, it asks the Court to overlook this defect by claiming that the district court's immediately effective remand order "den[ied] the Board the opportunity to seek a stay in district court." Mot. at

11 n.3. But that undercuts the very premise of the Board's stay motion: If the district court had no power to enter a stay post-remand, then neither does this Court. If the Board thinks otherwise, it does not explain why or cite a single case in support.

## II. The *Nken* factors do not support a stay.

The Board has not carried its burden on any of the *Nken* factors. The Court should therefore deny its motion for a stay pending appeal.

### A.    The Board is unlikely to succeed on the merits of its appeal.

The Board is unlikely to prevail on appeal because the district court did not abuse its discretion by abstaining in favor of the Supreme Court of North Carolina in a case centered on state-law disputes "of statewide significance." D.E. 1-5 at 44. Moreover, this Court can affirm on an alternative ground— the district court lacked removal jurisdiction under section 1443(2).

#### 1.    The district court properly abstained from resolving Judge Griffin's complex questions of state law.

For at least three reasons, the district court properly exercised its discretion to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).

First, the district court correctly found that this case involves difficult and "unsettled questions" of state election law that "lie at the heart of state sovereignty and [the] right to self-government." D.E. 50 at 23-24. The answers to those questions "could sway the outcome of a state election and affect the right to vote" in "future *state* elections." *Id.* at 24 (emphasis in

9

original). Judge Griffin's protests raise serious state-law questions that the
Supreme Court of North Carolina has not "conclusively" decided. *Wise v.
Circosta*, 978 F.3d 93, 101 (4th Cir. 2020). And those provisions are part of a
complex state-law framework governing state elections—a "matter commit-
ted primarily to the control of states." *Hutchinson v. Miller*, 797 F.2d 1279,
1280 (4th Cir. 1986). That makes this a classic case for abstention, one pre-
senting "difficult questions of state law bearing on policy problems of sub-
stantial public import whose importance transcends the result in the case
then at bar." *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 719 (4th Cir. 1999) (cita-
tion omitted).

Second, the district court held that deciding this case would force it to
make "'a dubious and tentative forecast'" about unsettled state-law ques-
tions, risking the creation of a "'patchwork of inconsistent interpretations.'"
D.E. 50 at 24 (citations omitted). Abstention is appropriate when a federal
decision "would be disruptive of state efforts to establish a coherent policy
with respect to a matter of substantial public concern." *Johnson*, 199 F.3d at
719 (citation omitted). That applies doubly in this case, where the wrongful
removal of this case to federal court prevented the Supreme Court of North
Carolina from giving an authoritative answer to those state-law questions.
With the Supreme Court of North Carolina "ready to act," abstention made
sense. *Wise*, 978 F.3d at 103; *see also* Mot. App'x at 91-92.

Third, the district court concluded that the "primacy of state law issues"
and the "relatively tenuous federal interest" in this case favored abstention.

D.E. 50 at 24-25; *Johnson*, 199 F.3d at 723 ("[T]he predominance of state law issues affecting state public policy" should cause federal courts to exercise "caution."). Indeed, Judge Griffin's protests and petition arise under state laws, none of which "implicate federal elections." D.E. 50 at 25; *see generally* D.E. 1-4. And the federal statute supposedly justifying removal here applies only to federal elections, *see* 52 U.S.C. § 20507, so its connection to this case is "dubious." D.E. 50 at 25. The district court therefore correctly abstained.

Although the Board did not respond to Judge Griffin's abstention arguments below, its motion for a stay raises several arguments for the first time. As an initial matter, this Court should "decline to address" the Board's new arguments because the Board "failed to raise the issue to the district court." *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568, 578 (4th Cir. 2019).

