## 25-1018(L), 25-1019, 25-1024

# United States Court of Appeals
*for the*
# Fourth Circuit

⸺

JEFFERSON GRIFFIN,
*Plaintiff/Appellee,*

– v. –

NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendant/Appellant,*

and

ALLISON RIGGS; NORTH CAROLINA ALLIANCE FOR
RETIRED AMERICANS; VOTEVETS ACTION FUND;
TANYA WEBSTER-DURHAM; SARAH SMITH;
JUANITA ANDERSON,
*Intervenor-Defendants/Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# OPENING BRIEF OF APPELLANT
# ALLISON RIGGS

Samuel B. Hartzell
Raymond M. Bennett
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2100

*Counsel for Appellant Allison Riggs*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1024       Caption: Jefferson Griffin v. Allison Riggs

Pursuant to FRAP 26.1 and Local Rule 26.1,

Allison Riggs
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Samuel B. Hartzell     Date:     January 8, 2025

Counsel for: Allison Riggs

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 3

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ............................................................ 4

    A.   The Board Dismisses Judge Griffin's Protests ...................... 4

    B.   Judge Griffin Seeks Judicial Review While Trying to Circumvent Federal Jurisdiction ........................................... 5

    C.   The Board Removes the Action ............................................ 6

    D.   The District Court Remands Under *Burford* and *Thibodaux*................................................................................ 6

SUMMARY OF ARGUMENT ............................................................ 8

STANDARD OF REVIEW ................................................................. 9

ARGUMENT.................................................................................... 9

    I.    The District Court Erred by Abstaining Under *Burford* ........ 9

        A.   *Burford* Abstention Is Unavailable in Cases Removed Under 28 U.S.C. § 1443................................................. 11

            i.   Section 1443 Jurisdiction Is Not Discretionary . 12

            ii.   *Burford* Abstention Is Not a License for District Courts to Make Policy Determinations About the Desirability of Federal Adjudication .................. 14

        B.   The District Court Misapplied the *Burford* Analysis . 16

            i.   This Case Turns On Federal, Not State, Law .... 16

                a.   This Action Presents Federal Questions ... 17

b.  Federal Issues Predominate over Any State Law Issues .................................................... 20

ii.  This Action Would Not Disrupt a Complex, Unified State Administrative Scheme ................ 24

II.  The District Court's Citation to *Thibodaux* Does Not Justify Its Abstention Decision ........................................................ 25

III.  The Court Should Reverse the District Court's Abstention Ruling and Remand with Instructions to Deny Judge Griffin's Motion for a Preliminary Injunction ...................................... 27

CONCLUSION ......................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*BP P.L.C. v. Mayor & City Council of Baltimore,*
    141 S. Ct. 1532 (2021) ..................................................... 2, 4, 11, 13

*Bryan v. BellSouth Commc'ns, Inc.,*
    377 F.3d 424 (4th Cir. 2004) ........................................................... 3

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943) ................................................................ *passim*

*Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.,*
    633 F.3d 20 (1st Cir. 2011) ........................................................... 14

*City of Chicago v. Int'l Coll. of Surgeons,*
    522 U.S. 156 (1997) ......................................................... 17, 18, 19

*Dittmer v. Cty. of Suffolk,*
    146 F.3d 113 (2d Cir. 1998) ............................................................ 9

*Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.,*
    710 F.2d 170 (4th Cir. 1983) ......................................................... 26

*Erie Ins. Exch. v. Maryland Ins. Admin.,*
    105 F.4th 145 (4th Cir. 2024) .......................................................... 9

*Evans v. Cunningham,*
    335 F.2d 491 (4th Cir. 1964) ......................................................... 28

*Freeman v. Burlington Broadcasters, Inc.,*
    204 F.3d 311 (2d Cir. 2000) ..................................................... 17, 20

*Greenberg v. Veteran,*
    889 F.2d 418 (2d Cir. 1989) ..................................................... 11, 13

*Griffin v. Burns,*
    570 F.2d 1065 (1st Cir. 1978) .................................................. 29, 30

*Hammer v. U.S. Dep't of Health & Human Servs.,*
    905 F.3d 517 (7th Cir. 2018) ......................................................... 15

*Hendon v. N.C. State Bd. Elections,*
    710 F.2d 177 (4th Cir. 1983) .............................................. 29, 30, 31

*Jamison v. Wiley,*
  14 F.3d 222 (4th Cir. 1994) ...................................................... 13, 14

*Johnson v. Collins Entm't Co.,*
  199 F.3d 710 (4th Cir. 1999)......................................................... 24

*Kolibash v. Comm. on Legal Ethics of W. Virginia Bar,*
  872 F.2d 571 (4th Cir. 1989).......................................................... 14

