# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

JEFFERSON GRIFFIN,
*Plaintiff-Appellee*,

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendant-Appellant*,

*and*

ALLISON RIGGS; NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS ET AL.,
*Intervenor-Appellants*.

On Appeal from the United States District Court
for the Eastern District of North Carolina

**BRIEF OF NORTH CAROLINA DEMOCRATIC PARTY AS *AMICUS CURIAE* IN SUPPORT OF APPELLANTS**

SHANA L. FULTON
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
    HUMPHREY & LEONARD, LLP
150 Fayetteville Street, Suite 1700
Raleigh, N.C. 27601
(919) 839-0300

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
JANE E. KESSNER
ANN E. HIMES
NITISHA BARONIA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

January 15, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICUS CURIAE* ................................................................. 1

INTRODUCTION ............................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.    THE DISTRICT COURT ERRED IN ABSTAINING ................................................. 3

    A.   *Burford* Abstention ............................................................................. 4

    B.   *Thibodaux* Abstention ....................................................................... 15

II.   THE CASE SHOULD BE RETRIEVED AND STAYED PENDING DISPOSITION OF THIS APPEAL ....................................................................... 16

CONCLUSION .................................................................................................. 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bogaert v. Land*, 675 F.Supp.2d 742 (W.D. Mich. 2009) ...................................8, 13

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) .............................................................2

*Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554 (6th Cir. 2010) ................................................................................6

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)........................................................................................3

*Country Vintner of North Carolina, LLC v. E & J Gallo Winery, Inc.*, 461 F.App'x 302 (4th Cir. 2012)................................................................16

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) .......................................................................................................14

*Cox v. Planning District I Community Mental Health & Mental Retardation Services Board*, 669 F.2d 940 (4th Cir. 1982) .........................16

*Dascola v. City of Ann Arbor*, 2014 WL 3599848 (E.D. Mich. July 22, 2024) .......................................................................................................8

*Democratic National Committee v. Bostelmann*, 466 F.Supp.3d 957 (W.D. Wis. 2020).................................................................................8

*Educational Services, Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170 (4th Cir. 1983)......................................................13

*Edwards v. Sammons*, 437 F.2d 1240 (5th Cir. 1971) ..............................................7

*First Penn–Pacific Life Insurance Co. v. Evans*, 304 F.3d 345 (4th Cir. 2002)........................................................................................................12

*Florida State Conference of Branches & Youth Units of NAACP v. Byrd*, 680 F.Supp.3d 1291 (N.D. Fla. 2023) ..................................................7

*Gay v. Board of Registration Commissioners*, 466 F.2d 879 (6th Cir. 1972) .........................................................................................................7

ii

*Gordon v. Luksch*, 887 F.2d 496 (4th Cir. 1989) ....................................................15

*Gray v. Petoseed Co.*, 129 F.3d 1259 (4th Cir. 1997) ...........................................15

*Greenberg v. Veteran*, 889 F.2d 418 (2d Cir. 1989) ............................................5, 6

*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) .................................................8, 15

*Hendon v. North Carolina State Board of Elections*, 710 F.2d 177 (4th Cir. 1983) ...............................................................................................................15

*Houston Federation of Teachers v. Texas Education Agency*, 2022 WL 22871698 (W.D. Tex. Apr. 26, 2022) .....................................................8

*Johnson v. Collins Entertainment Co.*, 199 F.3d 710 (4th Cir. 1999) ....................12

*Koons v. United States*, 518 U.S. 81 (1996) ...........................................................4

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ....................................................................................................................2, 4

*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994) ........................................................7

*Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007) .....................................3, 4, 5, 9, 14

*McNeese v. Board of Education for Community Unit School District 187*, 373 U.S. 668 (1963) ...............................................................................14

*Michigan State A. Philip Randolph Institute v. Johnson*, 209 F.Supp.3d 935 (E.D. Mich. 2016) ..........................................................7

*Middleton v. Andino*, 488 F.Supp.3d 261 (D.S.C. 2020) ...................................8, 12

*Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821 (4th Cir. 2000) .........................................................................................................4

*Neufeld v. City of Baltimore*, 964 F.2d 347 (4th Cir. 1992) ..................................16

*New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) ...............................................................................................3, 4, 5

