Nos. 25-1018 (L), 25-1019, 25-1024, 25-1020

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

JEFFERSON GRIFFIN,

*Plaintiff – Appellee*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Defendant – Appellant*,

and

ALLISON RIGGS; NORTH CAROLINA ALLIANCE FOR RETIRED
AMERICANS; VOTEVETS ACTION FUND; TANYA WEBSTER-DURHAM;
SARAH SMITH; JUANITA ANDERSON,

*Intervenor-Defendants – Appellants*.

_____

On Appeal from the United States District Court
for the Eastern District of North Carolina

_____

## BRIEF OF *AMICUS CURIAE* NORTH CAROLINA VOTERS AND THE
## LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA IN SUPPORT
## OF APPELLANTS

REQUESTING IMMEDIATE STAY

_____

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................. 1

INTRODUCTION.............................................................................................. 1

INTEREST OF AMICI.......................................................................................3

ARGUMENT...................................................................................................4

I. This Court Should Act to Preserve Federal Jurisdiction by Immediately Staying the Remand Order and Pending State Court Proceedings......................5

A. This Court has the authority to stay appealable remand orders..................5

B. Federal courts have the authority to enjoin further state court proceedings. 9

C. This Court should stay the remand order and enjoin further state court proceedings.................................................................................................11

II. Substantial Federal Due Process and Right to Vote Concerns at the Core of the State Board's Decision Warrant Federal Jurisdiction.................................. 14

A. Griffin's requested relief would violate voters' reliance interests and upset the status quo.......................................................................................16

B. Griffin threatens arbitrary, broad-gauged disenfranchisement................. 23

III. An Order Reversing and Vacating the Erroneous Remand Decision Will Immediately Enjoin All Further Proceedings in State Court............................28

CONCLUSION................................................................................................30

CERTIFICATE OF SERVICE............................................................................ 31

CERTIFICATE OF COMPLIANCE...................................................................... 31

1

# TABLE OF AUTHORITIES

**Page**

**Cases**

Acad. of Country Music v. Cont'l Cas. Co., 991 F.3d 1059
(9th Cir. 2021)..............................................................9, 11, 30, 31, 33, 34

E. Enterprises v. Apfel, 524 U.S. 498 (1998)..........................................19

Bennett v. Yoshina, 140 F.3d 1218 (9th Cir. 1998)........................19, 25, 27, 29, 32

Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970)....................................25

Bryan v. BellSouth Commc'ns, Inc., 492 F.3d 231
(4th Cir. 2007)............................................11, 12, 30, 31, 32, 33

Bush v. Gore, 531 U.S. 98 (2000)....................................................21

Canady v. Allstate Ins. Co., 282 F.3d 1005 (8th Cir. 2002)....................................13

Carlyle Inv. Mgmt. LLC v. Moonmouth Co., 779 F.3d 214 (3d Cir. 2015).......10, 11

Crawford v. Marion Cnty. Election Bd., 553 U.S. 181 (2008)................................19

Forty Six Hundred LLC v. Cadence Educ., LLC, 15 F.4th 70
(1st Cir. 2021)............................................................10

GenCorp, Inc. v. Olin Corp., 477 F.3d 368 (6th Cir. 2007)....................................12

Greidinger v. Davis, 988 F.2d 1344 (4th Cir. 1993)................................19

Griffin v. Burns, 570 F.2d 1065 (1st Cir. 1978)..............................18, 24, 25, 26, 27

Hendon v. N.C. State Bd. of Elections, 710 F.2d 177 (4th Cir. 1983)..............18, 25

Hoblock v. Albany Cnty. Bd. of Elections, 487 F. Supp. 2d 90
(N.D.N.Y. 2006) ............................................................25

In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig., 315 F.3d 417
(4th Cir. 2003)............................................................13

In re Lowe, 102 F.3d 731 (4th Cir. 1996)....................................9

Int'l Found. for Genetic Rsch. (Michael Fund) v. Shalala, 57 F.3d 1066
(4th Cir. 1995)............................................................12

Landgraf v. USI Film Prod., 511 U.S. 244 (1994)............................18, 19

League of Women Voters of N.C. v. North Carolina, 769 F.3d 224
(4th Cir. 2014)............................................................ 26

Lou v. Belzberg, 834 F.2d 730 (9th Cir. 1987)....................................14

Martingale LLC v. City of Louisville, 361 F.3d 297 (6th Cir. 2004).....................13

Maseda v. Honda Motor Co., 861 F.2d 1248 (11th Cir. 1988)...............................14

Matter of Meyerland Co., 910 F.2d 1257 (5th Cir. 1990).......................................13

National S.S. Co. v. Tugman, 106 U.S. 118 (1882) N.C. State Conf. of the NAACP
    v. Cooper, Case No. 1:18-cv-01034-LCB (M.D.N.C.)...................................33

Ne. Ohio Coal. for Homeless v. Husted, 696 F.3d 580 (6th Cir. 2012) …...............19

Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, No.
    1:16CV534(JCC/IDD) (E.D. Va. June 16, 2016)..........................................15

Phoenix v. Kolodziejski, 399 U.S. 204 (1969).........................................................19

Plaquemines Par. v. Chevron USA, Inc., 84 F.4th 362 (5th Cir. 2023)........10, 11, 12

Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331 (4th Cir. 2012) ……….…21

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996)...................................10, 17

Republican Nat'l Comm. v. N.C. State Bd. Elections, No. 5:24-cv-00547
    (E.D.N.C. Nov. 22, 2024) ...............................................................……23

Republican Nat'l Comm. v. N.C. State Bd. of Elections, 120 F.4th 390
    (4th Cir. 2024)....................................................................................9, 16

Reynolds v. Sims, 377 U.S. 533 (1964) ....................................... 18, 19, 27

Roe v. Alabama, 43 F.3d 574 (11th Cir. 1995)......................................................25

Slochower v. Bd. of Higher Ed., 350 U.S. 551 (1956)......................................29, 32

South Carolina v. Moore, 447 F.2d 1067 (4th Cir. 1971)......................................33

Voto Latino v. Hirsch, 712 F. Supp. 3d 637 (M.D.N.C. 2024) …...........................19

**Statutes**

28 U.S.C. § 1441.............................................................................................14, 16

28 U.S.C. § 1442 ………………...................................................................……14

28 U.S.C. § 1443 ...................................................................9, 12, 14, 16, 17

28 U.S.C. § 1447...............................................9, 10, 11, 12, 14, 32, 33, 34

28 U.S.C. § 1651...................................................................................................13

52 U.S.C. § 21083.............................................................................................. 31

28 U.S.C. § 2283..................................................................................................13

52 U.S.C. § 20302.............................................................................................. 23

N.C.G.S. § 120-70.101.........................................................................`.............24

N.C.G.S. § 143B-30.1.................................................................24
N.C.G.S. § 150B-21.9.................................................................24
N.C.G.S. § 163-22......................................................................21
N.C.G.S. § 163-82.1...............................................................21, 31
N.C.G.S. § 163-82.4...............................................................29, 31
N.C.G.S. § 163-82.7 …….............................................................21
N.C.G.S. § 163-82.10.................................................................28
N.C.G.S. § 163-82.11.................................................................21
N.C.G.S. § 163-166.16...............................................................28
N.C.G.S. § 163-182.9.................................................................23
N.C.G.S. § 163-230.2.................................................................29
N.C.G.S. § 163-230.3.................................................................29
N.C.G.S. § 163-258.4.................................................................23

**Rules**

CA4 R. 29(a)(4)(D)-(E)................................................................6

**Other Authorities**

8 N.C. Admin. Code § 17.0109....................................................24
18 James Wm. Moore et al., Moore's Federal Practice § 107.31(2)
    (3d ed. 2008)..........................................................................33
Review Commission Meeting Minutes (Mar. 27, 2024),
Federal Appeals Court weighs fate of GOP challenge of 225,000 NC voter
    registrations, Carolina J. (Oct. 28, 2024).....................................31

## INTRODUCTION

It has been 74 days since the November 2024 election and 39 days since election officials tabulated, confirmed, and reconfirmed the results of the state supreme court race, including *three* post-election recounts. Yet Appellee Jefferson Griffin, the losing candidate, continues his quest to have the state courts—on which he is a sitting judge and by appealing to the Court he wishes to join—negate over 60,000 qualified votes. That includes the ballots of *amici*, longtime North Carolina voters who did everything election officials instructed them to do before they cast their vote. Indeed, as the attached exhibits show, some have even retrieved their registration form to prove that they provided the very information that Griffin claims is missing and over which he seeks to discard their votes.

Each day that Griffin continues his pursuit of blatant unconstitutional relief is another that the targeted voters must live with the apprehension that they will be disenfranchised. *Amici* and voters like them followed the rules in place during the election, and to throw out their votes now would violate federal law and fundamental principles of due process.

