No. 25-1018, 25-1019, 25-1024

# In the United States Court of Appeals for the Fourth Circuit

---

JEFFERSON GRIFFIN,

*Plaintiff-Appellee,*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS

*Defendant-Appellant,*

*and*

ALLISON RIGGS; NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS ET AL.,

*Intervenor-Appellants.*

---

**AMICUS CURIAE BRIEF OF**
**HONEST ELECTIONS PROJECT**
**IN SUPPORT OF PLAINTIFF-APPELLANT**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA (NO. 5:24-CV-724)
(THE HON. RICHARD E. MYERS II)

---

SUPPORTING AFFIRMANCE

JASON TORCHINSKY
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643A
Washington, DC 20037
(540) 341-8809 (facsimile)

---

*Counsel for Amicus Curiae*
*Honest Elections Project*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* .................................... 1

ARGUMENT ................................................................................................... 1

    I.    The NVRA Does Not Apply to State Elections or to the Casting of Ballots ..................... 1

    II.   This Case is Distinguishable from *RNC v. N.C. State Board of Elections* ........................ 6

CONCLUSION ................................................................................................. 9

CERTIFICATE OF COMPLIANCE ................................................................ 11

CERTIFICATE OF SERVICE ......................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*ACORN v. Edgar,*
   56 F.3d 791 (7th Cir. 1995) .................................................................. 2, 4

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
   570 U.S. 1 (2013) ............................................................................... 3, 4

*Broyles v. Texas,*
   618 F. Supp. 2d 661 (S.D. Tex. 2009) ..................................................... 3

*Burrell v. Bayer Corp.,*
   918 F.3d 372 (4th Cir. 2019) .................................................................. 9

*Dobrovolny v. Nebraska,*
   100 F. Supp. 2d 1012 (D. Neb. 2000) ...................................................... 3

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,*
   463 U.S. 1 (1983) .................................................................................. 9

*James v. Bartlett,*
   359 N.C. 260 (2005) .............................................................................. 8

*Oregon v. Mitchell,*
   400 U.S. 112 (1970) .............................................................................. 6

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
   120 F.4th 390 (4th Cir. 2024) ............................................................. 6, 7

*Virginia Uranium, Inc. v. Warren,*
   587 U.S. 761 (2019) .............................................................................. 5

*Mi Familia Vota v. Fontes,*
   719 F. Supp. 3d 929 (D. Ariz. 2024) ....................................................... 2

*Young v. Fordice,*
   520 U.S. 273 (1997) .............................................................................. 4

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) .............................................................................. 5

**Statutes**

52 U.S.C. § 20102 ................................................................................................ 2

52 U.S.C. § 20501 ................................................................................................ 2

52 U.S.C. § 20504 ................................................................................................ 5

52 U.S.C. § 20505 ............................................................................................. 4, 5

52 U.S.C. § 20506 ................................................................................................ 5

52 U.S.C. § 20507 ............................................................................................. 5, 7

52 U.S.C. § 20511 ................................................................................................ 5

52 U.S.C. § 21083 ................................................................................................ 6

**Constitutional Provisions**

U.S. Const., art. I, § 4 ......................................................................................... 3

**Other**

Fed. R. App. P. 26.1 .............................................................................................. i

Fed. R. App. P. 29 ........................................................................................... 1, 11

Fed. R. App. P. 32 ............................................................................................... 11

Allison Riggs's Opening Brief, No. 25-1024 .................................................... 1, 6

N.C. Alliance for Retired Americans' Opening Brief, No. 25-1019 ................. 1, 6

N.C. State Board of Elections' Opening Brief, No. 25-1018 ............................ 1, 6

Petition for Writ of Prohibition ...................................................................... 7, 8

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Honest Elections Project is a nonpartisan organization devoted to supporting the right of every lawful voter to participate in free and honest elections. Through public engagement, advocacy, and public-interest litigation, the Project defends fair and reasonable measures that legislatures put in place to protect the integrity of voting. The Project supports commonsense voting rules and opposes efforts to reshape elections for partisan gain. It has a significant interest in this case, as it implicates the constitutionally preeminent authority of states to set the rules that govern state elections.

## ARGUMENT

It is curious that a case like this presenting no federal issues would end up in federal court. Even stranger, it is surprising that this case would be appealed to the Fourth Circuit after a federal district court thoroughly evaluated the underlying issues and found that remand to the North Carolina Supreme Court was warranted. Nevertheless, Intervenor-Appellants argue that Plaintiff-Appellee Jefferson Griffin's requests raise federal issues. *See* State Bd. of Elections' Opening Br. at 20–21; Allison Riggs's Opening Br. at 5–6; N.C. All. for Retired Ams. Opening Br. at 4–5. This claim is not accurate for the reasons articulated herein.