In any event, the Board's arguments fail. The Board first contends that abstention does not apply in cases removed under section 1443, *see* Mot. at 14, but there is no such exception to the Supreme Court's abstention precedents. There are multiple decisions abstaining in section 1443 removals. *See Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) ("[a]lternatively" affirming a decision to abstain in a case purportedly removed under section 1443); *Sones v. Simpson*, No. 4:10-cv-2475, 2010 WL 5490801, at *5 (M.D. Pa. Dec. 3, 2010), *report & recommendation adopted*, 2011 WL 13666 (M.D. Pa. Jan. 4, 2011) (abstaining under *Younger* "[e]ntirely aside from . . . the scope of 28 U.S.C. § 1443"). The Board's sole authority is an old, out-of-circuit decision that

11

devoted a single sentence of dicta to the topic even though the parties did "not address abstention" on appeal. *Greenberg v. Veteran*, 889 F.2d 418, 422 (2d Cir. 1989).

Next, the Board argues that abstention is categorically inappropriate in voting-rights cases, *see* Mot. at 15-16, but this Court recently chose to abstain in just such a case. *See Wise*, 978 F.3d at 100-03 (abstaining under *Pullman* in a vote-dilution case). Other courts likewise "have stated that 'traditional abstention principles apply to civil rights cases,' including election-law cases involving important and potentially dispos[i]tive state-law issues." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (citation omitted). Judge Costa, then of the Fifth Circuit, was quick to declare a recent Texas voting-rights case "a textbook case for *Pullman* abstention." *Id.* at 417 (Costa, J., concurring in the judgment); *see also id*. at 418 (rejecting argument "that *Pullman* does not apply to voting rights cases"); *see also Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009); *Harrison v. NAACP*, 360 U.S. 167, 176-77 (1959). "[I]t is clear that there is no rule" providing "that there should not be abstention in civil rights cases." 17A *Federal Practice and Procedure* § 4242 (3d ed.) (collecting cases).

The Board also cites this Court's recent decision in *Republican National Committee v. North Carolina State Board of Elections* ("*RNC*") and further contends that federal interests predominate because North Carolina has a "'unified'" registration system for federal and state elections and because some of the state statutes underlying Judge Griffin's claims "relate[]" to federal laws.

Mot. at 18 (quoting 120 F.4th 390, 401-02 (4th Cir. 2024)). But as this Court explained in *RNC*, that unified system implicated federal law only because the plaintiffs in that case raised challenges related to both state *and* federal elections. *See RNC*, 120 F.4th at 399 (indicating that the plaintiffs' claims implicated voter registrations for both state and federal elections); *id.* at 401 ("Plaintiffs filed their Complaint 74 days before the November *federal election*[.]" (emphasis added)). This case, however, involves only a state election. None of the federal statutes cited by the Board apply to state elections, and none of the relevant state statutes incorporate federal law by reference. *See* D.E. 49 at 14-17.

Further, the Board argues that *Burford* abstention is inappropriate because this case does not present "difficult" questions of state law. Mot. at 19 (citation omitted). But Judge Griffin's claims require resolution of complex issues, such as whether the photo identification requirements in Article 20 of the General Statutes apply to overseas absentee voters casting ballots under Article 21A, or whether N.C. Gen. Stat. § 163-258.2 violates the residency requirement in Article VI, § 2(1) of the state constitution. *See generally* D.E. 1-4. "None of the parties have suggested or argued that state courts have already settled [these] issue[s] conclusively." *Wise*, 978 F.3d at 101. And interpretation of this complex system of *state* election laws necessarily implicates the need for uniform treatment of a "local problem." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989). Although the Board would have a federal court decide these state constitutional and

statutory questions, that would run afoul of the "comity" concerns that underlie the abstention doctrines. D.E. 50 at 20-21 (citation omitted); *see Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 149 (4th Cir. 2024) (explaining that "comity" is a "vital consideration" when determining whether abstention is appropriate); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) ("Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) (explaining that it is "fundamental" that state courts should be "left free and unfettered by [federal courts] in interpreting their state constitutions").