*Lecky v. Va. State Bd. of Elections,*
  285 F. Supp. 3d 908 (E.D. Va. 2018)........................................ 21, 30

*Louisiana Power & Light Co. v. City of Thibodaux,*
  360 U.S. 25 (1959) ................................................................. *passim*

*Martin v. Stewart,*
  499 F.3d 360 (4th Cir. 2007)..................................................... *passim*

*McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.,*
  373 U.S. 668 (1963) ................................................................. 20, 21

*Middleton v. Andino,*
  488 F. Supp. 3d 261 (D.S.C. 2020) ................................................. 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1, (1983) .................................................................... 12, 20

*Nature Conservancy v. Machipongo Club, Inc.,*
  579 F.2d 873 (4th Cir. 1978)........................................................... 25

*New Hampshire Right to Life Political Action Comm. v. Gardner,*
  99 F.3d 8 (1st Cir. 1996) ................................................................. 28

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989) ................................................................. 10, 25

*Pullman-Standard v. Swint,*
  456 U.S. 273 (1982) .................................................................... 7, 28

*Quackenbush v. Allstate Ins. Co.,*
  517 U.S. 706 (1996) ............................................................... *passim*

*Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections,*
  827 F.3d 333 (4th Cir. 2016)........................................................... 28

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ........................................................... 11

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ....................................................................... 29

*Robertson v. Ball*,
    534 F.2d 63 (5th Cir. 1976) ............................................................ 13

*Sonoco Prod. Co. v. Physicians Health Plan, Inc.*,
    338 F.3d 366 (4th Cir. 2003) ..................................................... 7, 16

*Thermtron Prods., Inc. v. Hermansdorfer*,
    423 U.S. 336 (1976) ....................................................................... 15

*Toney v. White*,
    488 F.2d 310 (5th Cir. 1973) ......................................................... 31

*VonRosenberg v. Lawrence*,
    781 F.3d 731 (4th Cir. 2015) ........................................................... 9

*Westar Energy, Inc. v. Lake*,
    552 F.3d 1215 (10th Cir. 2009) ..................................................... 28

## Statutes & Other Authorities:

28 U.S.C. § 1441 .............................................................. 3, 6, 7, 19

28 U.S.C. § 1441(a) .................................................................. 3, 19

28 U.S.C. § 1442 ............................................................... 13, 14, 15

28 U.S.C. § 1442(a) .......................................................................... 13

28 U.S.C. § 1442(a)(1) ............................................................... 13, 14

28 U.S.C. § 1443 ...................................................................... *passim*

28 U.S.C. § 1443(2) .................................................................. *passim*

28 U.S.C. § 1447(d) ................................................................... 3, 13

52 U.S.C. § 10101(a)(2) .................................................................... 6

52 U.S.C. § 20507(c)(2)(A) ............................................................... 6

52 U.S.C. § 10307(a) .................................................................. 6

Supreme Court Calendars of Arguments,
https://appellate.nccourts.org/calendar.php?court=1 (last visited
    Jan. 14, 2025) ...................................................................... 27

N.C. Gen. Stat. § 163-182.10(d)(2)e .......................................... 4

N.C. Gen. Stat. § 163-182.14(b) ................................................. 5

N.C. Gen. Stat. § 163-22(*l*) ......................................................... 5

## INTRODUCTION

Plaintiff-Appellee Jefferson Griffin lost to Defendant-Appellant Allison Riggs in the November 2024 general election for North Carolina Associate Justice. Ever since the results were tabulated, Judge Griffin has been trying to overturn those results by throwing out over 60,000 votes cast by eligible voters who did nothing wrong.

Judge Griffin's efforts began with a series of election protests filed with Defendant-Appellant North Carolina State Board of Elections. The Board dismissed those protests under federal constitutional and statutory law. Judge Griffin then filed this action to reverse the Board's decision.

This case belongs in federal court, because federal law stands between Judge Griffin and the mass disenfranchisement he seeks. Judge Griffin is well aware of those federal obstacles; he filed this action directly in the N.C. Supreme Court on the mistaken belief that, by skipping the North Carolina trial and intermediate appellate courts, he could thwart federal jurisdiction.

Judge Griffin got the law wrong. The Board removed the action to the Eastern District of North Carolina, which found that removal was

1

proper under 28 U.S.C. § 1443(2)—a federal statute that "guarantees a federal forum for certain federal civil rights claims." *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1536 (2021).

The district court refused to provide that federal forum. Relying on the *Burford* and *Thibodaux* abstention doctrines, the district court decided that Judge Griffin's claims should be presented to a state court.

The district court's decision fails to grapple with the nature of the claims at issue here. Judge Griffin is suing state officers for refusing to violate federal civil rights law. Congress guaranteed a federal forum for these types of claims, and the district court was not free to make its own policy choice about the desirability of federal court review.