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................16

iii

*North Carolina Green Party v. North Carolina State Board of Elections*, 619 F.Supp.3d 547 (E.D.N.C. 2022) ..............................................8

*Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319 (4th Cir. 1994) ..............................................15

*Press v. Pasadena Independent School District*, 326 F.Supp. 550 (S.D. Tex. 1971) ..............................................8

*Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996) ........................3, 4, 17

*Quilici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982)............................6

*Republican National Committee v. North Carolina State Board of Elections*, 120 F.4th 390 (4th Cir. 2024) ..............................................9, 10, 13

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ..........................................6-7, 11

*Sierra Club v. City of San Antonio*, 112 F.3d 789 (5th Cir. 1997) ........................12

*Town of Nags Head v. Toloczko*, 728 F.3d 391 (4th Cir. 2013) ......4, 8, 9, 10, 11, 12

*Warf v. Board of Elections of Green County*, 2009 WL 530666 (W.D. Ky. Mar. 3, 2009) ..............................................13

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008)..............................................14

*West v. AT&T Co.*, 311 U.S. 223 (1940) ..............................................11

*Wise v. Circosta*, 978 F.3d 93 (4th Cir. 2020) ..............................................7

## STATUTORY AND REGULATORY PROVISIONS

28 U.S.C.
    §1291 ..............................................17
    §1441 ..............................................3
    §1443 ..............................................3, 5

N.C. Gen. Stat.
    §163-82.11 ..............................................10

iv

§163-82.27 ................................................................................ 10
§163-258.4 ......................................................................... 10, 11
§163-258.11 .............................................................................. 11
§163-258.13 .............................................................................. 10
§163-258.17 .............................................................................. 10

08 N.C. Admin. Code 17.0109 ............................................................. 10

# INTEREST OF *AMICUS CURIAE*[1]

The North Carolina Democratic Party ("NCDP") is a state committee with the purposes of supporting Democratic voters and electing Democratic candidates to public office throughout North Carolina, including justices of the North Carolina Supreme Court. The NCDP has a strong interest in ensuring that its candidates are not denied the offices they have won and that its voters do not have their votes discarded—especially where (as here) such actions violate federal law.

To protect its voters and candidates, the NCDP challenged appellee Jefferson Griffin's protests with the North Carolina State Board of Elections ("NCSBE"), by filing an opposition brief with the NCSBE and bringing an independent declaratory-judgment action that remains pending in the Eastern District of North Carolina (No. 24-cv-699). Judge Griffin's attempt to reverse the NCSBE's dismissal of his protests—and the district court's extraordinary decision to remand his challenge to state court on a ground not raised by any party—threaten those same interests. Accordingly, the NCDP submits this brief to explain why the district court's remand order should be reversed.

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amicus* and its counsel made a monetary contribution intended to fund the preparation of this brief. All parties in the consolidated appeals consent to the filing of this brief.

# INTRODUCTION

The district court erred when it remanded these consolidated cases to state court based on the abstention principles articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). *Burford* and *Thibodaux* abstention provide that federal courts should not intervene where complex state administrative processes are at play. But these doctrines are inapplicable where, as here, federal constitutional and civil rights are threatened: As the NCDP has detailed in its pending declaratory-judgment action, federal law prohibits the mass disenfranchisement that Judge Griffin seeks in order to undo the election for associate justice of the North Carolina Supreme Court that—as confirmed by multiple recounts—he lost to Justice Allison Riggs. In particular, granting Judge Griffin's request that the NCSBE and North Carolina courts throw out the votes of more than 60,000 voters who followed the rules in place at the time of the election would violate both the National Voter Registration Act ("NVRA") and due-process rights guaranteed by the U.S. Constitution. Federal courts have an obligation to decide such issues when properly presented, as they were here. This Court should therefore reject the district court's impermissible expansion of *Burford* and *Thibodaux* abstention, order the district court to retrieve this action from state court, and reverse the district court's remand order.

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN ABSTAINING

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716 (1996); *accord, e.g.*, *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-818 (1976). Congress conferred the district court with jurisdiction to hear this case, which both raises a federal question and (as the court recognized) challenges state officers' refusal to sustain Judge Griffin's protests on the ground that doing so would violate federal civil-rights laws. *See* 28 U.S.C. §§1441, 1443(2). While federal courts properly may relinquish jurisdiction if one or more "carefully defined" abstention doctrines applies, those doctrines are "extraordinary and narrow exception[s]" to the rule requiring courts to exercise jurisdiction when they have it. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (citing *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*"), and *Quackenbush*, 517 U.S. at 716).