Judge Griffin obscures his unprecedented request in technical questions of state law, and the District Court erroneously deferred to state courts because of that framing. But that is all beside the point because these cases turn on a

5

straightforward federal question: do federal voting protections permit the retroactive disenfranchisement of over 60,000 registered voters who are qualified to vote and followed the instructions of state election officials to do so? The clear answer is no. That these federally protected rights prevent the relief Griffin seeks, no matter the ultimate interpretation of state law, demonstrates why these cases belong in federal court.

This Court has the statutory power and responsibility to put an end to Griffin's pursuit of unconstitutional relief by immediately staying, and then vacating, the District Court's erroneous remand orders. Although the District Court abdicated its role to protect the federal rights of the targeted voters, this Court has jurisdiction to correct that error. Longstanding federal law reinforces this Court's authority to preserve its jurisdiction in the meantime by issuing a stay, confirming federal jurisdiction, and enjoining further state court proceedings.

## INTEREST OF *AMICI*[1]

*Amici* are (1) six qualified, longtime registered North Carolinians who voted in the November election and whom Griffin now seeks to disenfranchise despite their established qualifications to vote, Exs. 1-6; and (2) the League of Women

---

[1] No person, other than *amici* and their counsel, authored any part of this brief or contributed money to its preparation or submission. CA4 R. 29(a)(4)(D)-(E). The parties consent to this filing.

Voters of North Carolina, a nonpartisan, grassroots, membership organization dedicated to encouraging informed and active participation in government and advocating for its members' rights to vote, at least 25 of whom appear on Griffin's targeted-voters list. As described below, *amici* illustrate various aspects of the serious flaws in Griffin's target list and demonstrate why his tactics threaten voters' federal due process rights and right to vote. They speak to the legal reliance interests that voters have in following the established election rules that officials confirmed and communicated to voters at the time of this election and long before.

*Amici* also reveal the falsity of the basic factual premises of Griffin's protests. For example, Exhibits 1 and 2 include copies of the original voter registration forms that *amici* Dawson-McClure and Rudolph retrieved from county elections officials this month that *contain their respective Social Security numbers*—demonstrating the inaccuracy of Griffin's claim that he targets only "people who failed to provide their driver's license number or social security number when they registered to vote." JA101. The experiences of *amici* show the hazards of Griffin's crude efforts to disenfranchise voters who may lack information in their voter record as the result of *administrative*, not voter, error.

## ARGUMENT

*Amici* address three issues:

First, Griffin is mistaken that this Court lacks the power and jurisdiction to stay the District Court's erroneous remand order—a position that would insulate a properly appealable remand from review and deny this Court the ability to protect its own jurisdiction.

Second, federal courts are statutorily required to exercise proper federal removal jurisdiction over these cases. Returning them for state courts to decide whether to retroactively and arbitrarily invalidate over 60,000 votes cast in the November election poses a grave threat to federal rights.

Third, Griffin is wrong that nothing can be done about the ongoing state court proceedings if this Court reverses and vacates the improper remand. His incorrect argument that federal jurisdiction was irrevocably lost as soon as the District Court issued an erroneous order defies this Court's authority to issue orders protecting federal jurisdiction.

## I. This Court Should Act to Preserve Federal Jurisdiction by Immediately Staying the Remand Order and Pending State Court Proceedings

This Court should immediately exercise its authority to stay the District Court's erroneous remand order to protect federal jurisdiction and the federal rights of the targeted voters. As early as *January 24*, the North Carolina Supreme Court is poised to decide whether Judge Griffin will unseat one of that Court's own

members by overriding the confirmed results because these targeted voters relied on election officials' longstanding instructions. Griffin requests this relief based on what he calls a "low bar" standard of proof, and presents not a shred of evidence that any targeted voter has committed fraud or is actually unqualified to vote. Although this Court deferred resolution of the Board's stay request, it has the authority under federal law to issue such a stay and should do so immediately to prevent any further state court action in direct contravention of federal jurisdiction.

**A. This Court has the authority to stay appealable remand orders.**

This Court can stay the remand order notwithstanding its delivery to state court because it has appellate jurisdiction over the District Court's remand orders pursuant to 28 U.S.C. §1447(d). *See Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 398, 405-08 (4th Cir. 2024) (confirming appealability of remand pursuant to §1443 under §1447(d)).

Griffin's contrary argument defies longstanding precedent holding that "a federal court loses jurisdiction over a case as soon as its order to remand the case is entered" *only* when the remand order is "*not* reviewable" under §1447(d). *In re Lowe*, 102 F.3d 731, 734-36 (4th Cir. 1996) (emphasis added). But "remand orders in civil rights cases *are* reviewable." *Id*. (emphasis added). Accordingly, appellate courts consistently recognize that executed remand orders do not divest federal

jurisdiction over reviewable remand orders. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1063-64 (9th Cir. 2021); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*, 779 F.3d 214, 217-18 (3d Cir. 2015).[2]

Thus, this Court retains the power to stay an executed remand of a reviewable order because an *appealable* remand order is "treated like any other final judgment," and "[n]either section 1447(c)" nor any other authority supports the position that a "court lacks jurisdiction to stay an order that it retains jurisdiction to vacate." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 372 (5th Cir. 2023). In *Plaquemines*, as here, a district court had already delivered a remand order to the state courts. *See id.* at 367-70. The Fifth Circuit rejected the argument that "the federal courts lack jurisdiction to stay a remand order after a certified copy has been mailed to the clerk of the state court" as "inconsistent with the undisputed proposition" that federal courts can vacate an "already-mailed remand order because the order is appealable under section 1447(d)." *Id.* at 372. As the court recognized, federal courts have the authority to reconsider or vacate reviewable remand orders, but lack such authority only with respect to

---

[2] Likewise, "abstention-based remand orders" are also "immediately appealable under section 1291." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712-15 (1996)). Any other rule "would defeat the very purpose of permitting an appeal and leave a defendant who prevails on appeal holding an empty bag." *Id.*

10

unreviewable orders. *Id. Plaquemines* rejected the absurdity of a rule conditioning appellate review on how hastily a district court delivered the remand order and closed the docket. *Id*. at 371-73; *accord Acad. of Country Music*, 991 F.3d at 1063; *Carlyle Inv. Management*, 779 F.3d at 218.

In sum, this Court retains jurisdiction to review the remand order, and longstanding federal precedent reinforces this Court's corresponding authority to enter a stay. Griffin conflates decisions concerning unreviewable remand orders with those involving reviewable orders (Opp. 7, 9), disregarding the clear rules in *Plaquemines* and other cases.

Griffin also reads far too much into *Bryan v. BellSouth Commc'ns, Inc*., 492 F.3d 231, 241 (4th Cir. 2007), in contending that this Court held that federal courts lose jurisdiction over appealable remand orders pending appeal. Opp. 3. *Bryan* did "not resolve" that issue. 492 F.3d at 241. Rather, it *confirms* the federal courts' power to enjoin state court proceedings pursuant to the All Writs Act (discussed *infra*) when the state courts have proceeded but where federal courts properly have jurisdiction. *Id*. at 236-27. In dicta, *Bryan* discussed, but declined to reach, the issue of whether vacating the remand order on appeal years later would render all interim state court action taken during the pendency of the appeal a "nullity." *Id*. at

241. The Court did *not* conclude it lacked jurisdiction to stay state court proceedings to preserve its jurisdiction over the appeal in the first instance.[3]

Griffin's invented rule would deprive the federal courts of the ability to protect their jurisdiction. Where this Court has the power to review district court orders, it maintains—and should exercise where appropriate—the corresponding power to issue stays to protect its jurisdiction. *See Plaquemines*, 84 F.4th at 372-73. Congress has determined both that the federal courts should exercise jurisdiction over cases that, as here, implicate important federal civil rights laws (in 28 U.S.C. §1443), *and* that remand decisions involving §1443 are *excepted* from the usual rule sending cases immediately back to state court without appellate review (in 28 U.S.C. §1447(d)). District courts should not be encouraged to attempt to insulate their erroneous remands of important civil rights cases from this Court's proper review through the hasty and immediate transmission of review orders to state court.

---

[3] Griffin's other cases (Opp. 4) also do not support his proposition that this Court has no stay authority. *See Int'l Found. for Genetic Rsch. (Michael Fund) v. Shalala*, 57 F.3d 1066 (4th Cir. 1995) (unpublished) (mootness decision not addressing authority to stay improper remand); *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368 (6th Cir. 2007) (addressing mootness of already executed judgment).

## B. Federal courts have the authority to enjoin further state court proceedings.

The Court also has the authority under the All Writs Act to enjoin all the parties before it in these related cases—and, if necessary, the state courts—from taking any further action pending this appeal. The All Writs Act and Anti-Injunction Act permit injunctions of state court proceedings when authorized by Congress and in "aid of [federal] jurisdiction." 28 U.S.C. §§ 1651, 2283. Courts have long understood these statutes to confer federal authority to enjoin state court proceedings that threaten federal removal jurisdiction. *See, e.g.*, *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004); *Matter of Meyerland Co.*, 910 F.2d 1257, 1263 (5th Cir. 1990); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1013 (8th Cir. 2002). "As long as the original lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction to remove any subsequent state law action to federal court for purposes of applying the All Writs Act." *Canady*, 282 F.3d at 1013; *see also In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.*, 315 F.3d 417, 437 (4th Cir. 2003) (reaching similar result for non-removal context).