### I.    The NVRA Does Not Apply to State Elections or to the Casting of Ballots.

There's a good reason why Plaintiff-Appellee did not rely upon the National Voter Registration Act (NVRA) as a cause of action in the petition for writ of prohibition he filed in the North Carolina Supreme Court. The NVRA has no application to this case, whether as a claim or as a legitimate defense.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *amicus curiae* certify that this brief was not authored in whole or in part by counsel for any party and that no person or entity other than *amicus curiae* or its counsel has made a monetary contribution to the preparation or submission of this brief. All parties have consented to this filing.

1

The NVRA, by its own terms, only applies to "elections for Federal office." *See* 52 U.S.C. §§ 20501(b)(1), (2) ("The purposes of this Act are—(1) to establish procedures that will increase the number of eligible citizens who register to vote in ***elections for Federal office***; (2) to make it possible for Federal, state, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in ***elections for Federal office***.") (emphases added). In fact, the phrase "Federal office" appears no fewer than twenty-eight times in the text of the NVRA, whereas the phrase "state office" does not appear once. *See generally id.* §§ 20501-20511. The NVRA even explicitly defines what it means by "elections for Federal office": elections for "the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress." *Id.* § 20102 (citing 52 U.S.C. § 30101(3)).

As other federal appellate courts have correctly recognized, the NVRA "is designed to make it easier to register to vote in federal elections," but not necessarily in state elections, where States can and do impose additional registration requirements beyond the federal "ceiling" imposed by the NVRA. *ACORN v. Edgar*, 56 F.3d 791, 792 (7th Cir. 1995). For example, Arizona requires that applicants present "documentary proof of citizenship ('DPOC')" to register to vote in state elections, and those who fail to provide such proof are restricted to voting *only* in federal elections. *See Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 948 (D. Ariz. 2024) (noting that "Federal-Only voters represent less than half a percent of all the State's registered voters."). This state/federal dichotomy would not exist but for the NVRA, which "precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 20 (2013) (citing 52 U.S.C. § 20508(b)(1)). Hence, in the absence of the NVRA, Arizona could lawfully impose the

DPOC requirement for voting in all elections conducted within the State; with the NVRA, Arizona cannot extend the DPOC requirement to federal elections but can still lawfully apply it in state elections.

Clearly, the NVRA operates against a background principle of reserved State power over election administration. Indeed, the limited scope of the NVRA is not attributable to any failure by Congress to legislate to the outer limits of its constitutional authority, but instead due to inherent constitutional constraints on congressional power over state elections. "The NVRA was enacted under Congress' constitutional authority to regulate *federal* elections," a power which is explicitly conferred upon Congress by the Constitution. *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1028 (D. Neb. 2000) (emphasis added). Article I, Section 4, Clause 1 provides that "the Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." However, while "[t]his provision gives Congress a general supervisory authority over federal elections under which it may supplement state regulations or substitute its own," it "does not give Congress the power to directly regulate state voter registration procedures in state elections." *Dubrovolny*, 100 F. Supp. 2d at 1028. "The courts that have addressed the issue have concluded that the Act does not apply to state or municipal registration . . . without a federal component." *Broyles v. Texas*, 618 F. Supp. 2d 661, 690 (S.D. Tex. 2009).

The courts that have weighed in on the NVRA's scope include the Supreme Court of the United States. In *Young v. Fordice*, the Court began its opinion by explaining that "[t]he NVRA requires States to provide simplified systems for registering to vote in *federal* elections, *i.e.*, elections for federal officials, such as the President, congressional Representatives, and United

States Senators." 520 U.S. 273, 275 (1997) (emphasis in original). In *Arizona v. Inter Tribal Council of Arizona*, the Court again affirmed that "the Elections Clause empowers Congress to regulate *how* federal elections may be held, but not *who* may vote in them," clarifying that the Elections Clause confers a power of limited scope that does not even extend to every aspect of federal elections (much less to state elections). 570 U.S. at 16. In his concurring opinion in the *Arizona* case, Justice Kennedy warned that "a court must not lightly infer a congressional directive to negate the States' otherwise proper exercise of their sovereign power" over elections. *Id.* at 22 (Kennedy, J. concurring in part).

In short, "Congress was given the whip hand" by Article I, Section 4, "[b]ut this was subject in the first place to the reservation to the states of the power to fix qualifications for voters for Senators and Representatives." *ACORN*, 56 F.3d at 794. In short, the NVRA "does not purport to alter the qualifications fixed by the State . . . for voters in [state] elections." *Id.* Instead, by enacting the NVRA, "Congress has exercised its power under [Article I, Section 4] to alter state regulation of federal elections." *Id.* at 795. Nothing more, nothing less.