Finally, the Board takes issue with the district court's invocation of *Thibodaux*. But the district court merely noted *Thibodaux*'s reasoning that federal courts should abstain in "cases raising issues intimately involved with the State's sovereign prerogative" supported its decision to abstain under *Burford*. D.E. 50 at 21, 24. That application of *Thibodaux* squares with this Court's explanation that "[o]verlapping rationales motivate these doctrines and considerations that support abstaining under one will often support abstaining under another." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007); *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9 (1987) ("The various types of abstention are not rigid pigeonholes into which federal courts must try to fit

cases"). Indeed, for that very reason, *Pullman* abstention further supports the district court's decision to remand and provides an alternative basis to affirm its decision. D.E. 49 at 6-8; *see Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983) (explaining that *Pullman* abstention is appropriate where "there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is 'potentially dispositive'.").

*     *     *

The Board has not demonstrated any error in the district court's abstention analysis, and even if this Court thought it "might have ruled otherwise in the first instance," that is not enough to show an abuse of discretion warranting reversal. *Evans*, 304 F.3d at 348.

### 2. There is at least one alternative basis to affirm the decision below.

Regardless of how this Court views the abstention issue, the district court's decision is likely to be affirmed on appeal for at least one independent and alternative reason: Removal under section 1443(2) was jurisdictionally improper. The Court "may affirm on any ground supported by the record" even if the district court did not adopt it. *United States v. Williams*, 56 F.4th 366, 371 n.4 (4th Cir. 2023).

By its terms, section 1443(2) applies only when a defendant is sued "for *refusing* to do an[] act," not when a defendant is sued for *acting* affirmatively

15

or threatening to do so. 28 U.S.C. § 1443(2) (emphasis added). A "state court action" is not removable when it "is not brought against the . . . Defendants 'for refusing to do' anything." *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020).

Judge Griffin's petition does not challenge any refusal to act. By requesting "a writ of prohibition to stop the State Board of Elections from counting unlawful ballots," it seeks to prevent the Board from taking unlawful action. D.E. 1-4 at 14. It does not seek "to punish [the Board] for refusing to do any act." *Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (affirming remand to state court); *see also McQueary v. Jefferson County*, 819 F.2d 1142 (6th Cir. 1987) (per curiam) (unpublished table decision) (state officials who were sued for firing employees could not invoke § 1443(2) because they were not being sued for "refusing to do any act inconsistent" with federal law); *Wolpoff v. Cuomo*, 792 F. Supp. 964, 968 (S.D.N.Y. 1992) (the refusal clause does not allow "legislators who are sued because of the way they cast their votes[] to remove their cases to federal courts"); *Mass. Council of Constr. Emps., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980) (holding section 1443(2)'s refusal clause did not permit removal because "the defendants' actions, rather than their inaction, are being challenged").

## B. The Board faces no prospect of irreparable harm absent a stay.

The Board claims that, "[w]ithout a stay," the district court's remand order "*could*" render its "'appeal nugatory by prematurely returning the case to the state court.'" Mot. at 22 (emphasis added). But as an initial matter, the "the fact that an appeal may become moot without a stay does not alone constitute irreparable harm." *In re Alpha Nat'l Res., Inc.*, 556 B.R. 249, 264 (Bankr. E.D. Va. 2016).

In any event, none of the Board's concerns justify a stay. First, the Board's argument that it will suffer irreparable harm at bottom rests on the faulty premise that the Supreme Court of North Carolina is not competent to decide the ancillary federal questions the Board has injected into this case. Not so. That court is well positioned to address those questions. "State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The Supreme Court has "consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). And the Supreme Court has repeatedly reaffirmed that "'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Titlow*, 571 U.S. at 19 (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)). Indeed, Justice Allen concurred in the Supreme Court's order granting a stay to "stress" that that order "should not

17

be taken to mean that Judge Griffin will ultimately prevail on the merits," and that the stay simply gives that court "adequate time to consider the arguments made by Judge Griffin in his petition[.]" *Griffin v. State Bd. of Elecs.*, No. 25-1020 (4th Cir.), Dkt. 7 at 17. Moreover, Justices Earl and Dietz dissented, expressing doubts that Judge Griffin will succeed on the merits of some or all his claims. *Id.* at 21-25, 27. Although Judge Griffin disagrees with that conclusion, these separate opinions clearly indicate that the Supreme Court of North Carolina is considering this case in a "conscientious" manner. *Titlow*, 571 U.S. at 19.