Judge Griffin's claims also present federal questions. He filed this action to overturn the Board's determination that federal law bars his election protests. It is inaccurate to say, as the district court did, that Judge Griffin's federal arguments are "simply an anticipatory effort at rebutting predictable federal defenses." JA317.

Judge Griffin is not predicting defenses; he is attacking the federal grounds that the Board cited for dismissing his protests. The success or failure of that attack turns on federal law and should be decided in

federal court. The district court erred by failing to recognize that strong federal interest, concluding instead that "the federal interest in this case is tenuous." JA323. That error permeated the district court's analysis.

This Court should reverse the district court's refusal to provide a federal forum for the federal claims and defenses at issue. The Court should also hold, in light of the federal interests at stake and need for prompt resolution of this election dispute, that Judge Griffin is unlikely to prevail in his effort to overturn the election results.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1441(a) because Judge Griffin brings claims arising under federal law. The district court also had jurisdiction under 28 U.S.C. § 1443(2). *See* JA327.

On January 6, 2025, the district court "abstain[ed] from reaching the merits" and "remand[ed] this matter." JA327. All defendants appealed by January 7. JA329–333. This Court has appellate jurisdiction because remand on abstention grounds "is considered a final order." *Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 428 (4th Cir. 2004). The Court also has jurisdiction under 28 U.S.C. § 1447(d),

which "permits appellate review of the district court's remand order" when the notice of removal cites 28 U.S.C. § 1443. *BP P.L.C.*, 141 S. Ct. at 1538.

## ISSUES PRESENTED

1. Whether the district court erred by abstaining under *Burford* and *Thibodaux*.

2. Whether Judge Griffin is likely to prevail on the merits.

## STATEMENT OF THE CASE

Justice Riggs won the November 2024 general election for N.C. Supreme Court Associate Justice. *See* JA203, JA302. On November 19, 2024, Judge Griffin filed hundreds of election protests. JA106. A protest is an administrative filing available to candidates who allege "a violation of the election law or other irregularity or misconduct" that "cast[s] doubt on the apparent results of the election." N.C. Gen. Stat. § 163-182.10(d)(2)e.

### A. The Board Dismisses Judge Griffin's Protests

On December 13, 2024, the Board dismissed three categories of Judge Griffin's election protests: (1) protests challenging 60,273 ballots allegedly "cast by registered voters whose voter registration database records contain neither a driver's license number nor the last-four digits

of a social security number"; (2) protests challenging 266 ballots allegedly "cast by overseas citizens who have not resided in North Carolina but whose parents or legal guardians were eligible North Carolina voters before leaving the United States"; and (3) protests challenging 1,409 ballots "cast by military or overseas citizens under Article 21A of Chapter 163, when those ballots were not accompanied by a photocopy of a photo ID or ID Exception Form." JA107.

The Board dismissed those protests on several overlapping grounds. Relevant here, the Board held that "substantive due process protections under the U.S. Constitution" bar all of Judge Griffin's protests. JA127; *see* JA136, JA143. Those protests seek to throw out ballots cast by eligible voters who followed the rules.

## B. Judge Griffin Seeks Judicial Review While Trying to Circumvent Federal Jurisdiction

North Carolina law provides that any person seeking judicial review of a Board decision must file a petition in Wake County Superior Court. *See* N.C. Gen. Stat. §§ 163-22(*l*), 163-182.14(b). Rather than follow this procedure, Judge Griffin went directly to the N.C. Supreme Court and asked it to "correct the vote count"—a euphemism for disenfranchisement. JA102. While Judge Griffin used a state-court

procedural vehicle to seek that relief, he explicitly asked the Supreme Court to resolve a host of federal issues, including whether votes can be "discounted"—another euphemism—"without violating the federal . . . constitution." JA101–102.

### C.  The Board Removes the Action

On December 19, 2024, the Board removed the N.C. Supreme Court action to federal court.  The Board explained that removal is proper under 28 U.S.C. § 1441 because the "petition is a civil action bringing claims arising under the laws of the United States." JA14.  Removal is also proper under 28 U.S.C. § 1443(2) because "Judge Griffin has brought a civil action seeking relief for [the Board's] refusal to do an 'act on the ground that [the act] would be inconsistent' with 52 U.S.C. § 10101(a)(2), 52 U.S.C. § 10307(a), and 52 U.S.C. § 20507(c)(2)(A)."  JA14 (second alteration in original) (quoting 28 U.S.C. § 1443(2)).

### D.  The District Court Remands Under *Burford* and *Thibodaux*

On December 23, 2024, Judge Griffin moved in the district court for "a preliminary injunction prohibiting [the Board] from certifying the election results." JA172.  Soon after, the district court allowed Justice Riggs to intervene as of right.  JA9 (text order).