In particular, under *Burford*, this Court has explained, courts may abstain "when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system." *Martin*, 499 F.3d at 364. And *Thibodaux* "allows abstention in cases raising issues 'intimately involved with [the State's] sovereign prerogative,' where proper adjudication might be impaired

by unsettled questions of state law.  *Id.* (alteration in original) (quoting *Thibodaux*, 360 U.S. at 28).  But the "'extraordinary and narrow'" circumstances required for abstention to be proper, *Martin*, 499 F.3d at 363 (quoting *Quackenbush*, 517 U.S. at 728), do not exist here.[2]

### A.    *Burford* Abstention

Because this case implicates federal voting-rights protections and federal constitutional rights, the district court erred by invoking *Burford* abstention.  As noted, that doctrine recognizes "that courts may abstain when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system."  *Martin*, 449 F.3d at 364.  The "'classic example[s]'" are cases involving "state and local land use and zoning law."  *Town of Nags Head v. Toloczko*, 728 F.3d 391, 396 (4th Cir. 2013).  But *Burford* applies only where "adequate state-court review is available," *NOPSI*, 491 U.S. at 361, and then only "when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: [a] 'there are difficult questions of state law … whose importance transcends the result in the case'; or [b] federal review

---

[2] This Court's review is de novo:  Although the Court reviews the decision to abstain under *Burford* or *Thibodaux* for abuse of discretion, *Martin*, 499 F.3d at 363-364, a court "abuses its discretion when it makes an error of law," *Koons v. United States*, 518 U.S. 81, 100 (1996).  And "[w]hether a case satisfies the basic requirements of abstention is a legal question subject to de novo review."  *Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821, 823 (4th Cir. 2000).

would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern,'" *Martin*, 499 F.3d at 364 (quoting *NOPSI*, 491 U.S. at 361-363). Even then, abstention is inappropriate unless the state interests "*outweigh[]* the federal interest in adjudicating the case." *Id.* at 365-366 (emphasis added). None of these requirements is met here.

1. State courts cannot provide adequate review here. As the district court held, Op.18-19, subject-matter jurisdiction exists under 28 U.S.C. §1443(2), which authorizes removal where state officers have been sued for "refus[ing] to do any act on the ground that it would be inconsistent with" "any law providing for equal rights." By invoking this statutory provision, known as the refusal clause, the NCSBE availed itself of the federal forum that Congress provided in order to protect cases that implicate federal civil-rights law from "local passions." *See Greenberg v. Veteran*, 889 F.2d 418, 422 (2d Cir. 1989).

Like the NCSBE (*see* Stay Mot.13), the NCDP has been unable to find *any instance* where a federal court has invoked *Burford* abstention in a case removed under §1443(2). The only court to even consider doing so (the Second Circuit) flatly rejected *Burford*'s application in such circumstances. *Greenberg*, 889 F.2d at 422. As the Second Circuit explained, the removal clause's purpose "is to provide a federal forum for suits against state officers who uphold equal protection in the face of strong public disapproval." *Id.* at 421. Congress deemed such a

forum necessary because federal courts are "less susceptible to parochial pressures," given that "the tenure and independence of federal judges are constitutionally guaranteed" whereas many state-court judges (including in North Carolina) are popularly elected. *Id.* at 422. Thus, *Burford* "abstention in [a refusal-clause] case would be inconsistent with the purpose of the statute." *Id.*

The fact that no other federal court has even considered this question in the thirty-five years since *Greenberg*, and the fact that courts have denied *Burford* abstention even in cases invoking the "strong federal interest in adjudicating cases brought under … diversity jurisdiction," *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 562 (6th Cir. 2010), underscore the infirmity of the district court's reliance on *Burford* here. The court's decision deprives the NSCBE of a federal forum guaranteed by federal law, expands *Burford* abstention far beyond its intended bounds, and threatens the future enforcement of this nation's civil rights laws.