The very purpose of the Anti-Injunction Act's "in aid of its jurisdiction" provision is "to make clear the recognized power of the Federal courts *to stay*

13

*proceedings in State cases removed to the district courts*." *Maseda v. Honda Motor Co*., 861 F.2d 1248, 1254-55 (11th Cir. 1988) (emphasis added); *accord Lou v. Belzberg*, 834 F.2d 730, 740-41 (9th Cir. 1987). Where, as here, this Court has authority to review a remand order on appeal, an erroneous remand order does not extinguish this Court's power under the All Writs Act to correct that order and to preserve and protect fundamental federal rights.

Section 1447 supports this conclusion. Congress gave federal courts the power to issue "all necessary orders and process" to bring removed parties before it. 28 U.S.C. §1447(a). The language in §1447(c) setting forth the procedure for remanding a case improperly removed and authorizing state courts to "thereupon proceed with such case" must be read in conjunction with §1447(d), which provides that remand orders pursuant to "section 1442 or 1443 of this title shall be reviewable *by appeal or otherwise*." *Id*. (emphasis added). Thus, Section 1447 complements this Court's longstanding All Writs Act and Anti-Injunction Act authority to protect its jurisdiction, including enjoining state court proceedings that occur from erroneous remands.

## C. This Court should stay the remand order and enjoin further state court proceedings.

The Court has good reasons to exercise its authority to immediately stay the remand order and all further state court proceedings to preserve its appellate jurisdiction.

The State Board of Elections' opinion rejecting Griffin's protests is centered on a recognition that *federal* law prevents the post-election denial of eligible voters' rights. JA129. Griffin seeks reversal of that very conclusion in the state Supreme Court, leaving no doubt that federal issues are at the heart of this case. JA87-93 (contesting Board's federal law rulings), JA102 (requesting ruling that *post hoc* negating ballots would not violate federal law).

Griffin asks the state Supreme Court to decide those core federal law questions as a sword to undo the election. And he will undoubtedly attempt to use any such ruling as a shield against any subsequent federal challenge, if voters are forced to sue in federal court to undo their retroactive disenfranchisement. As discussed further *infra*, the District Court abdicated the federal responsibility to protect *amici*'s important federal rights. This Court should issue a stay and injunctive relief as soon as possible to avoid the need to address the effect of any state court rulings issued while the erroneous remand is pending and to preserve its

jurisdiction to resolve this appeal. *See, e.g.*, *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16CV534(JCC/IDD), 2016 WL 3346349, at *3-4 (E.D. Va. June 16, 2016) (collecting cases issuing stay of remand order for this reason).

The stay is warranted because the Board is likely to succeed on the federal issues in this Court, including that remand was erroneous. This Court recently confirmed, in a related appeal, that its review is not "confined to the argument for removal under Section 1443" but can also reach whether removal was proper pursuit to §1441. *RNC*, 120 F.4th at 398. Both provisions support removal here. The District Court's remand under both Sections 1441 and 1443—based on its incorrect conclusion that denying *amici's* fundamental federal rights raises only "tenuous federal interest" (JA324)—is erroneous and contrary to this Court's recent ruling. *RNC*, 120 F.4th at 399-405. Thus, federal law *required* the federal courts to maintain jurisdiction here, because this post-election quest to invalidate the democratic results decided by qualified, rule-abiding North Carolina voters necessarily implicates federal civil rights laws. The District Court contravened that law by improperly remanding.

The District Court further abused its discretion by abstaining notwithstanding the federal civil rights issues involved (supporting §1443

removal), based on its reasoning that the state Supreme Court is better-positioned to adjudicate serious federal voting rights issues in an election deciding *its own membership*. This case is about what retrospective remedies federal law can tolerate, not what state law prospectively requires voters and election officials to do. Federal courts with proper removal jurisdiction have "a strict duty to exercise" such conferred jurisdiction. *Quackenbush*, 517 U.S. at 716. The unusual procedures occurring in state court further show why. By taking the extraordinary steps of staying certification and agreeing to decide a writ of prohibition as soon as January 24, the Supreme Court has approved Griffin's departure from regular appellate and election protest procedures. *See* JA348-50 (Dietz, J., dissenting); JA339-41 (Earls, J., dissenting). At the same time, Griffin and the Republican Party are on a multifront attack in the lower state courts, searching for a favorable ruling regardless of the usual procedural rules or their lack of evidence supporting their protests. JA343 (Earls, J., dissenting) ("[N]owhere in his more than 4,000 pages of filings with this Court does Griffin identify a single voter who actually possessed either number yet did not provide it when registering."); NCSBE Br. 10 (describing state court proceedings). To protect federal rights and proper removal jurisdiction, this case belongs in federal court.

Finally, Griffin argues that a stay would be inappropriate because there is no status quo to protect. But the status quo is that *amici's votes were cast and counted*, following the settled rules of election officials, just like the more than 60,000 other votes Griffin targets. Within hours of the District Court's hasty remand, the North Carolina Supreme Court issued only a temporary stay of certification pending briefing before it, in no way (for now) altering the status quo: that those votes are valid and count towards the election result. This Court should immediately issue a stay to preserve the status quo, before the North Carolina state courts take any action to disturb it.

## II. Substantial Federal Due Process and Right to Vote Concerns at the Core of the State Board's Decision Warrant Federal Jurisdiction

Regardless of the answers to state law questions Griffin raises, the basic point for why this Court retains federal jurisdiction—and why Griffin's efforts must fail—is that no court can order Griffin's requested remedy consistent with federal law. Most obviously, Griffin's campaign to retroactively invalidate over 60,000 ballots violates the targeted voters' substantive due process rights and right to vote, including *amici*'s. This is because citizens' "constitutionally protected right to vote … and to have their votes counted … is of the essence of a democratic society." *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964). And the remedy Griffin

seeks would deteriorate "the election process [to] the point of 'patent and fundamental unfairness,'" such that it "erodes the democratic process." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)).

To protect these federal rights, federal courts "need not be timid, but may and should do what common sense and justice require" to forestall mass disenfranchisement. *Burns*, 570 F.2d at 1078. Despite Griffin and the District Court suggesting that the state can do what it will when it comes to state elections (JA58, JA301), the U.S. Constitution "does not permit . . . the exclusion of otherwise qualified persons from the franchise" in local elections just as much as federal elections. *Phoenix v. Kolodziejski*, 399 U.S. 204, 209 (1969); *accord Reynolds*, 377 U.S. at 554. Because due process in the elections context prohibits "surprise to the voters and disenfranchisement," courts consider "(1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d

1218, 1226-27 (9th Cir. 1998) (distilling caselaw). Both elements demonstrate that Griffin's efforts are unconstitutional.[4]

### A. Griffin's requested relief would violate voters' reliance interests and upset the status quo.

Griffin seeks to retroactively cancel the votes of *amici* and the rest of the targeted voters, unsettling the status quo of the rules applied for this election and many beforehand. This violates the basic "antiretroactivity principle" of the Due Process Clause that the government must "give[] people confidence about the legal consequences of their actions" and "settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265-66 (1994); *accord E. Enterprises v. Apfel*, 524 U.S. 498, 532 (1998) ("Retroactivity is generally disfavored in the law … in accordance with fundamental notions of justice that have been recognized throughout history." (citations and quotations omitted)).

---

[4] The outcome is the same if the Court considers this issue under the *Anderson-Burdick* balancing framework applied to government infringements of the right to vote. *See, e.g.*, *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 664 (M.D.N.C. 2024). As described here, arbitrarily disenfranchising over 60,000 voters despite their settled expectations relying on election officials is a severe burden on the right to vote that requires strict scrutiny. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190 (2008) (plurality op.); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012). No legitimate countervailing state interest would permit this capricious and broad-scale post-election disenfranchisement based only on missing information in an administrative database—not actual facts regarding voter qualification.

The targeted voters justifiably relied on election officials who instructed them how to register, that they had successfully done so, and that all they needed to do was vote. The State Board promulgates the official registration application, and county officials confirm and approve submitted registrations and then record the information into the voter file. N.C.G.S. §§ 163-82.1(b), 163-82.7(a), 163-82.11(d). The State Board is also authorized to issue rules and regulations that fill gaps and ensure that qualified North Carolina voters who want to vote can do so. *Id.* §§ 163-22(a) (2024) ("authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable so long as they do not conflict with" statutes), 163-22(c) (authority to "advise [county boards] as to the proper methods of conducting primaries and elections"). The overall responsibilities to correctly manage the registration system and articulate the settled rules for everyone to follow appropriately fall on election officials, not individual voters. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

North Carolina election officials have performed those responsibilities in good faith and navigated ambiguity to empower voters to participate in our elections. As in any difficult job, mistakes happen, including in the recording of information in registration databases. But it is unmistakable that election officials

have repeatedly reinforced to the targeted North Carolinians that they are rule-abiding, lawfully registered voters because they have provided (often years ago) everything the government required to confirm their eligibility. *See* JA121-29. These voters have relied on those assurances and participated in elections with confidence that their vote will count, including in elections spanning decades for most *amici*. Exs. 1-6. It is vital that the federal court retain jurisdiction to ensure those constitutional reliance interests are protected.