The NVRA likewise has little to say on the subject of casting ballots; indeed, the title of the statute itself makes clear that it is an act concerned almost exclusively with *voter registration* for federal elections. The word "ballot" appears only twice in the statutory text and neither mention is relevant to this case. *See* 52 U.S.C. § 20505(c)(A) (carving out an exception from the NVRA's first-time in-person voting requirement for persons who are "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act"); *see also id.* § 20511(2)(B) (imposing criminal penalties upon persons who knowingly and willfully procure, cast, or tabulate ballots that are known to be fraudulent under state law).

The NVRA was designed and enacted to accomplish a limited set of goals. The statute requires States to permit persons to register to vote "with respect to elections for Federal office" under three circumstances: (1) when applying for a drivers' license, 52 U.S.C. § 20504(a); (2) using a mail voter registration form devised by the Federal Election Commission or the State itself, *id.* § 20505(a); and (3) at "all offices in the State that provide public assistance" or administer services to persons with disabilities, *id.* § 20506(a). In addition, the NVRA authorizes States to remove ineligible persons from their voter rolls for certain enumerated reasons in compliance with specified guidelines (while prohibiting "systematic" removals of voters during the 90 days preceding any federal election) and authorizes enforcement of the Act's requirements by both the Department of Justice and private right of action brought by any "aggrieved" person. *Id.* §§ 20507(a)(3), (4); 20510(a), (b). That's it.

Because the NVRA speaks only to the front-end process of registering to vote, and not to the back-end process of casting and counting ballots, this Court cannot now volunteer to fill in the blanks on Congress's behalf. "[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant; and here that silence is telling." *See Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017). Congress is of course aware that a vote is not effective unless a ballot is cast and counted, but federal courts "are hardly free to extend a federal statute to a sphere Congress was well aware of but chose to leave alone. In this, as in any field of statutory interpretation, it is [the judicial] duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019).

In enacting the NVRA, Congress deliberately addressed only those areas in which it is constitutionally empowered to override contrary state election regulations: namely, regulating the "Times, Places and Manner" of federal elections. The NVRA is constitutional because it

5

regulates only within Congress's constitutional lane, requiring States to offer certain methods of registration for federal elections and request only certain information when doing so. And of course, even if the NVRA purported to regulate state elections or the casting of ballots, a federal statute cannot expand legislative power beyond the metes and bounds established by Article I, Section 4. "It is difficult to see how words could be clearer in stating what Congress can control and what it cannot control. Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress." *See Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) (Harlan, J., concurring in part). This Court should not upset the federalist system established in the Constitution by holding that the NVRA does anything more than it says it does.

## II.    This Case is Distinguishable from *RNC v. N.C. State Board of Elections*.

Each Appellant argues that this case is controlled by the recent Fourth Circuit panel decision in *Republican National Committee v. N.C. State Board of Elections*. *See* State Bd. of Elections' Opening Br. at 16; Allison Riggs's Opening Br. at 11; N.C. All. for Retired Ams. Opening Br. at 2–3. That is not the case, and the two matters are easily distinguishable.

Both *RNC* and this matter arise out of the failure of the State Board of Elections before December 2023 to request certain information that North Carolina and federal law deem mandatory for voter registration (namely, either a driver's license number or a Social Security number). 120 F.4th 390, 399 (4th Cir. 2024); *see also* 52 U.S.C. § 21083(a)(5)(A). The *RNC* plaintiffs—like the Plaintiff here—only brought claims under state law, but "the entire [RNC] lawsuit—as pled—turn[ed] on whether Defendants violated HAVA," a federal statute. 120 F.4th at 398–99. The *RNC* plaintiffs essentially alleged that the same inaction by defendants simultaneously violated both state and federal law but nevertheless declined to assert any federal claims.

Additionally, the Fourth Circuit panel that decided *RNC* expressed concern that "Plaintiffs requested relief [] presents a potential conflict with the 90-day 'quiet period' contained in Section 8(c) of the NVRA," which prohibits States from "systematically" removing ineligible voters from the voter rolls during the ninety days immediately preceding a federal election. *Id.* at 401 (quoting 52 U.S.C. § 20507(c)(2)(A)). Because the *RNC* plaintiffs filed their complaint within the NVRA quiet period, the court noted that "the NVRA poses a threshold federal question that must be answered before Plaintiffs can prevail on their claim," without deciding whether the relief requested in that case actually violated the NVRA. *Id.* at 402.