Second, even if this Court could "order a district court to retrieve an improperly remanded case," Mot. at 23, as the final disposition to this appeal, it cannot order that effectively injunctive relief now. Stays are used to prevent a lower court's ruling from "go[ing] into effect," *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring in denial of applications to vacate stay), not to order a district court to undertake affirmative acts, *see Nken*, 556 U.S. at 429 (explaining that unlike an injunction, a stay does not "direct[] an actor's conduct"); *Kansas v. United States*, No. 24-3521, 2024 WL 5242428, at *1 (8th Cir. Dec. 23, 2024) (same).

Third, the Board complains that without a stay, "if this Court were to ultimately reverse, the district court and state court would need to sort out what to make of the state-court proceedings that have transpired in the meantime." Mot. at 24. But a stay cannot prevent state-court proceedings from occurring because they have already occurred. The Supreme Court of

North Carolina has already "entered rulings . . . in the interim period," *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16-cv-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016)—including an order prohibiting the Board from issuing a certificate of election. Granting a stay would therefore force the state and federal courts into the very "rat's nest of comity and federalism issues" that the Board says it wants to avoid, Mot. at 24 (citation omitted).

### C.   The relief the Board requests will irreparably harm Judge Griffin and will not serve the public interest.

A stay, which merely prevents an order from taking effect, would have no real-world consequences at this point, so it would neither prevent irreparable harm to the Board nor impose irreparable harm on Judge Griffin. But to the extent the Board's request goes beyond a stay and takes the form of what the Board calls a "retrieval" order, that remedy would inflict irreparable harm on Judge Griffin and harm the public interest.

As the Board conceded below, Judge Griffin faces obvious irreparable harm from the Board's effort to certify the election based on unlawful votes. *See* Mot. App'x at 76 ("The Board does not dispute that certification will moot Petitioner's protests, and that this eventuality constitutes irreparable harm."). Remanding the matter to the Supreme Court of North Carolina has avoided this irreparable harm by allowing that Court to enter a temporary stay maintaining the status quo. Mot. App'x at 91-92. A stay of the remand

order would not accomplish anything, *see supra* Part I.A, but any relief beyond a stay would upend the status quo.

Moreover, the public interest favors allowing North Carolina courts to quickly decide pressing questions of North Carolina law. *See Pennhurst*, 465 U.S. at 106; *Nat'l Tea Co.*, 309 U.S. at 557. And if in doing so those courts must decide whether to reject the Board's purported federal defenses, that too will serve the public interest. For state courts are perfectly "adequate forums for the vindication of federal rights." *Titlow*, 571 U.S. at 19.

As the Supreme Court of North Carolina has already determined on remand, "this matter should be addressed expeditiously because it concerns certification of an election." Mot. App'x at 91. Indeed, Justice Riggs in her motion to expedite briefing acknowledges that the public has a strong interest in "finality and speed" in this case. Dkt. 18 at 5. Judge Griffin agrees—and the way to promote those virtues is allow state courts to resolve the merits.

The Supreme Court of North Carolina stands ready to decide Judge Griffin's claims in the "fast-paced" manner contemplated by the state's election laws. *Bouvier v. Porter*, 900 S.E.2d 838, 850 (N.C. 2024). Indeed, given its briefing order, that court will almost certainly decide this case once and for all in time for the prevailing candidate to participate in the Supreme Court's first sitting on February 11, 2025. Dkt. 18 at 6. A federal forum cannot offer such a swift resolution. Therefore, a stay will not serve the public interest.

20

## Conclusion

The Board's motion for a stay should be denied.


Respectfully submitted.

*/s/ William T. Thompson*

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
  *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com

*Counsel for Petitioner-Appellee*

## CERTIFICATE OF SERVICE

I certify that on January 14, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ William T. Thompson*
William T. Thompson

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this motion complies with Fed. R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), and Local Rule 27.

Dated: January 14, 2025

*/s/ William T. Thompson*
William T. Thompson