6

In the evening of January 6, 2025, the district court entered an order "abstain[ing] from reaching the merits of Griffin's motion for preliminary injunction and remand[ing] this matter to the North Carolina Supreme Court." JA327. The district court began its analysis by finding that, while "the form of Griffin's petition permits removal to federal court under Section 1441," the "substance of the petition does not, in that it could not 'have been brought in federal court originally.'" JA311 (quoting *Sonoco Prod. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003)).

The district court next held that 28 U.S.C. § 1443(2) authorized removal because the "Board refused to 'act on the ground that [action] would be inconsistent with [federal civil rights] law." JA319 (alterations in original) (quoting 28 U.S.C. § 1443(2)).

Despite finding that removal was proper, the district court held that the action should be remanded under the *Burford* and *Thibodaux* abstention doctrines. While no party had raised those doctrines, the district court found that it was appropriate to abstain on those grounds because Judge Griffin had raised "*Pullman* as a basis for abstention" in other briefing. JA320 n.9.

Less than an hour later, the district court issued a certified copy of the remand order. JA328. This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred by abstaining under *Burford* and *Thibodaux*. The district court had no authority to remand under either doctrine, because 28 U.S.C. § 1443 jurisdiction is mandatory and because the abstention doctrines are not a license to undo Congress's policy choice to guarantee a federal forum in § 1443 cases.

The district court also misapplied the *Burford* analysis. This case does not present difficult questions of state law. It turns on important questions of *federal* law, the resolution of which would not disrupt a complex regulatory process for establishing a coherent state policy.

The district court's reliance on *Thibodaux* was even more misplaced. That doctrine applies in diversity cases and permits federal courts to stay, not remand, certain actions.

This Court should reverse the district court's abstention rulings and hold that Judge Griffin is unlikely to succeed on the merits.

## STANDARD OF REVIEW

This Court "review[s] the district court's ultimate decision to abstain 'for abuse of discretion,' while remembering that 'whether a case satisfies the basic requirements of abstention constitutes a legal question subject to de novo review.'" *Erie Ins. Exch. v. Maryland Ins. Admin.*, 105 F.4th 145, 149 (4th Cir. 2024) (quoting *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015)). This de novo review of those basic requirements means there is "little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998)).

## ARGUMENT

### I.  The District Court Erred by Abstaining Under *Burford*

The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (collecting cases). The abstention doctrines are thus "'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction

9

conferred on it." *Martin*, 499 F.3d at 363 (alteration in original) (quoting *Quackenbush*, 517 U.S. at 728).

"*Burford* allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Quackenbush*, 517 U.S. at 726–27 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)). Even then, the court "must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation *outweighs* the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 364. "This balance only rarely favors abstention." *Id.* (quoting *Quackenbush*, 517 U.S. at 728).

This "case falls well outside the narrow category of cases to which *Burford* abstention may apply." *Martin*, 499 F.3d at 361. *Burford* abstention is available when the district court is asked to provide discretionary relief, not when Congress has guaranteed a federal forum

to protect federal civil rights. In addition, *Burford* abstention was inappropriate here because this case "neither requires a court to adjudicate difficult questions of state law, nor disrupts state efforts to establish through a complex regulatory process a coherent policy on a matter of substantial public concern." *Id.*

### A. *Burford* Abstention Is Unavailable in Cases Removed Under 28 U.S.C. § 1443

Section 1443(2) "allows for removal in cases involving the 'refus[al] to do any act on the ground that it would be inconsistent with' 'any law providing for equal rights.'" *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 395 (4th Cir. 2024) (alteration in original) (quoting 28 U.S.C. § 1443(2)). This provision "guarantees a federal forum for certain federal civil rights claims." *BP P.L.C.*, 141 S. Ct. at 1536. Such claims include "suits against state officers who uphold equal protection" by refusing to take an action that would violate civil rights. *Greenberg v. Veteran*, 889 F.2d 418, 421 (2d Cir. 1989). "Congress evidently believed it necessary to provide a federal forum for [these] cases" because "federal courts are more removed from and generally less susceptible to parochial pressures." *Id.* at 421–22.

The district court agreed that § 1443 permitted removal here. JA319. Yet rather than provide the federal forum that Congress guaranteed, the district court "surrender[ed] jurisdiction of a federal suit to a state court." *Quackenbush*, 517 U.S. at 714 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983)). That decision stemmed from two legal errors: treating § 1443 jurisdiction as discretionary, and using abstention to make a policy choice about the wisdom of providing a federal forum.