Even where the source of federal jurisdiction is not the refusal clause, federal appellate courts are "reluctant to abstain when fundamental rights such as voting[] … are involved." *Quilici v. Village of Morton Grove*, 695 F.2d 261, 265 n.2 (7th Cir. 1982). Several circuits, in fact, have reversed abstention rulings or chosen not to abstain in such cases, with one emphasizing that "voting rights cases are particularly inappropriate for abstention," *Siegel v. LePore*, 234 F.3d 1163,

1174 (11th Cir. 2000) (per curiam); another explaining "abstention is not to be

countenanced in cases involving such a strong national interest as the right to

vote," *Edwards v. Sammons*, 437 F.2d 1240, 1244 (5th Cir. 1971); and a third

observing that this proposition "is well-established," *Gay v. Board of Registration

Commissioners*, 466 F.2d 879, 885 (6th Cir. 1972). The Third Circuit has found

abstention from post-election challenges to ballot-counting procedures

inappropriate (under different abstention doctrines not invoked here) even when a

state court and state legislature were considering the candidate's claims in parallel.

*Marks v. Stinson*, 19 F.3d 873, 885 & n.9, 889 (3d Cir. 1994). Although this Court

has invoked abstention in a pre-election challenge to absentee-ballot deadlines, it

relied on an abstention doctrine the district court did not apply here (because in

that case parallel litigation was already proceeding in state courts) and the lawsuit

there (unlike here) neither implicated the state-officer removal statute nor

threatened to discard votes already cast and counted. *See Wise v. Circosta*, 978

F.3d 93, 96-97, 102 (4th Cir. 2020) (en banc).

Other courts have applied these principles to *Burford* abstention, deeming

such abstention "inappropriate" where "vital" federal constitutional rights are at

stake. *Florida State Conference of Branches & Youth Units of NAACP v. Byrd*,

680 F.Supp.3d 1291, 1302 (N.D. Fla. 2023); *accord Michigan State A. Philip

Randolph Institute v. Johnson*, 209 F.Supp.3d 935, 943 (E.D. Mich. 2016);

*Houston Federation of Teachers v. Texas Education Agency*, 2022 WL 22871698, at *5 (W.D. Tex. Apr. 26, 2022). Indeed, for over fifty years, courts have acknowledged that the "denial of the right to vote" specifically "counsels against" *Burford* abstention. *Press v. Pasadena Independent School District*, 326 F.Supp. 550, 558 n.4 (S.D. Tex. 1971); *see also Democratic National Committee v. Bostelmann*, 466 F.Supp.3d 957, 969 (W.D. Wis. 2020) (listing cases). Where a case "involves matters of due process rights and the right to vote, both of which are fundamental and protected rights under the United States Constitution," federal courts have an obligation to exercise subject-matter jurisdiction. *Dascola v. City of Ann Arbor*, 2014 WL 3599848, at *8 (E.D. Mich. July 22, 2024); *see also Middleton v. Andino*, 488 F.Supp.3d 261, 285 (D.S.C. 2020). Such constitutional cases, in fact, "are the paramount category of cases that … court[s have] an 'unflagging obligation' to decide." *North Carolina Green Party v. North Carolina State Board of Elections*, 619 F.Supp.3d 547, 560 (E.D.N.C. 2022) (quoting *Toloczko*, 728 F.3d at 395); *see also Bogaert v. Land*, 675 F.Supp.2d 742, 747 (W.D. Mich. 2009).

Here, Judge Griffin seeks to retroactively disenfranchise over 60,000 North Carolina voters. The NCSBE recognized (Stay Mot.6-8) that this threatens voters' constitutional right to due process, *see Griffin v. Burns*, 570 F.2d 1065, 1079 (1st Cir. 1978), and their rights under federal voting-rights statutes like the NVRA, *see*

8

*Republican National Committee v. North Carolina State Board of Elections*, 120 F.4th 390, 402 (4th Cir. 2024). Under the many cases just discussed, state-court review of claims threatening widespread violations of such fundamental federal voting rights is inadequate. That is especially true here, where the dispute concerns a seat on the same state court that would adjudicate it.

2. Even if state-court review were adequate, *Buford* abstention would still be inappropriate because this case neither implicates "difficult questions of state law" nor disrupts state efforts "to establish a coherent policy with respect to a matter of substantial public concern," *Toloczko*, 728 F.3d at 396. And even if it did, those considerations would not be strong enough to outweigh the federal interests at stake. *Martin*, 499 F.3d at 363-364.

a. As the NCSBE has explained (Stay Mot.6-8; App.54-58), none of Judge Griffin's three challenges requires untangling difficult questions of state law.