Take the first category Griffin targets: 60,273 voters on a public records request list who allegedly (but not definitely) lack data for driver's license or social security number from their registration form. JA107. *Each* of these voters applied on an official registration form that may have requested but did not require this purportedly missing information, and county election officials reviewed and approved their submitted applications without issue. JA121. No one disputes this. The failure of election administrators to record this information in a database says *nothing* about actual voter qualification. All targeted voters in this category did exactly what election officials told them to do and relied on those instructions when registering and when casting their votes. *See* JA128.

*Amici* illustrate further flaws in Griffin's argument for this category of targeted voters. Griffin's list includes individuals who, like some *amici*, went the

extra mile to *confirm* their active registration this fall and be certain that all they needed to do was vote. Exs. 1, 6. It includes voters, like some *amici*, who retrieved their voter registration application in recent weeks to confirm that they *in fact* provided the Social Security or driver's license information that Griffin claims is missing. Exs. 1 at 2, 2 at 4. Moreover, even the most risk-averse and resourceful voter made aware this fall that their registration was disputed would have been relieved by the government's reassurances that their vote would count. JA122-23 (State Board declined request to force voters to reestablish eligibility for this election because of due process concerns); Order at 4, *Republican Nat'l Comm. v. N.C. State Bd. Elections*, No. 5:24-cv-00547 (E.D.N.C. Nov. 22, 2024), ECF 73 (equity principles prevent rejecting votes this election). Griffin's effort to now disenfranchise these 60,273 people—reliance interest cast aside—is flatly unconstitutional.

Similar concerns apply to Griffin's second category: 1,409 overseas (including military) voters whom he claims cast an absentee ballot without providing copies of their photo identification.[5] Again, even assuming Griffin

---

[5] Griffin more recently says he targets 5,509 voters in this category across six counties. JA96. But his effort to disenfranchise *more* voters comes long past the statutory deadline. N.C.G.S. § 163-182.9(b)(4)(c). Either way, these votes are likely not outcome determinative because they would have to break significantly for Riggs, e.g., by over 3:1 if the total is 1,409.

correctly identifies such voters in the six counties he targets, they cannot be faulted for doing exactly what the government told them to do, several times over, in accord with federal law. N.C.G.S. § 163-258.4; 52 U.S.C. § 20302.[6]

The State Board unanimously enacted a rule confirming that the new state law requiring a copy of photo identification for domestic absentee voters did not apply to overseas voters. 8 N.C. Admin. Code § 17.0109(d). Last March, the Rules Review Commission—composed of "10 members to be appointed by the General Assembly," whose purpose is to ensure that agency rules are "within the authority delegated to the agency" and "reasonably necessary to implement or interpret an enactment of the General Assembly," N.C.G.S. §§ 143B-30.1(a), 150B-21.9(a)—also unanimously approved the Board's overseas voter rule. Rules Review Commission Meeting Minutes (Mar. 27, 2024), perma.cc/HN9K-AZ8H. The General Assembly's Joint Oversight Committee, which reviews any agency rule that the Commission adopts, did not cry foul. N.C.G.S. § 120-70.101. And no

---

[6] Griffin's selective targeting is itself unconstitutional. Like his discriminatory protests of only early and absentee voters in his first category, he may have real political motivations for his selection of overseas voters in only six of 100 counties. But such "later arbitrary and disparate treatment" of voters that "value one person's vote over that of another" violates the Fourteenth Amendment. *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam); *accord Ne. Ohio Coal. for Homeless*, 696 F.3d at 598. It is Griffin, not the Board, who attempts a "bizarre, differential treatment" of voters; only he seeks to disenfranchise them. *Cf.* JA77.

court, at any point, has agreed with Griffin's post-election position asking to disenfranchise these voters.

Like voters in the first category, these targeted overseas voters simply did what election officials told them to do when they voted. Reversing course now, particularly when it would be exceedingly difficult for our military and overseas voters to protect their rights, amounts "to a fraud upon the absent voters" that federal law does not permit. *Burns*, 570 F.2d at 1074-1075.

Griffin's tactics are reminiscent of—and worse than—the failed efforts to discard votes in *Griffin v. Burns*, where a losing candidate contested absentee votes in a primary election because a state court accepted the argument after the election that state law did not permit absentee voting in primaries. *Id.* at 1068; *see also Hendon*, 710 F.2d at 182 (applying *Griffin v. Burns* principles as "settled" in Fourth Circuit). The First Circuit upheld an injunction to prevent the "broad-gauged unfairness" of negating those votes, reasoning that "issuance of [absentee] ballots followed long-standing practice; and in utilizing such ballots voters were doing no more than following the instructions" of election officials. *Burns*, 570 F.2d at 1075-77. The "state's retroactive invalidation" of those ballots "violate[d] the voters'" Fourteenth Amendment rights. *Id.* at 1070. Numerous other courts have protected voters' rights by prohibiting such retroactive or last-minute disruptions of

the voting status quo. *See Hoblock v. Albany Cnty. Bd. of Elections*, 487 F. Supp. 2d 90, 94-96 (N.D.N.Y. 2006); *Roe v. Alabama*, 43 F.3d 574, 580-81 (11th Cir. 1995); *see also Briscoe v. Kusper*, 435 F.2d 1046, 1054-56 (7th Cir. 1970) (holding that board of elections violated due process rights because it "deviate[d] from … prior rules of decision … without announcing in advance its change in policy" and "those interested require certain knowledge of what is expected of them by the state").

Here, too, Griffin attempts to rewrite the rules of the election after its completion to change the result, despite voters' reliance interests. He argues that if the government made a mistake, and voters relied on it, the voters must bear the brunt because of their purported "ignorance" of election law. JA90. Griffin disrespects the core democratic ethos in this country that "favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). His argument fails because these voters "were doing no more than following the instructions of" election officials and they did not "ha[ve] a duty, at their peril, somehow to foresee" that a losing candidate would ask to rewrite those instructions and retroactively "invalidat[e] their ballots." *Burns*, 570 F.2d at 1074-76. And, apart from the legal defects, what Griffin demands is not based in reality. Voters rely on their election

officials because they lack the tools and information to second-guess whether a state registration form is correct or question the government telling them that they are properly registered.

Perhaps the government can prospectively address any actual inconsistencies with state election law that underlie Griffin's complaint; the State Board has already taken steps to clarify the registration form going forward. But that is not the issue before the Court. The pressing question here is whether Griffin can have a court discard these voters' ballots for this election. That is "at bottom" a federal issue because citizens' voting and reliance interests are "federally protected." *Id.* at 1077. Griffin's and the District Court's position that this is only a "tenuous federal interest" (JA324) diminishes the fundamental federal constitutional and statutory right to vote that "is of the essence of a democratic society." *Reynolds*, 377 U.S. at 554.

**B. Griffin threatens arbitrary, broad-gauged disenfranchisement.**

Besides trampling voters' reliance interests, Griffin's remedy asking to discard over 60,000 votes would mandate widescale disenfranchisement of long-registered and long-eligible *amici* and other voters. This violates the Fourteenth Amendment. *See Burns*, 570 F.2d at 1077; *Bennett*, 140 F.3d at 1226-27. Griffin's hasty targeting of voters threatens to disenfranchise many who

have already established their eligibility or who never should have been questioned to begin with. Thus, separate and apart from *amici*'s reliance interests, they are qualified voters and denying their votes violates federal rights. *Amici* illustrate how it would be difficult, nearing impossible, for all 100 counties to decipher which of their voters were required to provide their driver's license or social security number information but have never done so (if any). The risks of mass erroneous disenfranchisement from such a faulty process itself warrant federal jurisdiction and relief.

First, even accepting part of Griffin's premise that *some* voters *may* not have provided a driver's license or Social Security number on their initial registration (for which he offers no proof), that form is not talismanic; it is merely a "backup to the official registration record of the voter," not the be-all-end-all for whether a voter established her identity and eligibility. N.C.G.S. § 163-82.10(a). North Carolinians also do so at the time of voting by showing their identification, most often the very driver's license Griffin claims is missing.

For early or election day in-person voting, voters must show identification to confirm their eligibility. *Id*. § 163-166.16(a). Most use a North Carolina license, while several other accepted IDs require a Social Security number or establishment of the voter's identity and eligibility with government officials before the ID can be

obtained. *See id.*; 2022 EAVS Data Brief: North Carolina, U.S. Election Assistance Comm'n, https://perma.cc/9FW9-AMJM.[7] Absentee voters also provide their license or Social Security number on their absentee request form. N.C.G.S. §§ 163-230.2(a)(4), 163-230.3(b)(1).