Here, no such federal threshold question needs to be resolved because Plaintiff-Appellee has never alleged that the State Board's failure to collect drivers' license or Social Security numbers violated any federal statute, he does not seek relief concerning any federal election, and he does not seek to vindicate any rights under federal law. Instead, Plaintiff-Appellee has alleged only it would violate *North Carolina* law for the State Board to count ballots in a state election that were cast by persons who registered to vote without providing all information required under state law. In his petition, Plaintiff-Appellee explains that "his election protest challenges only the outcome of *his* election" and "doesn't even affect an ineligible voter's vote in *another* race in 2024 elections, much less cause that voter to be removed from voter rolls." Pet. for Writ of Prohibition at 29. Furthermore, he only requested that the North Carolina Supreme Court "order the ineligible votes discounted and the election results retabulated," not a declaratory judgment that he simply be declared the winner of the election outright. *Id.* at 68. Hence, there is a possibility that granting Plaintiff-Appellee's requested relief may not even change the outcome of *his* election, but it will certainly not impact the outcome of any federal race.

Moreover, Plaintiff-Appellee's petition for writ of prohibition was filed on December 18, 2024, *after* Election Day and well outside of the NVRA quiet period. Unlike in *RNC*, he did not ask the Board to remove any person from the voter rolls at any time whatsoever, much less during the quiet period. Instead, Plaintiff-Appellee exhausted his state administrative remedies before filing suit and only sought the original jurisdiction of the state supreme court once it became clear that he would be injured by the Board's failure to exclude ineligible votes from its final tabulation. After all, as the North Carolina Supreme Court recognized two decades ago, "[t]o permit unlawful votes to be counted along with lawful ballots in contested elections effectively 'disenfranchises' those voters who cast legal ballots, *at least where the counting of unlawful votes determines an election's outcome*." *James v. Bartlett*, 359 N.C. 260, 270 (2005) (emphasis added). Given the exceedingly narrow 734-vote margin in this race—a fact of which no party could have been aware *before* the election—Plaintiff-Appellee has plausibly alleged that the counting of approximately 60,000 unlawful votes will be outcome-determinative here.

Although the NVRA is discussed in the petition, it is only addressed in anticipation of defenses that the State Board had already raised in its rulings on Plaintiff-Appellee's election protests (and which he reasonably expected the Board to raise again in arguments before judicial tribunals). As the original state court petition explains, "the State Board . . . has injected various federal statutes into this case, even though those statutes, by their own terms, do not apply." Pet. for Writ of Prohibition at 11. Plaintiff-Appellee then correctly explained that the NVRA "applies only to elections for federal office and not elections to state offices," and that "the statute only applies to state efforts to remove voters from the voter rolls." *Id.* at 28–29. For the purposes of federal question jurisdiction, "[i]t is *not* enough that federal law becomes relevant by virtue of a 'defense . . . anticipated in the plaintiff's complaint." *Burrell v. Bayer Corp.*, 918 F.3d 372, 381

(4th Cir. 2019) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). But that's the only reason that the NVRA was ever raised here. From the start of this litigation, Plaintiff-Appellee has consistently maintained that the NVRA does not apply to state elections and has properly addressed the statute only as an anticipated defense.

Therefore, the "'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other of the state claims is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13. As demonstrated in Section I, the "law that creates the cause of action" here must necessarily be state law because the NVRA: (1) applies only to federal elections, not state elections; and (2) governs only registration procedures, not the casting of ballots. There is no indication that any of the claims are federal allegations masquerading as state-law causes of action, because the petition neither alleges any violation nor requests any remedy that would violate the NVRA. Therefore, there is no basis for finding federal question jurisdiction.

## CONCLUSION

For the foregoing reasons, the district court correctly concluded that no federal subject-matter jurisdiction exists in this case, and this Court should therefore affirm the district court's order remanding this matter to the North Carolina Supreme Court.

January 22, 2025                                              Respectfully submitted,

                                                             */s/ Jason Torchinsky*
                                                             Jason Brett Torchinsky
                                                                  *Counsel of Record*
                                                             Holtzman Vogel Baran
                                                             Torchinsky Josefiak PLLC
                                                             2300 N Street NW, Suite 643
                                                             Washington, DC 20037
                                                             (202) 737-8808

jtorchinsky@holtzmanvogel.com

*Counsel for Amicus Curiae the*
*Honest Elections Project*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 2,905 words, excluding portions exempted by Rule 32(f).

*/s/ Jason Torchinsky*
Holtzman Vogel Baran
Torchinsky Josefiak PLLC
2300 N Street NW, Suite 643
Washington, DC 20037

**CERTIFICATE OF SERVICE**

On January 22, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Jason Torchinsky*
Holtzman Vogel Baran
Torchinsky Josefiak PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