### i. Section 1443 Jurisdiction Is Not Discretionary

The district court noted but failed to apply the rule that *Burford* abstention applies only when a court has the "discretion" to "refuse to enforce or protect legal rights." JA320 (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18 (1943)). The power to abstain "derives from the discretion historically enjoyed by courts of equity." *Quackenbush*, 517 U.S. at 728. The Supreme Court has thus extended *Burford* only to "cases in which a federal court is asked to provide some form of *discretionary* relief." *Id*. at 730 (emphasis added).

The district court's obligation to hear this case was not discretionary. Congress authorized § 1443 removal to "guarantee a

federal forum" for federal rights defenses, *BP P.L.C.*, 141 S. Ct. at 1536, and abstention "would be inconsistent with the purpose of the statute," *Greenberg*, 889 F.2d at 422. Congress even guarded against erroneous refusals to provide that federal forum by authorizing appellate review when a district court remands a case removed under 28 U.S.C. §§ 1442 or 1443. *See* 28 U.S.C. § 1447(d).

This exception permitting appellate review reflects Congress's determination that "removed actions in which federal rights that are based on laws relating to racial equality cannot be adequately protected in state courts should not be remanded to those state courts, and district court orders effecting such remands should be subject to appellate review on the merits." *Robertson v. Ball*, 534 F.2d 63, 66 n.5 (5th Cir. 1976).

Consistent with that policy decision, this Court has held that abstention is unavailable when a case is removed under 28 U.S.C. § 1442. As with § 1443, the "Supreme Court has interpreted § 1442(a)(1) as guaranteeing a federal officer the right to remove an action commenced against him in state court." *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994). That guarantee means that, once a "case has been properly removed under § 1442(a), the district court may remand it back to state

court *only* if it thereafter discovers a defect in removal procedure or a lack of subject matter jurisdiction in the federal court." *Id.* at 238–39; *accord Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 575 (4th Cir. 1989) ("discretionary abstention in the context of § 1442(a)(1) removal is . . . not available").

In *Jamison*, this Court held that an order "relinquishing jurisdiction and remanding the case to state court" under the belief that a district court has the "discretion to decline to exercise [§ 1442] jurisdiction" is "an error of sufficient magnitude to merit mandamus relief." 14 F.3d at 225, 233, 239. The district court here made an error of that same magnitude by surrendering its § 1443 jurisdiction on the mistaken belief that such jurisdiction is discretionary.

### ii. *Burford* Abstention Is Not a License for District Courts to Make Policy Determinations About the Desirability of Federal Adjudication

"Abstention is, at its core, a prudential mechanism that allows federal courts to take note of and weigh significant and potentially conflicting interests that were not—or could not have been—foreseen by Congress at the time that it granted jurisdiction for a given class of cases to the courts." *Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d

14

20, 31 (1st Cir. 2011). But for civil rights cases such as this one, Congress has already decided, as a policy matter under 28 U.S.C. § 1443, that the Board's federal defenses should be decided in federal court. "Abstention doctrines are not intended to alter that sort of policy choice." *Hammer v. U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 533 (7th Cir. 2018) (discussing removal under § 1442). The district court erred by making its own policy choice about providing a federal forum here.

That error is apparent from the first page of the district court's order. In this action properly removed under § 1443, the district court decided to weigh the relative merits of providing a federal forum:

> Should a federal tribunal resolve such a dispute? This court, with due regard for state sovereignty and the independence of states to decide matters of substantial public concern, thinks not.

JA301. The district court had no authority to ask or answer that question. The federal courts cannot "revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976).

## B. The District Court Misapplied the *Burford* Analysis

Even if abstention were permissible in § 1443 cases, the district court erred by abstaining here. As the district court recognized, the "abstention doctrines do not permit *'ad hoc* judicial balancing of the totality of state and federal interests in a case' and a court must tether its analysis to 'specific doctrines that apply in particular classes of cases.'" JA322 (quoting *Martin*, 499 F.3d at 364). *Burford* abstention is available "only when the importance of difficult questions of state law or the state's interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 365. This case does not satisfy those requirements.

### i. This Case Turns On Federal, Not State, Law

The district court failed to recognize the federal nature of Judge Griffin's claims. Invoking the well-pleaded complaint rule, the district court held that this action "could not 'have been brought in federal court originally'" because "no issue of federal law is *necessarily* raised." JA311 (quoting *Sonoco Prod. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003)). The district court then held that abstention was proper because Judge Griffin's "challenges consist of contentions that

16

arise exclusively under state law," and the "federal interest in this action also pales in comparison with the predominance of state law issues." JA325.

The district court's reasoning here conflates Judge Griffin's administrative filings—his protests challenging over 60,000 votes—with his action for judicial review. The Board concluded that all of Judge Griffin's administrative filings sought relief that "would violate substantive due process protections under the U.S. Constitution." JA127; *see also* JA136, JA143. This federal conclusion disposed of Judge Griffin's protests. Accordingly, any state-court action seeking to overturn the Board's decision must show that the Board misapplied federal law. And that effort to show that the Board erred as a matter of federal law necessarily raises federal questions.