The district court (Op.23) described Judge Griffin's first claim as asking whether, under North Carolina law, "individuals who registered to vote without providing" certain identification numbers "may vote in state elections." That question is not difficult. To the contrary, all agree that no provision of North Carolina law expressly authorizes post-election de-registration (and retroactive disenfranchisement) of voters who did not provide this information. *See* Op.2. If there were any "difficult questions" here, *Toloczko*, 728 F.3d at 396, they would

arise from *federal* law:  As the NCSBE has explained (Stay Mot.17), and as this Court recognized in its recent decision in *Republican National Committee v. North Carolina State Board of Elections*, North Carolina law regarding registration tracks the requirements of the federal Help America Vote Act, or HAVA, 120 F.4th at 401.  Although the district court observed (Op.12 & n.7) that the provision of HAVA that Judge Griffin invokes is "distinguishable" from the one this Court interpreted, because the former does not "incorporate[] by express reference a federal standard," that does not change the fact that any "difficult questions" here, *Toloczko*, 728 F.3d at 396, turn on federal rather than state law.  State law authorizes the NCSBE—the state agency from which Judge Griffin seeks relief—"to implement [only] the *minimum* requirements" of the *federal* HAVA.  N.C. Gen. Stat. §163-82.27 (emphasis added); *see also id.* §163-82.11(c).

Likewise, Judge Griffin's third claim (concerning whether overseas voters were subject to a state photo-identification law) poses no difficulty because, as the NCSBE has explained (Stay Mot.7-8; Mot. App.57-58), the relevant state laws expressly exempt overseas voters from photo-identification requirements.  *See* 08 N.C. Admin. Code 17.0109(d); N.C. Gen. Stat. §§163-258.4(e), 163-258.13, 163-258.17(b).  And as with the HAVA claim, any difficulty would arise from federal rather than state law because the governing North Carolina law incorporates a federal law, the Uniformed Overseas Citizens And Veterans Act, for both state and

federal elections.  *See* NCSBE Stay Mot. App.41-42; N.C. Gen. Stat. §§163-258.4, 163-258.11.

Finally, Judge Griffin's second claim (concerning ballots cast by certain overseas citizens) does not implicate enough votes to alter the election result, either on its own or when combined with either of his other two claims.  *See* Op.2-3.  Its resolution therefore cannot have justified abstention, because no matter how a state court resolves this claim, the others—as to which there are no difficult state issues, as just explained—would need resolution.  And even if this second claim were relevant, state law is clear:  As the district court acknowledged (Op.23) the only state court to address the question recently rejected it.  While the district court dismissed that judgment as not "reflect[ing] a consensus view," *id.*, it cannot ignore a state court's determination absent "'persuasive data' that the highest court would decide differently," *Toloczko*, 728 F.3d at 398; *accord, e.g.*, *West v. AT&T Co.*, 311 U.S. 223, 237 (1940).

b.      *Burford* abstention is independently inappropriate because there is no "coherent policy," *Toloczko*, 728 F.3d at 396, that a federal court could disrupt.  This case is instead about "discrete practices" under North Carolina election law, *Siegel*, 234 F.3d at 1173—practices that implement a federal statue, HAVA.  This case thus differs from those in which this Court has upheld *Burford* abstention.  This Court, for example, has deemed *Burford* abstention appropriate where federal

adjudication would interfere with state receivership proceedings and thereby disrupt a state's efforts to provide a unified method for the liquidation of debtor's assets. *First Penn–Pacific Life Insurance Co. v. Evans*, 304 F.3d 345, 350 (4th Cir. 2002). It has also held abstention appropriate when a state was exercising authority "at the heart of [its] police power" and federal adjudication would require answering "disputed questions of state gaming law that … powerfully impact the welfare of [state] citizens" and the requested relief would "effectively establish parallel federal and state oversight of" the state industry. *Johnson v. Collins Entertainment Co.*, 199 F.3d 710, 715, 720, 724 (4th Cir. 1999).