Accordingly, all individual *amici*, and likely the bulk of the targeted voters, *showed their valid driver's license or similarly confirmed their identity and eligibility when voting in person or absentee*, even if information is missing from their registration record. Exs. 1-6. Griffin glosses over these key facts and offers no evidence to the contrary. And, as a legal matter, he fails to explain why voters providing their identification when they vote is insufficient to "correct[] that omission" that Griffin claims exists, because the voter "is determined by the county board of elections to be eligible to vote" before the county canvass. N.C.G.S. § 163-82.4(f). He instead seeks to retroactively disenfranchise 60,273 voters based on a trivial focus on information allegedly not received or maintained from a form due to *administrative* error. The Due Process Clause guards against this arbitrary

---

[7] The exact rate of usage of different forms of identification to vote is currently under consideration in *N.C. State Conf. of the NAACP v. Cooper*, Case No. 1:18-cv-01034-LCB (M.D.N.C.), which is awaiting a post-trial decision and the consideration of expert reports on the subject.

treatment when it comes to fundamental rights. *See Slochower v. Bd. of Higher Ed.*, 350 U.S. 551, 559 (1956).

Second, again assuming Griffin's (wrong) premise that some voters did not provide certain information when they registered, Griffin's target list is not a trustworthy source of who those voters are. Many reasons explain the absence of a driver's license or Social Security number from a voter's file that have nothing to do with eligibility.

To start, routine data-entry or recordkeeping errors likely account for such missing information. That cannot support categorically rejecting 60,000 validly cast ballots. *See Ne. Ohio Coal. for Homeless*, 696 F.3d at 597 (administrative error cannot disenfranchise voters). The registration forms of *amici* Dawson-McClure and Rudolph, for example, shows that they *did provide* their Social Security information, even if their voter files purportedly lack it. Exs. 1 at 2, 2 at 4. Griffin, in fact, acknowledged before the Board that these innocent errors occur, and it is on the government to fix them. N.C. State Bd. of Elections Hr'g at 01:02:45-01:03:40 (Dec. 11, 2024), https://tinyurl.com/mr4xynxn [hereafter "Hr'g"].

Griffin also targets voters who provided their information when registering but later changed their name or address, potentially generating a second record for

the same individual into which the earlier-provided driver's license or Social Security information may not have transferred. This is likely what happened to *amicus* Salama because of a 2012 intercounty move. Similarly, *amicus* Baddour alerted her county elections board of a post-marriage name change, which likely resulted in a failure to match preexisting DMV or Social Security records attached to her prior name and generated the missing field in her file. In such circumstances, the absence of information from the voter file is from routine government recordkeeping error, not any indication that the voter is ineligible.

Finally, Griffin targets voters for lacking information they were never required to provide. Voters can register even when their driver's license or Social Security number is unavailable. N.C.G.S. § 163-82.4(b); 52 U.S.C. § 21083(a)(5)(ii). Griffin admits he does not know how many voters fall into this category but threatens to disenfranchise them anyway. JA98; *see also Federal Appeals Court weighs fate of GOP challenge of 225,000 NC voter registrations*, Carolina J. (Oct. 28, 2024), https://tinyurl.com/23ppyn5a (Republican Party acknowledging unknown numbers); Hr'g at 1:00:00-1:01:45 (similar from Griffin's counsel).

Some targeted voters, including several *amici*, also registered before 2004, when such information was not required; they have only since adjusted their

existing, valid registration (e.g., a name or address change). Exs. 1 (first registering in North Carolina in 1994), 2 (in 1988), 3 (in 1992), 4 (in 1996), 6 (estimating over 40 years of voting in North Carolina); *see also* N.C.G.S. § 163-82.1(c) (describing permanence of registration). Griffin retroactively applies the 2004 law to voters who registered *before* the requirement existed but updated their registration afterward.

In sum, Griffin's factually erroneous process for targeting voters, and legally groundless theory for disenfranchising them, heighten the constitutional risk here. The reality of "massive *ex post* disenfranchisement" is why the Board administratively rejected Griffin's arguments and removed this matter to federal court. *See Bennett*, 140 F.3d at 1226. Maintaining federal jurisdiction is warranted to protect voting rights and guarantee "[t]he very essence of due process[:]" "the protection of the individual against arbitrary action." *Slochower*, 350 U.S. at 559.

## III. An Order Reversing and Vacating the Erroneous Remand Decision Will Immediately Enjoin All Further Proceedings in State Court

As explained *supra* Section I, this Court should avoid the future need to decide whether vacating the improper remand invalidates any interim action taken by the state courts by immediately staying the state court proceedings. And when

the Court ultimately vacates the remand order, it can and should confirm that federal law immediately halts and enjoins any further state court proceedings.

Upon reversing and vacating the remand order, federal courts will maintain complete removal jurisdiction over these cases. Where a case is properly removed to federal court, all further action by state courts is void. 28 U.S.C. §1447; *Bryan*, 492 F.3d at 240 ("removal deprives a state court of jurisdiction and requires the state court to cease all actions in the case" (citing *National S.S. Co. v. Tugman*, 106 U.S. 118, 122 (1882)); *see also South Carolina v. Moore*, 447 F.2d 1067, 1073 (4th Cir. 1971). There is no dispute that, upon removal, the state court is required to "stop all proceedings unless and until the case is remanded" and any action it then takes is "void ab initio, even if the case is subsequently remanded because the initial removal was improper." 18 James Wm. Moore et al., *Moore's Federal Practice* § 107.31(2) (3d ed. 2008) (citation omitted).

Courts have applied this same law to order that reversing and vacating an erroneous remand order necessarily strips state courts of jurisdiction over the proceedings and voids any subsequent state court actions, pursuant to §1447. *See, e.g.*, *Acad. of Country Music*, 991 F.3d at 1070. Should the state courts issue any interim orders (such as a temporary restraining order or preliminary injunction or writ directing that the election rules be rewritten, the election re-run, or the status

quo count of the votes cast in this election be altered) before this Court's reversal of the remand order, the removal of state court jurisdiction would at minimum void any attempt to *enforce* those orders in the state court. This Court may avoid reaching the issue, left unresolved in *Bryan*, 492 F.3d at 241, of whether those interim orders are a "nullity" in light of the vacated remand, by confirming that all further efforts to *enforce* any such interim orders in the state court would be void.

Griffin argues that even if this Court holds the remand improper, federal courts are *powerless* to do anything other than to "request" the state courts to return the case to the federal forum. Opp. 6. Griffin is wrong: should this Court confirm that these cases were properly removed, §1447 automatically halts any further proceedings in state court. *See, e.g.*, *Acad. of Country Music*, 991 F.3d at 1070. No federal court "request" would be required.

Given the timing and importance of these issues, *amici* respectfully urge this Court to, upon reversal, engage §1447 and this Court's authority to protect federal jurisdiction to enjoin all attempts by Griffin, related Appellees, and, if necessary, the state courts from further proceeding in these properly removed cases.

## CONCLUSION

The voters—not its justices—decide the membership of the Supreme Court of North Carolina. Federal courts have the authority and obligation to safeguard

these voters' fundamental federal rights. The Court should grant the Board's requested stay, reverse and vacate the remand order, and enjoin any further state court proceedings in these cases.

This 17th Day of January 2025              Respectfully Submitted,

/s/ *Jessica A. Marsden*
Jessica A. Marsden
Protect Democracy Project
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
jess.marsden@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
State Bar No. 50855
Attorney for *Amici Curiae*

Anne Harden Tindall
Protect Democracy Project
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
anne.tindall@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176
State Bar No. 31569

Hayden Johnson
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
hayden.johnson@protectdemocracy.org
(202) 579-4582
Fax: 202-769-3176

Stacey Layton
Danielle Leonard
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
dleonard@altber.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

Dated: January 17, 2025

/s/ *Jessica A. Marsden*
Jessica A. Marsden
*Attorney for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this amicus brief complies with Fed. R. App. P. 29(a)(4), 32(a)(5), and 32(g)(1). This amicus brief also complies with Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,402 words.

Dated: January 17, 2025

/s/ *Jessica A. Marsden*
Jessica A. Marsden
*Attorney for Amicus Curiae*

EXHIBIT 1



---

## Fwd: How to protect my vote

Fri, Dec 6, 2024 at 5:01 PM

---------- Forwarded message ---------

---------- Forwarded message ---------
From: **Spring Dawson-McClure** <srdm76@gmail.com>
Date: Fri, Dec 6, 2024 at 4:43 PM
Subject: How to protect my vote
To: <elections.sboe@ncsbe.gov>


Dear Chair and Members of the Board of Elections:

My name is Spring Dawson-McClure, and I am an eligible registered voter in North Carolina and a U.S. citizen. The NC Republican Party sent me a postcard with vague wording about an election protest, but it didn't include any information about how to protect my vote, so I am reaching out to you.