### a. This Action Presents Federal Questions

"An appeal of an administrative ruling to a state court is removable to a federal district court so long as the complaint to the state court presents a well-pleaded claim arising under federal law." *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 316 (2d Cir. 2000) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163–64 (1997)).

17

Under the well-pleaded complaint rule, "a state law complaint, filed in a state trial court, that tries to *anticipate* a [federal] defense . . . will not support federal question removal jurisdiction." *Id*. at 317 (emphasis added). But a complaint is not anticipating anything when, as here, the "state or local agency has considered a federal defense . . . tendered by a defendant, and ruled that the defense is valid." *Id*. at 318. At that point, "the federal defense is no longer merely a matter of speculation." *Id*. The plaintiffs in that case are "not merely seeking a declaratory judgment" about a potential defense; they are "exercising their state law right to obtain judicial review of agency action." *Id*. When that review is "of an agency decision adjudicating a federal issue," the action "could have been brought originally in a district court, and is therefore properly removable." *Id*. at 319.

To be sure, state, not federal, law authorizes judicial review of the Board's order here. But that is "the same procedural route that justified removal in *City of Chicago*." *Id*. at 318. In that case, the "Illinois Administrative Review Law" authorized "judicial review" in "state circuit court" of "final decisions of a municipal landmarks commission." *City of Chicago*, 522 U.S. at 159. When the plaintiffs sought that judicial review,

18

the city removed those review proceedings "on the basis of federal question jurisdiction." 522 U.S. at 161. The Supreme Court held that "once the case was removed, the District Court had original jurisdiction over [the plaintiffs'] claims arising under federal law.'" *Id*. at 165.

In upholding federal court jurisdiction, the Supreme Court *rejected* the same argument that Judge Griffin makes here: "A claim that calls for deferential judicial review of a state administrative determination . . . does not constitute a 'civil action . . . of which the district courts of the United States have original jurisdiction' under 28 U.S.C. § 1441(a)." *Id*. at 166 (second alteration in original). The Supreme Court explained that this "reasoning starts with an erroneous premise." *Id*. "Because this is a federal question case, the relevant inquiry is not . . . whether [plaintiff's] state claims for on-the-record review of the Commission's decisions are 'civil actions' within the 'original jurisdiction' of a district court: The District Court's original jurisdiction derives from [plaintiff's] federal claims, not its state law claims." *Id*.

This case arises under federal law for the same reason. "[A]s in *City of Chicago*, the state court suit, though authorized by state law, arose under federal law because of the nature of the federal question on which

19

the outcome depended." *Freeman*, 204 F.3d at 318–19. Judge Griffin is seeking to overturn the Board's decision by presenting federal questions for judicial review. Those federal questions should have been "a major consideration" weighing against the district court's decision to surrender its jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26.

### b. Federal Issues Predominate over Any State Law Issues

The district court held that *Burford* abstention was justified because "Griffin's protests raise novel questions of state law" that "could sway the outcome of a state election and affect the right to vote for tens of thousands of individuals in future *state* elections." JA324. This holding gets the law backwards.

Judge Griffin's arguments under state law could not affect this election because, even if he were right under state law, "it would violate the federal constitution's guarantee of substantive due process" for Judge Griffin's state law arguments "to remove voters' ballots after an election." JA143. Now that the voters have cast their votes, it "is immaterial whether [the Board's] conduct [wa]s legal or illegal as a matter of state law." *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963). The voters were entitled to rely on the

20

established election procedure, and the U.S. Constitution prohibits the Board from throwing out their votes. Judge Griffin's arguments to the contrary "are entitled to be adjudicated in the federal courts." *Id.*

Consider the first of the three "unsettled questions of state law" that the district court found was controlling here: "whether individuals who registered to vote without providing either their driver's license numbers or the last four digits of their social security numbers may vote in state elections." JA323.

The Board dismissed this argument because the "grounds for the protest resulted from the State Board-produced voter registration form and past guidance from the State Board that would lead [county boards of elections] to treat forms without such an identifier as requiring the voter to show a HAVA ID before voting rather than be considered incomplete." JA128. "That is what the voters were informed to do to validly vote, and they relied on that information." JA128.

To "remove the ballots of any of these voters" now "would result in 'the kind of broad-gauged unfairness that renders an election patently and fundamentally unfair'" under the U.S. Constitution. JA129 (quoting *Lecky v. Va. State Bd. of Elections*, 285 F. Supp. 3d 908, 916

(E.D. Va. 2018)). "Accordingly, *regardless of whether state law permits this election protest to proceed*, the federal constitution does not." JA129 (emphasis added).