Nothing comparable is implicated here. North Carolina's "statutory voting scheme" is not a "complex state administrative process" within *Burford*'s bounds, *Middleton*, 488 F.Supp.3d at 285. As compared to other contexts where *Burford* might appropriately apply given local expertise and sensitivities—like land use, water use, and activities at the heart of a state's police power—the election laws that provide the basis for Judge Griffin's protests are not highly specialized or localized and, in fact, are deeply interconnected with federal law. *See Toloczko*, 728 F.3d at 396-398 (land use and zoning issues); *Sierra Club v. City of San Antonio*, 112 F.3d 789, 793-95 (5th Cir. 1997) (water use); *Evans*, 304 F.3d at 350-351 (police power). Nor would federal adjudication "threaten to undermine all or substantially all of [North Carolina]'s election process or its resolution of election

disputes." *Warf v. Board of Elections of Green County*, 2009 WL 530666, at *3 (W.D. Ky. Mar. 3, 2009), *aff'd*, 619 F.3d 53 (6th Cir. 2010). Federal involvement in these election protests is not unduly disruptive, given the relationship between federal and state law in this setting. As this Court has recognized, "North Carolina has a unified registration system for both state and federal elections, and thus is bound by the provisions" of federal law. *Republican National Committee*, 120 F.4th at 401-402; *see also* NCSBE Stay Mot.17. And since NCSBE decisions are reviewed by "unspecialized state court[s]," this case also does not implicate *Burford*'s "salient feature:" interference with "specially authorized" state courts and their subject-matter expertise. *Educational Services, Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 173 (4th Cir. 1983). Unspecialized "state courts do not stand in any special relationship of technical oversight or concentrated review" as to the straightforward statutory questions Judge Griffin raises. *Id*.

Finally, there is no risk that federal review will lead "to an inconsistent application of state law," *Bogaert*, 675 F.Supp.2d at 747. Federal review will simply determine whether Judge Griffin's protests run afoul of the federal constitution and federal civil-rights law, and *Burford* does not apply when such weighty rights are at issue. *See supra* pp.6-8. And the fact that the NCSBE, the "responsible state agency" which implements the North Carolina statutes

underpinning Judge Griffin's protests, agrees should be "entitled to weight" in this determination. *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir. 1990).

      c.     Even if this case presented a difficult state-law question or threatened a uniform state policy, that would not "outweigh[] the federal interest in adjudicating" the case, *Martin*, 499 F.3d at 365. Judge Griffin seeks a declaration that the relief he seeks would not violate *federal* law: "the NVRA, HAVA, the VRA, and the Civil Rights Act." Op.16. And the NCSBE rejected his protests not only on state-law grounds, but also on the ground that discarding ballots already cast would violate voters' *federal* rights. Op.4.

      Those squarely presented federal questions are at this case's core; they are "plainly federal in origin and nature," and the federal interest in resolving them is paramount. *McNeese v. Board of Education for Community Unit School District 187*, 373 U.S. 668, 674 (1963). Unless they are promptly and definitively resolved, post-election losers will continue to invoke state-law grounds for disenfranchising voters even if federal law bars that practice. That is improper because, as the district court acknowledged (Op.7 n.4), "state regulation of state and local elections remains subject to federal constitutional constraints." *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008).

In a case much like this one (a case this Court has described as reflecting "settled" law, *Hendon v. North Carolina State Board of Elections*, 710 F.2d 177, 182 (4th Cir. 1983)), the First Circuit held that a state's retroactive discarding of ballots cast by voters who "were doing no more than following the instructions of the officials charged with running the election" amounted "to a fraud upon the absent voters." *Griffin*, 570 F.2d at 1074-1075. Federal intervention is just as necessary here because the voters' due process rights at stake are "at bottom, … federally protected." *Id.* at 1077.

### B. *Thibodaux* Abstention

The district court also remanded under *Thibodaux* abstention—an "eminent domain-type abstention" doctrine, *Gordon v. Luksch*, 887 F.2d 496, 498 (4th Cir. 1989). This Court last upheld *Thibodaux* abstention roughly three decades ago, first in a case which (like *Thibodaux* itself) involved local land-use law, *Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319, 1326 (4th Cir. 1994), and then in a case involving state contempt procedures, *Gray v. Petoseed Co.*, 129 F.3d 1259, at *2 (4th Cir. 1997) (per curiam) (unpublished table decision). This rightly out-of-use doctrine should not be revived here.