I was born and raised in North Carolina and attended UNC-Chapel Hill, registering to vote here for the first time when I was 18 years old in 1994. While out of the state for graduate school and to begin my career, I returned in 2012 and have lived at the same Orange County address ever since. I believe I've only missed one primary in that time.

Judge Griffin's protest doesn't include any individualized evidence that I failed to provide all the information the NCSBE requested when I registered to vote. If anything is missing from my voter file, I don't know why, but I do know that I showed my NC Driver's license to poll workers when I voted in person in the 2024 primary and general elections. I had also checked online to ensure that my registration was active after hearing reports of attempts to disenfranchise voters; my voter profile was indeed active. I'm a native North Carolinian, long time and regular voter, U.S. citizen, and it would be wrong, undemocratic, and violate my constitutional rights if the NCSBE were to throw out my vote.

I am shocked and distressed that it is even remotely possible that my vote and so many others' would not be counted. In this election cycle and so many others, I volunteered many weekends and evenings to get-out-the-vote efforts. I make this choice and commitment as a full-time working mother because I believe deeply that strong civic engagement is the foundation for the society that all of our children deserve. I've taken my kids to the polls their whole lives. With so much uncertainty in our country, I urge you to show our children that this fundamental aspect of democracy is intact.


Sincerely,
Spring Dawson-McClure, PhD

# NORTH CAROLINA VOTER REGISTRATION APPLICATION

Please use black or blue ink and print legibly.

**FOR OFFICE USE ONLY**   **07** Date Received

**1** Are you a citizen of the United States of America? ☑ Yes ☐ No

Will you be at least 18 years of age on or before election day? ☑ Yes ☐ No

Are you at least 16 years of age and understand that you must be 18 years of age on or before election day to vote? ☑ Yes ☐ No

**2**

Last Name (Required): **DAWSON-McCLURE**

Middle Name (Required): **ROSE**

First Name (Required): **SPRING**

Date of Birth MMDDYYYY (Required): [redacted]

☐ Jr ☐ Sr ☐ II ☐ III ☐ IV ☐ V

If you know your NC Voter Registration Number, please enter it here.

**3** Do you have a NC Driver's License or DMV-issued Identification card? If yes, provide the number. ☐ Yes ☑ No

County of Birth   State of Birth

If you do not have a NC DMV-issued license or ID card, do you have a Social Security Number? If yes, provide the last 4 digits. ☐ Yes ☐ No   X X X - X X - ████

**4** RESIDENTIAL ADDRESS INFORMATION (STREET ADDRESS WHERE YOU LIVE) - No P.O. Boxes or Rural Routes

Address (where you live) (Required): [redacted]

City: [redacted]

Apartment, Lot, or Unit Number

County: **ORANGE**

Have you lived here for 30 days or more? ☑ Yes ☐ No

State: **NC**   Zip Code: **27278**

If "No," date moved? MMDDYYYY   Phone (Optional)

**5** MAILING ADDRESS

Mailing Address (if different from your residential address)

City   State   Zip Code

**MAP/DIAGRAM**
If you do not have a street address, draw a map of where you reside. Please include roads and landmarks.

**6**

| GENDER | RACE | | ETHNICITY | POLITICAL PARTY AFFILIATION |
|---|---|---|---|---|
| ☑ Female | ☐ African American/Black | ☐ American Indian/Alaska Native | ☐ Hispanic/Latino | ☑ Democrat  ☐ Republican  ☐ Libertarian |
| ☐ Male | ☐ Asian | ☐ Multiracial | ☑ Not Hispanic/Latino | ☐ Unaffiliated  ☐ Other |
| | ☑ White | ☐ Other | | If you indicate a political party that is not currently qualified or you do not indicate a choice, you will be listed as "Unaffiliated." |

**7** PREVIOUS REGISTRATION (Name & Address used for your last voter registration - If applicable)

Last Name used in Previous Registration   First Name

Previous Address   State   Zip Code

Previous City   Previous County

I attest, under penalty of perjury, that in addition to having read and understood the contents of this form, that:

- I am a United States citizen, as indicated above;
- I am at least 18 years old, or will be at the time of the next general election, or I am at least 16 years old and understand that I must be at least 18 years on election day of the general election in order to vote;
- I shall have been a resident of North Carolina, this county, precinct, or other election district for 30 days before the election in which I intend to vote;
- I will not vote in any other county or state after submission of this form and if I am registered elsewhere, I am cancelling that registration at this time; and
- I have not been convicted of a felony, or if I have been convicted of a felony, I have completed my sentence, including any probation or parole. My citizenship and voting rights are automatically restored upon completion of the sentence. No special document is needed.

Signature: [signature]   Date: **9/15/12**

**WARNING:** If you sign this form and know it to be false, you can be convicted of a

# EXHIBIT 2



---

## Fwd: 6th generation North Carolinian - MY VOTE IS VALID

**Copland Rudolph** <copland.rudolph@acsgmail.net>            Thu, Dec 19, 2024 at 2:07 PM
To: ██████████████████

### Copland Arnold Rudolph

**Executive Director  ¦She/Her/Hers**



PO Box 3196
Asheville, NC 28802…..
(828) 350-6174

www.acsf.org
@ACSFound
@ACSF828

To schedule a meeting with me visit: Copland's Calendar

**NOTE: I live and work on traditional Cherokee lands**. ᎠᏆ ᏕᎭᏎᏪ ᏣᏯ, home to members of the Tsalagiyi Detsadanilvgi, ᏣᏯᎩᏕᏣᏕᏟᎭᏯᏈ, the Eastern Band of the Cherokee Indians. (Guide to indigenous land and territorial acknowledgements)

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Fri, Dec 6, 2024 at 8:14 AM
Subject: RE: [External] 6th generation North Carolinian - MY VOTE IS VALID
To: Copland Rudolph <copland.rudolph@acsgmail.net>

Good morning,

Thank you for contacting the NC State Board of Elections.

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks. If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.


Thank you for contacting us.


Regards,

**Jessica Buie**

**Learning and Operations Manager**

www.ncsbe.gov



---

**From:** Copland Rudolph <copland.rudolph@acsgmail.net>
**Sent:** Thursday, December 5, 2024 9:35 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] 6th generation North Carolinian - MY VOTE IS VALID

---

You don't often get email from copland.rudolph@acsgmail.net. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

---

Dear Chair and Members of the Board of Elections:


My name is Susan Copland Arnold Rudolph, and I am an eligible, registered North Carolina voter and a U.S. citizen. I learned from a voting rights advocate that my name is on a list of voters in Buncombe County subject to an election protest from Judge Jefferson Griffin based on allegedly "incomplete" voter files. I've seen no correspondence from Judge Griffin or anyone else alerting me to this challenge to my vote.


I am 57 and was born and raised in Asheville, North Carolina. My family has been in Western North Carolina since the early 1800's and my great grandmother worked the polls every election and she often took me with her. While out of the state for college, I voted for the first time in 1988 . I have returned and voted in North Carolina several times in my adult life and have been back here for twelve years at the same address. I am a regular voter in NC elections. This year, I voted in-person in the primary and general elections, both times using my NC Drivers' License as my required Photo ID.
I'm not aware of Judge Griffin or anyone else producing to the NCSBE any individualized evidence that I am not properly registered to vote in Buncombe County or that I've ever failed to provide information requested of me by elections officials. If my voter file is "incomplete," I don't know why. If my file includes any errors or is missing information, that is not my fault and certainly shouldn't invalidate my vote. **I followed all of the rules in registering and voting; to throw out my ballot after the election would be undemocratic, would cast doubt on the validity of the Supreme Court election, and would violate my constitutional rights.**

I work in public education and have spent my entire career in service to my community. Hurricane Helene has been devastating to our region and yet we voted in record numbers despite not having potable water or wifi or electricity when voting started. To have a sore loser challenge my vote is worse than insulting- it is tone deaf to the reality on the ground. To my knowledge, the last person found committing voter fraud in our region was Mark Meadows.

There is work to be done in our city and the fact that I have to worry about my vote being overturned leaves me gravely concerned for the state of our state. At a time when politicians should be rolling up their sleeves and supporting WNC, Judge Griffin is demonstrating why the majority of voters in NC made a different choice.

In community,
Copland Rudolph

**Copland Arnold Rudolph**
**Executive Director  ⎸She/Her/Hers**

PO Box 3196
Asheville, NC 28802.....
(828) 350-6174

www.acsf.org
@ACSFound
@ACSF828

To schedule a meeting with me visit: Copland's Calendar

**NOTE: I live and work on traditional Cherokee lands**. ᎠᎦᎵ ᏏᎻᏃᏌ ᏓᎳᏴ, home to members of the Tsalagiyi Detsadanilvgi, ᏓᎳᏴᏌᏃᏓᏟᎯᏴᎩ, the Eastern Band of the Cherokee Indians. (Guide to indigenous land and territorial acknowledgements)

# NORTH CAROLINA VOTER REGISTRATION APPLICATION
Please use black or blue ink and print legibly.

**07** Date Received

**1** Are you a citizen of the United States of America? ☒ Yes ☐ No

IF YOU CHECKED "NO" IN RESPONSE TO THIS QUESTION, DO NOT SUBMIT THIS FORM.