The other state law issues identified by district court fare no better. The second of these issues is "whether state law granting the right to vote to individuals who have never resided in North Carolina (Section 163-258.2(e)) conflicts with the state Constitution's bona fide residency requirement." JA323.

This second argument challenges the election procedures that "have been the law of North Carolina for thirteen years and have been faithfully implemented in 43 elections in this state since that time." JA135. Even if, as Judge Griffin claims, "these statutes are unconstitutional, it would violate the federal constitution's guarantee of substantive due process to apply such newly announced rule of law to remove voters' ballots after an election, when those voters participated in the election in reliance on the established law at the time of the election to properly cast their ballots." JA136. Once again, federal, not state law, is controlling.

The final state law issue identified by the district court is "whether North Carolina's voter ID law applies to absentee ballots submitted by overseas voters in state elections." JA323. The "Board has promulgated an administrative rule through permanent rulemaking that makes it clear that the county boards of elections may not impose the photo ID requirement on such voters," JA140, and that rule "has been the clear, established law in North Carolina ever since the photo ID law was given effect in April 2023, through six separate elections," JA143. As with the other two state law issues, "the federal constitution's guarantee of substantive due process" prohibits the Board from removing the challenged votes whether or not "the state photo ID requirement actually applies to these voters." JA143.

*    *    *

Whatever the merits of Judge Griffin's state law arguments, the district court was wrong to say that they "could sway the outcome of a state election." JA324. Only a ruling under federal law could permit that outcome. Those federal issues are "independent of any state law violation," and the "*Burford* doctrine does not permit a federal court to abstain from deciding them." *Martin*, 499 F.3d at 368.

23

### ii. This Action Would Not Disrupt a Complex, Unified State Administrative Scheme

The district court also held that abstention was proper because "North Carolina law designates an appellate procedure for disputes over decisions of the State Board." JA324. As the district court noted, North Carolina law provides that any person seeking review of a Board decision must file a petition for review in Wake County Superior Court. JA324. The district court concluded that it would abstain in favor of that procedure because "'[f]ederal equitable intervention' in this case 'risks the disruption of state efforts to establish a coherent policy with respect to [state elections]' and 'threatens the creation of a patchwork of inconsistent' interpretations of state election law." JA324 (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 723 (4th Cir. 1999)).

The district court's conclusion is difficult to square with the facts, as Judge Griffin himself ignored the designated review procedure. Judge Griffin did not file this action in Wake County Superior Court; he filed it in the N.C. Supreme Court. Even if the Wake County Superior Court were a specialized state forum (and it is not), that conclusion would be irrelevant because Judge Griffin decided to bypass that forum.

24

At any rate, the procedure here—which contemplates ordinary judicial review in a trial court—is not the type of specialized administrative scheme that justifies abstention. Judicial review of a Board decision "does *not* demand significant familiarity with, and will not disrupt state resolution of, distinctively local regulatory facts or policies," and the "principles underlying *Burford* are therefore not implicated." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 364; *see also Middleton v. Andino*, 488 F. Supp. 3d 261, 285 (D.S.C. 2020) (Childs, J.) ("The court does not believe the statutory voting scheme in South Carolina amounts to a 'complex state administrative process,' nor would the court's ruling, which implicates the fundamental right to vote, amount to an undue intrusion." (quoting *Martin*, 499 F.3d at 364)).

## II. The District Court's Citation to *Thibodaux* Does Not Justify Its Abstention Decision

The district court's passing references to *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), do not support its decision to remand this case to the N.C. Supreme Court.

*Thibodaux* permits "abstention in diversity cases where (1) state law is unsettled, and (2) an incorrect federal decision might embarrass or disrupt significant state policies." *Nature Conservancy v. Machipongo*

*Club, Inc.*, 579 F.2d 873, 875 (4th Cir. 1978) (per curiam). *Thibodaux* "is generally understood as resting on the special nature of eminent domain as a peculiarly local concern, although by any measure the case is something of an anomaly." *Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 174 n.9 (4th Cir. 1983).

*Thibodaux* abstention has no application here, for the same reasons that *Burford* abstention is inappropriate. In addition, *Thibodaux* abstention would be a poor fit for this case, which does not arise in diversity or involve a claim for damages. It presents federal constitutional and statutory issues for which Congress has expressly mandated federal court jurisdiction.

Moreover, *Thibodaux* abstention is a means for a federal court to *delay* exercise of diversity jurisdiction, not to divest itself of jurisdiction altogether. The *Thibodaux* Court was "careful to note" that "the District Court had only *stayed* the federal suit pending adjudication of the dispute in state court." *Quackenbush*, 517 U.S. at 721. The Supreme Court explained that, "*[u]nlike the outright dismissal or remand of a federal suit*," an "order merely staying the action 'does not constitute

abnegation of judicial duty.'" *Id.* (emphasis added). *Thibodaux* thus does not support the district court's decision here to remand the case.