Indeed, it should not be revived for the reasons given regarding *Burford* abstention. *Thibodaux* abstention, after all, is simply an "example of" the first category of *Burford* cases, i.e., ones involving "difficult questions of state law

bearing on important policy considerations." *Neufeld v. City of Baltimore*, 964 F.2d 347, 349 (4th Cir. 1992). It thus is considered together with *Burford*. *See Country Vintner of North Carolina, LLC v. E & J Gallo Winery, Inc.*, 461 F.App'x 302, 304 (4th Cir. 2012). And the district court erred in applying *Thibodaux* abstention because, as with *Burford* abstention, federal adjudication "would not disrupt significant state policies" nor "impede on North Carolina's sovereign prerogative to regulate" its elections, *id.* at 305.

## II. THE CASE SHOULD BE RETRIEVED AND STAYED PENDING DISPOSITION OF THIS APPEAL

To assure its jurisdiction as it decides this appeal, the Court should order the district court to reinstate the case (as this Court has done when a case is improperly dismissed on abstention grounds, *Cox v. Planning District I Community Mental Health & Mental Retardation Services Board*, 669 F.2d 940, 943 (4th Cir. 1982)), and then grant the NCSBE's motion to stay the remand order, Dkt.10, immediately following oral argument on January 27 (or sooner). A stay is warranted under the traditional factors: likelihood of success, balance of harms, and public interest, *see Nken v. Holder*, 556 U.S. 418, 434 (2009).

1.  The NCSBE will likely succeed in challenging the district court's abstention ruling, for the reasons given earlier.

2.  The NCSBE would suffer irreparable harm if the case is not reinstated in the district court and stayed before the state court takes any substantive step in

this case. Remands "on grounds of *Burford* abstention" are immediately appealable under 28 U.S.C. §1291 because they "put[] the litigants … 'effectively out of court.'" *Quackenbush*, 517 U.S. at 714. If made to proceed in state court while this appeal is pending, the NCSBE would effectively lose its statutory right to a federal forum and its right to appeal the district court's remand order before it is subjected to that forum.

3.      Judge Griffin has no protected interest at stake: having lost the election and *three* recounts (*see* NCSBE Stay Mot.1), he holds no entitlement to the office he seeks. And while staying remand could risk delaying a final adjudication of his lawsuit, the delay caused by an erroneous remand which goes uncorrected and must be reversed by this Court after state proceedings have advanced will only exacerbate delay.

4.      Finally, the harm that denying a stay would impose on the public is sweeping: overturning the (repeatedly confirmed) results of a state supreme court election via the mass disenfranchisement of people who voted in accordance with state and federal law—and most if not all of whom are in fact registered and eligible to vote. Just a few months ago, this Court administratively stayed a remand order in a case raising similarly baseless claims of improperly registered voters. *See* DE 32, *Republican National Committee v. North Carolina State Board of Elections*, No. 24-4044. The same result is warranted here.

**CONCLUSION**

This Court should reverse the district court's remand order. And while the Court considers this appeal, it should order the district court to retrieve this action from state court and stay the district court's remand order.

January 15, 2025                              Respectfully submitted,

                                              /s/ Seth P. Waxman
                                              _____
SHANA L. FULTON                               SETH P. WAXMAN
WILLIAM A. ROBERTSON                          DANIEL S. VOLCHOK
JAMES W. WHALEN                               CHRISTOPHER E. BABBITT
BROOKS, PIERCE, MCLENDON                      JANE E. KESSNER
   HUMPHREY & LEONARD, LLP      NITISHA BARONIA
150 Fayetteville Street, Suite 1700           ANN E. HIMES
Raleigh, N.C. 27601                           WILMER CUTLER PICKERING
(919) 839-0300                                   HALE AND DORR LLP
                                              2100 Pennsylvania Avenue NW
                                              Washington, D.C. 20037
                                              (202) 663-6000
                                              seth.waxman@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 4,016 words, excluding the portions exempted by Rule 32(f).

/s/ Seth P. Waxman
SETH P. WAXMAN

## CERTIFICATE OF SERVICE

On January 15, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Seth P. Waxman
SETH P. WAXMAN