Will you be at least 18 years of age on or before election day? ☒ Yes ☐ No

Are you at least 16 years of age and understand that you must be 18 years of age on or before election day to vote? ☐ Yes ☐ No

IF YOU CHECKED "NO" IN RESPONSE TO BOTH OF THESE QUESTIONS ABOVE, DO NOT SUBMIT THIS FORM.

**2**

Last Name (Required): Rudolph

First Name (Required): Copland

Middle Name (Required): Arnold

☐ Jr ☐ Sr ☐ II ☐ III ☐ IV ☐ V

Date of Birth MMDDYYYY (Required): [redacted]

If you know your NC Voter Registration Number, please enter it here.

County of Birth: Buncombe

State of Birth: NC

**3** Do you have a NC Driver's License or DMV-Issued identification card? If yes, provide the number. ☐ Yes ☒ No

If you do not have a NC DMV-Issued license or ID card, do you have a Social Security Number? If yes, provide the last 4 digits. ☐ Yes ☐ No   X X X - X X - ▮▮▮

## RESIDENTIAL ADDRESS INFORMATION (STREET ADDRESS WHERE YOU LIVE) - No P.O. Boxes or Rural Routes

**4**

Street Address where you live (Required): [redacted]

Apartment, Lot, or Unit Number:

City (Required): [redacted]

State: N C   Zip Code: [redacted]

County:

Have you lived here for 30 days or more? ☒ Yes ☐ No

If "No," date moved? MMDDYYYY:

Phone (Optional): [redacted]

## MAILING ADDRESS

**5**

Mailing Address (if different from your residential address):

City:   State:   Zip Code:

MAP/DIAGRAM
If you do not have a street address, draw a map of where you reside. Please include roads and landmarks.

**6**

| GENDER | RACE | ETHNICITY | POLITICAL PARTY AFFILIATION |
|---|---|---|---|
| ☒ Female | ☐ African American/Black | ☐ Hispanic/Latino | ☒ Democrat ☐ Republican ☐ Libertarian |
| ☐ Male | ☐ American Indian/Alaska Native | ☐ Not Hispanic/Latino | ☐ Unaffiliated ☐ Other |
| | ☐ Asian ☐ Multiracial | | If you indicate a political party that is not currently qualified or you do not indicate a choice, you will be listed as "Unaffiliated." |
| | ☒ White ☐ Other | | |

## PREVIOUS REGISTRATION (Name & Address used for your last voter registration - If applicable)

**7**

Last Name used in Previous Registration:   First Name:

Previous Address:   State:   Zip Code:

Previous City:   Previous County:

I attest, under penalty of perjury, that in addition to having read and understood the contents of this form, that:
· I am a United States citizen, as indicated above;
· I am at least 18 years old, or will be at the time of the next general election, or I am at least 16 years old and understand that I must be at least 18 years old on election day of the general election in order to vote;
· I shall have been a resident of North Carolina, this county, precinct, or other election district for 30 days before the election in which I intend to vote;
· I will not vote in any other county or state after submission of this form and if I am registered elsewhere, I am canceling that registration at this time; and
· I have not been convicted of a felony, or if I have been convicted of a felony, I have completed my sentence, including any probation or parole.
(Citizenship and voting rights are automatically restored upon completion of the sentence. No special document is needed.)

Signature (Required)

Date: 9/29/12

WARNING: If you sign this form and know it to be false, you can be convicted of a Class I felony.

To Mail: Peel, strip, fold and seal.

Please confirm whether your change of address with the United States Postal Service affects your current voter registration in **BUNCOMBE COUNTY**. To ensure your continued eligibility to vote, please complete the applicable sections of this card. **Your signature below is required. You must return this card within 30 days of 7/11/2013.**

| Voter Name. | Voter Registration No. | Move Date |
|---|---|---|
| COPLAND ARNOLD RUDOLPH | 000000380926-4 | 4/1/2013 |

| **BOX A (USPS Address on File)** | **BOX B (Current Voter Registration Address)** |
|---|---|
| 87 E EUCLID PKWY<br>ASHEVILLE, NC 28804 | 496 CLARKS CHAPEL RD<br>WEAVERVILLE NC, 28787    AUG 0 6 2013 |

I, COPLAND ARNOLD RUDOLPH, certify that (check all appropriate boxes):

| My correct residential address for voting purposes is: | ☒ Address in Box A | ☐ Address in Box B |
|---|---|---|
| My correct mailing address is: | ☒ Address in Box A | ☐ Address in Box B |

☐ My correct address is <u>neither</u> Box A <u>nor</u> Box B above. My correct address is:

_____

☐ I have moved and no longer reside in **BUNCOMBE COUNTY**. I understand that I will be removed as a voter in this county and that I will need to register to vote in my new county or state of residence.

☐ I now reside in _____ County/State.

☐ My name has changed to: _____

**If this voter is deceased, please complete the section below if you are a near relative.**

| Date of Death: | County of Death: |
|---|---|
| Your Name: | Relationship: |

Signature (Required)          Date          Phone

NCOA/3 (2010)

7/22/13

EXHIBIT 3



---

## Fwd: [External] A very eligible voter

**Jennifer Baddour** <jenbaddour@gmail.com>                                 Tue, Dec 10, 2024 at 10:34 AM

*Always,*
*Jen*

Begin forwarded message:

**From:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject: RE: [External] A very eligible voter**
**Date:** December 9, 2024 at 8:40:10 AM EST
**To:** Jennifer Baddour <jenbaddour@gmail.com>

Good morning, Jennifer.

Thank you for contacting the NC State Board of Elections.

In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.

Thanks again for contacting us.

NCSBE Operation Support

---

**From:** Jennifer Baddour <jenbaddour@gmail.com>
**Sent:** Friday, December 6, 2024 4:44 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] A very eligible voter

> You don't often get email from jenbaddour@gmail.com. Learn why this is important
> **CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Dear Chair and Members of the Board of Elections:

My name is Jennifer Baddour, and I am an eligible, registered North Carolina voter and a U.S. citizen. I received notice from the North Carolina Republican Party that Judge Jefferson Griffin is protesting my vote. He appears to be alleging that my vote shouldn't count because my voter registration is "incomplete." He did not provide any guidance on how I can make sure that my ballot is not tossed out.

I was born and raised in North Carolina and have lived in the state all but 1.5 years of my 50 years of life. I registered to vote in 1992 and have regularly voted in North Carolina elections ever since, including for 15 years from my current address. When I voted in person in this year's primary and general election, I showed poll workers my NC Driver's License as my required photo ID.

As far as I know, neither Judge Griffin nor anyone else has offered individualized evidence to the NCSBE that I am not properly registered to vote in Orange County or that I've ever failed to provide information requested of me by elections officials. I followed the rules in registering to vote and in being a regular participant in NC elections for more than 3 decades. **To toss out my valid ballot based on someone else's alleged data error or omission would be unfair, undemocratic, and violate my sacred right to vote.**

I volunteered as a greeter at the polls on UNC's campus and was overwhelmed with pride and excitement to see so many first time voters exercise their right to vote. We rang a bell and cheered them on, and I told them that while they might not see actual fireworks, they will feel them in their heart when they put their vote in to be counted. To think that my vote is in question is nothing short of devastating. We can do better.

Sincerely,
Jennifer Baddour



Non-Profit
US Postage
**PAID**
North Carolina
Republican Party

1506 Hillsborough Street
Raleigh, NC 27605

## *** NOTICE ***

Jennifer Lynn Baddour, your vote may be affected by one or more protests filed in relation to the 2024 General Election.

**Please scan this QR code to view the protest filings.** Please check under the county in which you cast a ballot to see what protest may relate to you.



For more information on when your County Board of Elections will hold a hearing on this matter, please visit the State Board of Elections' website link found on the Protest Site (via the QR code).

Paid for by the North Carolina Republican Party.

58*1*16516*********5-DIGIT 27517
JENNIFER BADDOUR OR CURRENT RESIDENT

EXHIBIT 4



---

## ATTN: ELECTIONS BOARD *IMPORTANT*

**Heba Salama Photography** <heba@hebasalama.com>                    Thu, Dec 5, 2024 at 1:42 PM

the response I got:

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Thu, Dec 5, 2024 at 12:34 PM
Subject: RE: [External] ATTN: ELECTIONS BOARD *IMPORTANT*
To: Heba Salama Photography <heba@hebasalama.com>

Good afternoon, Heba.

Thank you for contacting the NC State Board of Elections.

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.

In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.

Thanks again for contacting us.