## III. The Court Should Reverse the District Court's Abstention Ruling and Remand with Instructions to Deny Judge Griffin's Motion for a Preliminary Injunction

The district court remanded this action when it came before the district court on Judge Griffin's motion for a preliminary injunction. JA301. That motion was "fully briefed" and "ready for disposition," JA306, but the district court "abstain[ed] from reaching the merits of Griffin's motion," JA327.

This Court should reverse that abstention ruling and remand with instructions to deny the preliminary injunction. Time is of the essence. By the date of oral argument, nearly three months will have elapsed since the voters chose Justice Riggs for the Associate Justice term that began on January 1, 2025, and the N.C. Supreme Court's first sitting will be two weeks away, *see* Supreme Court Calendars of Arguments, https://appellate.nccourts.org/calendar.php?court=1 (last visited Jan. 14, 2025), archived at https://perma.cc/2RJV-M4AZ.

While appellate courts typically remand after reversal, when there are "no factual questions to resolve," the appellate court has discretion

whether to remand when it would "only delay decision without service of any useful purpose." *Evans v. Cunningham*, 335 F.2d 491, 494 (4th Cir. 1964); *see also Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 345 (4th Cir. 2016) (remand is "unnecessary" and the court may rule on the existing record when the "'record permits only one resolution'" (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982))).

This Court's discretion includes the power to grant or deny an injunction request when the "record is sufficiently developed" but "the district court fails to analyze the [injunction] factors." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009); *see also New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 18 (1st Cir. 1996) (noting exception to the "usual" practice when remand would "serve no useful purpose").

The unusual circumstances of this appeal justify a decision from this Court in the first instance. As Judge Griffin recognizes, the "candidates and the public have a vital interest in this election receiving finality as expeditiously as possible." JA50. And Judge Griffin has already asked the N.C. Supreme Court to rule on *all* the federal and other

issues presented in this case in "the interests of finality and expediency." JA101. While Judge Griffin's decision to skip the North Carolina trial and intermediate appellate courts was procedurally improper, he cannot reasonably object to this Court's consideration of the merits now that it has jurisdiction over this dispute.

This record is also sufficiently well developed for this Court to decide that Judge Griffin is unlikely to succeed on the merits of his effort to throw out tens of thousands of votes cast by his fellow North Carolinians in compliance with official guidance. Indeed, that conclusion follows from the analysis (in Part I.B.i) of the federal interests at stake.

Judge Griffin seeks to brush aside the U.S. Constitution as irrelevant, but "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). As a matter of federal constitutional law, it "is settled that if the election process reaches the point of 'patent and fundamental unfairness,' the due process clause may be violated." *Hendon v. N.C. State Bd. Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)). That level of "broad-gauged unfairness" exists when, for example, "the

losing candidate contest[s] the validity of the absentee ballots" cast in accordance with officially sponsored election procedure. *Lecky*, 285 F. Supp. 3d at 917 (citing *Griffin*, 570 F.2d at 1076). Even if that procedure turns out to have been flawed, a "state's retroactive invalidation" of those absentee ballots "violate[s] the voters' rights under the fourteenth amendment." *Griffin*, 570 F.2d at 1070.

As explained above, this action seeks that sort of retroactive invalidation. Judge Griffin is seeking to throw out votes cast by eligible voters who did everything asked of them. But now, Judge Griffin argues that they should have done more—ensure that county boards updated their registration records, affirmatively establish residency in North Carolina, or submit photo identification—even though official guidance made clear that none of these steps was necessary. *See* JA127, JA136, JA143.

Candidates such as Judge Griffin who seek to bring "grievances based on election laws" have a "duty" to "bring their complaints forward for pre-election adjudication." *Hendon*, 710 F.2d at 182. Judge Griffin cannot "gamble upon receiving a favorable decision of the electorate and

then, upon losing, seek to undo the ballot results in a court action." *Id.*

(quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

## CONCLUSION

The Court should reverse the district court's abstention rulings and remand with instructions to deny the preliminary injunction. Federal law bars Judge Griffin's efforts to overturn an election by changing the rules after the votes have been cast and counted.

Dated: January 15, 2025    Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Samuel B. Hartzell
Raymond M. Bennett
N.C. State Bar No. 36341
Samuel B. Hartzell
N.C. State Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2100
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com

*Counsel for Justice Allison Riggs*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No.  25-1018(L)      **Caption:** Griffin v. North Carolina State Board et al.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5,948_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 _____ [*identify word processing program*] in
14 point Century schoolbook _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Samuel  B.  Hartzell _____

Party Name Justice Allison Riggs _____

Dated: 1-15-2024 _____