NCSBE Operation Support

USCA4 Appeal: 25-1018     Doc: 70     Filed: 01/17/2025     Pg: 54 of 62



NORTH CAROLINA
STATE BOARD OF ELECTIONS

---

**From:** Heba Salama Photography <heba@hebasalama.com>
**Sent:** Thursday, December 5, 2024 10:52 AM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] ATTN: ELECTIONS BOARD *IMPORTANT*

---

You don't often get email from heba@hebasalama.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Dear Chair and Members of the Board of Elections:

My name is Heba Salama, and I am an eligible registered voter in North Carolina and a U.S. citizen. While I have received no notice from Judge Jefferson Griffin about his protest of his election loss, I learned from a contact at a voting rights organization that my name is on the list of Orange County voters whose ballots he is protesting because of supposedly incomplete voter registration files. This protest threatens my fundamental constitutional rights, and I ask that the Board reject it and finalize NC elections.

I was born at UNC hospital in Chapel Hill in 1978, lived in Chapel Hill my entire childhood, and first registered to vote in North Carolina when I turned 18 in 1996. I've been a regular voter in NC ever since. I have never had an address outside of the state of North Carolina. I have moved occasionally within the Triangle area, most recently from Chatham County back to Orange County 7 years ago.

**My vote is lawful and must be counted**. Judge Griffin has not provided any individualized evidence that I failed to provide all the information that election officials asked me to provide when I submitted my voter registration application decades ago or when I updated it over the years as I continued to be a consistent participant in NC elections.

Regardless of what is in my voter file, I have provided sufficient information to election officials to prove my identity and eligibility to vote, including when I voted early in-person in the 2024 general election at Seymour Center on Homestead Road, in Chapel Hill, and showed my NC Driver's License. I also showed my NC Driver's License when I voted in this year's primary election in March. Because of this, I have already given election officials whatever information the protest claims is missing from my voter file.

If there was some mistake made by election officials, that cannot be a reason to reject my vote. I have relied in good faith on my election officials informing me that I am properly registered to vote. My vote shouldn't be taken away because of any mistake the government made that is completely out of my control.

USCA4 Appeal: 25-1018     Doc: 70     Filed: 01/17/2025     Pg: 55 of 62

I am shocked that my name appears on any list, as I have lived in Chapel Hill or Raleigh my entire 46 years, and I am a business owner in the area for over 15 years.  This protest is not about election integrity; throwing out my valid vote would harm the integrity of this election. I followed the rules, and any effort to change the rules applying to my ballot after the election is over would be undemocratic.

This feels very much like I am being profiled because of the origin and ethnicity of my name (which I have also never changed for marriage). I expect that you will take this information, from myself and others affected, and do what is right to uphold our votes.

Sincerely,
Heba Salama

--

www.hebasalama.com

Best of the Knot

Best Photographer: Chapel Hill Magazine

919-368-1506

heba@hebasalama.com

[Quoted text hidden]

# EXHIBIT 5

USCA4 Appeal: 25-1018          Doc: 70          Filed: 01/17/2025          Pg: 57 of 62



---

## Fwd: Protect my voting rights!

**Iryna Merideth** <iryna.merideth@gmail.com>                                        Fri, Dec 6, 2024 at 4:16 PM

---------- Forwarded message ---------
From: **Iryna Merideth** <iryna.merideth@gmail.com>
Date: Fri, Dec 6, 2024 at 4:14 PM
Subject: Protect my voting rights!
To: <elections.sboe@ncsbe.gov>

Dear Chair and Members of the Board of Elections:

My name is Iryna Merideth and I am an eligible registered voter in North Carolina and a U.S. citizen. I received a notice from the NC Republican Party that my ballot is being challenged by Judge Jefferson Griffin in his protest of his loss to Justice Allison Riggs, but the notice did not tell me how to protect my vote.

I registered to vote 11 years ago at my naturalization ceremony in Durham, NC. I was born and raised in Ukraine and chose to become a U.S. citizen, like my husband and child (now children), in 2013. I have lived at my current address in Orange County for 10 years and voted regularly in NC elections.

As far as I'm aware, Judge Griffin hasn't offered any individualized evidence that I failed to provide all the information that election officials asked me to provide when I submitted my voter registration application. I don't know what, if anything, is missing from my voter file, but I do know I have provided sufficient information to election officials to prove my identity and eligibility to vote. For instance, I voted in person during both the 2024 primary and the 2024 general election and showed my NC Driver's license to poll workers in both elections. If there is an error in my file, it is not of my making, and it would be wrong to take away my vote because of a mistake (if there even was one) by someone at the Board of Elections.

**I am an eligible NC voter, U.S. citizen, and followed the rules for voting in this state. My ballot was rightly counted and to throw it out now would be undemocratic and violate my constitutional rights**.

I am deeply concerned about and frustrated with this attempt to interfere with my ability to exercise my voting rights, as well as with the lack of transparency demonstrated in Judge Griffin's protest. The right to vote - and have every vote count - is a cornerstone of democracy. For this right to be questioned in this way threatens the integrity of the electoral process.

Sincerely,
Iryna Merideth

 Protect Democracy

---

## Fwd: Protect my voting rights!

---

**Iryna Merideth** <iryna.merideth@gmail.com>                                    Mon, Dec 30, 2024 at 3:01 PM

███████████████████████████████████████ Please find the NCSBE correspondence below.

Thanks,
- Iryna

---------- Forwarded message ---------
From: **SVC_SBOE.Elections** <Elections.SBOE@ncsbe.gov>
Date: Mon, Dec 9, 2024 at 8:27 AM
Subject: RE: [External] Protect my voting rights!
To: Iryna Merideth <iryna.merideth@gmail.com>

Good morning, Iryna.

Thank you for contacting the NC State Board of Elections.

*The State Board of Elections is providing the following information, in response to messages received from voters asking about a mailing they received concerning an election protest.*

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.

In terms of when or whether you would need to provide information, the State Board first must decide whether the protest makes legally valid arguments before the protests would move toward a hearing on the evidence as to specific voters' eligibility. If the State Board determines that this will go to a hearing, you and any other affected voters will be contacted in writing, either by the State Board or your county board of elections.

Thanks again for contacting us.

NCSBE Operation Support

**From:** Iryna Merideth <iryna.merideth@gmail.com>
**Sent:** Friday, December 6, 2024 4:14 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] Protect my voting rights!

You don't often get email from iryna.merideth@gmail.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

[Quoted text hidden]

 image001.png
31K

EXHIBIT 6



## Fwd: [External] Please reject voter challenges

**Rani Dasi** <ranidasi@yahoo.com>                                      Tue, Dec 31, 2024 at 1:49 PM

What can you do to make the world better?  Consider the environment.  Please recycle.

Begin forwarded message:

**From:** "SVC_SBOE.Elections" <elections.sboe@ncsbe.gov>
**Date:** December 6, 2024 at 2:11:39 PM EST
**To:** Rani Dasi <ranidasi@yahoo.com>
**Subject: RE: [External] Please reject voter challenges**

Good afternoon,

Thank you for contacting the NC State Board of Elections.

A candidate for N.C. Supreme Court, Jefferson Griffin, has challenged the election results and has alleged that some voters were not eligible to vote in the election.

If you received a notice from the North Carolina Republican Party stating, "your vote may be affected by one or more protests filed in relation to the 2024 general election," it means that Mr. Griffin has alleged that your ballot is ineligible.

The State Board and county boards of elections are considering these challenges in the coming weeks.

If you would like to get in touch with the parties to this proceeding, the email address for the candidate bringing the challenges is info@jeffersongriffin.com. The email address for the candidate opposing the challenges is team@riggsforourcourts.com.

Thank you for contacting us.

Regards,

**Jessica Bule**

**Learning and Operations Manager**

www.ncsbe.gov



**From:** Rani Dasi <ranidasi@yahoo.com>
**Sent:** Friday, December 6, 2024 1:18 PM
**To:** SVC_SBOE.Elections <Elections.SBOE@ncsbe.gov>
**Subject:** [External] Please reject voter challenges

---

You don't often get email from ranidasi@yahoo.com. Learn why this is important

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

---

Dear members of the North Carolina Board of Elections,

I clearly remember excitedly looking forward to turning 18 so that I could vote. When my 18th birthday came, I immediately registered to vote and have consistently voted in nearly every election over the next 40+ years! I am also a three-time elected official which means my registration status has been repeatedly verified by the Board of Elections and when I voted most recently in the November 2024 general election, I showed my driver's license as required **AND** confirmed that there is no missing information in my voter registration file.

So you might imagine my surprise at seeing my name and the names of others who have consistently been confirmed as registered voters included on the list of protested voters.  It seems clear that this "protest" includes a random list of names in a poorly disguised effort to suppress votes.

I ask the board not to throw out my vote and the votes of the many North Carolinians who participated in our democratic process.

Thank you for your service and please feel free to contact me if you have any questions or I can provide any other information.

Thank you

Rani Dasi