**No. 25-1018, 25-1019, 25-1024**

# In the United States Court of Appeals for the Fourth Circuit

JEFFERSON GRIFFIN,

*Petitioner-Appellee,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Respondent-Appellant,*

*and*

ALLISON RIGGS, ET AL.,

*Intervenors-Respondents.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

**BRIEF OF PETITIONER-APPELLEE
JEFFERSON GRIFFIN**

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
   *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
will@lkcfirm.com

*Counsel for Petitioner-Appellee*

# Table of Contents

**Page**

Table of Authorities.................................................................................... iii

Introduction.................................................................................................1

Statement of Jurisdiction .........................................................................3

Issues Presented ........................................................................................3

Statement of the Case ...............................................................................4

    I.   North Carolina Exercises Its Sovereign Prerogative to Regulate Voting and Decide Who May Vote........................................4

    II.   Judge Griffin and Justice Riggs End the November 2024 Election in a Virtual Tie, and Judge Griffin Timely Files Election Challenges.................................................................................7

    III.  Judge Griffin Asks the Supreme Court of North Carolina to Stay Certification Until His Timely Protests Are Lawfully Resolved. .............................................................................................9

Summary of the Argument .....................................................................12

Standard of Review .................................................................................16

Argument...................................................................................................17

    I.   The District Court Did Not Abuse Its Discretion When It Abstained and Remanded This Fundamentally State-Law Dispute. ................................................................................................17

        A.  The District Court correctly abstained under *Burford*................17

            1.   This case presents difficult questions of state election law bearing on the state's sovereign power to regulate elections for state office, the importance of which transcends this case..........................................................18

            2.   Federal intervention would unduly disrupt the establishment of a coherent state election policy. ................20

            3.   None of the arguments against abstention are sound. ........23

    B.   Alternatively, this Court should affirm the district court's decision to abstain under *Pullman*. ...................................29

II.   The District Court Lacked Removal Jurisdiction. ...........................31

    A.   Judge Griffin's petition for a writ of prohibition could not be removed because it is not a "civil action." ......................32

    B.   Section 1443(2) does not support removal jurisdiction. .............34

    C.   Section 1441 does not support removal jurisdiction. ..................36

III.  The Court Should Decline to Order the District Court to "Request" the Return of This Case from the Supreme Court of North Carolina. ...................................................................................42

Conclusion....................................................................................................48

Certificates of Compliance ........................................................................50

Certificate of Service ...................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. McVey,*
   37 F.4th 89 (4th Cir. 2022) ................................................................. 16

*Alstom Caribe, Inc. v. George P. Reintjes Co., Inc.,*
   484 F.3d 106 (1st Cir. 2007) ............................................................... 44

*Am. Trucking Ass'ns, Inc. v. Smith,*
   496 U.S. 167 (1990) ............................................................................ 39

*Anne Arundel Cnty. v. BP P.L.C.,*
   94 F.4th 343 (4th Cir. 2024) ......................................................... 37, 38

*Bouvier v. Porter,*
   386 N.C. 1 (2024) ........................................................................... 6, 39

*Burrell v. Bayer Corp.,*
   918 F.3d 372 (4th Cir. 2019) .............................................................. 40

*Burt v. Titlow,*
   571 U.S. 12 (2013) ........................................................... 1, 15, 25, 47

*Caleb Stowe Asscs., Ltd. v. Albemarle Cnty.,*
   724 F.2d 1079 (4th Cir. 1984) ........................................................... 28

*Carpenter v. Wichita Falls Indep. Sch. Dist.,*
   44 F.3d 362 (5th Cir. 1995) ................................................................ 41

*Chrysler Credit Corp. v. Country Chrysler, Inc.,*
   928 F.2d 1509 (10th Cir. 1991) .......................................................... 43

*City & Cnty. of S.F. v. Civil Serv. Comm'n of City & Cnty. of S.F.,*
   No. 3:02-cv-3462, 2002 WL 1677711 (N.D. Cal. July 24, 2002) ................... 34

*Clingman v. Beaver,*
   544 U.S. 581 (2005) .................................................. 41

*Common Cause v. Lewis,*
   358 F. Supp. 3d 505 (E.D.N.C. 2019) ................................. 14, 34, 35

*Def. Distributed v. Bruck,*
   30 F.4th 414 (5th Cir. 2022) ....................................... 45, 46

*Def. Distributed v. Platkin,*
   48 F.4th 607 (5th Cir. 2022) ....................................... 46

*Def. Distributed v. Platkin,*
   55 F.4th 486 (5th Cir. 2022) ....................................... 46, 47

*Def. Distributed v. Platkin,*
   617 F. Supp. 3d 213 (D.N.J. 2022) .................................. 46

*Def. Distributed v. Platkin,*
   No. 3:19-cv-4753, 2022 WL 14558237 (D.N.J. Oct. 25, 2022) ...................... 46

*Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit,*
   597 F.2d 566 (6th Cir. 1979) ....................................... 35

*Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs,*
   39 F.4th 202 (4th Cir. 2022) ....................................... 31

*Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.,*
   710 F.2d 170 (4th Cir. 1983) ....................................... 18, 25

*Erie Ins. Exch. v. Md. Ins. Admin.,*
   105 F.4th 145 (4th Cir. 2024) ...................................... 20

*First Penn-Pac. Life Ins. Co. v. Evans,*
   304 F.3d 345 (4th Cir. 2002) ....................................... 16, 17, 23

*Forty Six Hundred LLC v. Cadence Educ., LLC,*
   15 F.4th 70 (1st Cir. 2021) ........................................ 2, 15, 43, 44, 47

iv

*Freeman v. Burlington Broads.,*
    204 F.3d 311 (2d Cir. 2000) ........................................................ 25

*Friedler v. Stifel, Nicolaus, & Co.,*
    108 F.4th 241 (4th Cir. 2024) ..................................................... 38

*GenCorp, Inc. v. Olin Corp.,*
    477 F.3d 368 (6th Cir. 2007) ...................................................... 47

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) .................................................................... 42

*Greenberg v. Veteran,*
    889 F.2d 418 (2d Cir. 1989) .................................................. 26, 27

*Griffin v. N. Carolina State Bd. of Elecs.,*
    No. 5:24-cv-731 (E.D.N.C.) ................................................... 10, 22

*Gross v. Weingarten,*
    217 F.3d 208 (4th Cir. 2000) ...................................................... 22

*Gunn v. Minton.*
    568 U.S. 251 (2013) ............................................ 14, 36, 38, 39, 40

*Hammer v. U.S. Dep't of Health & Hum. Servs.,*
    905 F.3d 517 (7th Cir. 2018) ...................................................... 26

*Harris v. U.S. Department of Transportation FMCSA,*
    122 F.4th 418 (D.C. Cir. 2024) ................................................... 33

*Harrison v. NAACP,*
    360 U.S. 167 (1959) .................................................................... 27

*Hennis v. Hemlick,*
    666 F.3d 270 (4th Cir. 2012) ...................................................... 16

*Hutchison v. Miller,*
    797 F.2d 1279 (4th Cir. 1986) .................................................... 41

*Johnson v. Collins Entm't Co., Inc.,*
　199 F.3d 710 (4th Cir. 1999) ................................................20, 21, 22, 23, 26

*Johnson v. Fankell,*
　520 U.S. 911 (1997) ...............................................................................24

*Jordahl v. Democratic Party of Va.,*
　122 F.3d 192 (4th Cir. 1997) ...............................................................45

*Kirkpatrick v. Lenoir Cnty. Bd. of Educ.,*
　216 F.3d 380 (4th Cir. 2000) ...........................................................22, 40

*La. Power & Light co. v. City of Thibodaux,*
　360 U.S. 25 (1959) .........................................................20, 21, 28, 31

*In re Levy,*
　173 F.3d 424, 1999 WL 134191 (4th Cir. 1999) ......................................43, 45

*Manchester v. U.S. Org. Crime Drug Enf't Task Force of Mid-Atl.
　Region,*
　900 F.2d 253, 1990 WL 36734 (4th Cir. 1990) ..................................................43

*In re Manchester,*
　892 F.2d 1041, 1989 WL 156941 (4th Cir. 1989) ...........................................43

*Marshall v. Crotty,*
　185 F.2d 622 (1st Cir. 1950) ................................................................14, 32

*Martin v. Stewart,*
　499 F.3d 360 (4th Cir. 2007) ..............................................................28

*In re Martin,*
　861 F.2d 265, 1988 WL 109303 (4th Cir. 1988) ..............................................43

*Mass. Council of Constr. Emps., Inc. v. White,*
　495 F. Supp. 220 (D. Mass. 1980) ................................................................35

*Mayor & City Council of Balt. v. BP P.L.C.,*
  31 F.4th 178 (4th Cir. 2022) ...................................................16

*McQueary v. Jefferson Cnty.,*
  819 F.2d 1142, 1987 WL 37567 (6th Cir. 1987) ...........................35

*Miller v. Toyota Motor Corp.,*
  554 F.3d 653 (6th Cir. 2009) ...............................................43

*Minnesota v. Nat'l Tea Co.,*
  309 U.S. 551 (1940) ..........................................................41

*MLC Auto., LLC v. Town of S. Pines,*
  532 F.3d 269 (4th Cir. 2008) ...............................................28

*Moore v. Hosemann,*
  591 F.3d 741 (5th Cir. 2009) ...............................................27

*N.C. Pub. Serv. Co. v. S. Power Co.,*
  104 S.E. 872 (N.C. 1920) ...............................................14, 32

*N.C. Pub. Serv. Co. v. S. Power Co.,*
  282 F. 837 (4th Cir. 1922) ..................................................32

*Neal v. Wilson,*
  112 F.3d 351 (8th Cir. 1997) ...........................................13, 26

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989) .......................................................22, 25

*In re Nine Mile Ltd.,*
  673 F.2d 242 (8th Cir. 1982) ...........................................43, 45

*Oregon v. Mitchell,*
  400 U.S. 112 (1970) .............................................4, 19, 21, 24

*Pendleton v. Jividen,*
  96 F.4th 652 (4th Cir. 2024) ...............................................48

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................................41

*Ponder v. Joslin*,
    138 S.E.2d 143 (N.C. 1964) ...............................................33

*Ponder v. Joslin*,
    262 N.C. 496 (1964) ...........................................................21

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) .............................2, 3, 12, 13, 17, 20, 26, 27, 30

*In re Red Barn Motors, Inc.*,
    794 F.3d 481 (5th Cir. 2015) ........................................43, 44

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ...............................14, 23, 24, 38

*Royal Canin U.S.A., Inc. v. Wullschleger*,
    604 U.S. __, No. 23-677, 2025 WL 96212 (Jan. 15, 2025) .................36, 37, 38

*Shafique v. Equity Residential Real Est. Inv. Tr.*,
    No. 1:24-CV-00380 (UNA), 2024 WL 1989113
    (D.D.C. May 1, 2024) ........................................................33

*In re Smith*,
    114 F.3d 1247 (D.C. Cir. 1997) .........................................33

*Sones v. Simpson*,
    No. 10-CV-2475, 2010 WL 5490801 (M.D. Pa. Dec. 3, 2010) ......................26

*Starnes v. McGuire*,
    512 F.2d 918 (D.C. Cir. 1974) ..........................................43

*State v. Inman*,
    224 N.C. 531 (1944) ...........................................................13

*State v. Kelliher,*
    381 N.C. 558 (2022) ...................................... 41

*State v. Whitaker,*
    19 S.E. 376 (N.C. 1894) .................................. 32

*Tasner v. U.S. Indus., Inc.,*
    379 F. Supp. 803 (N.D. Ill. 1974) ...................... 32

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ................. 1, 13, 27, 30

*Town of Nags Head v. Toloczko,*
    728 F.3d 391 (4th Cir. 2013) ................... 19, 20, 30

*Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S. Carolina,*
    433 F.3d 365 (4th Cir. 2005) ........................... 19

*United States v. Buculei,*
    262 F.3d 322 (4th Cir. 2001) ........................... 47

*United States v. Flores-Granados,*
    783 F.3d 487 (4th Cir. 2015) ....................... 29, 31

*United States v. Sastrom,*
    96 F.4th 33 (1st Cir. 2024) ...................... 3, 45, 47

*Victoria Palms Resort Inc. v. City of Donna,*
    234 F. App'x 179 (5th Cir. 2007) ...................... 34

*Vlaming v. W Point Sch. Bd.,*
    10 F.4th 300 (4th Cir. 2021) ........................... 38

*Voices for Int'l Bus. & Educ., Inc. v. NLRB,*
    905 F.3d 770 (5th Cir. 2018) ........................... 47

ix

*W. Va. Parents for Religious Freedom v. Christiansen,*
    124 F.4th 304 (4th Cir. 2024) .......................................................29

*W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.,*
    23 F.4th 288 (4th Cir. 2022) ........................................................36

*In re Warrick,*
    70 F.3d 736 (2d Cir. 1995) ..........................................................44

*Wash. Gas Light Co. v. Prince George's Cnty. Council,*
    711 F.3d 412 (4th Cir. 2013) ..................................................17, 21

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) ....................................................................39

*Welch v. McKenzie,*
    765 F.2d 1311 (5th Cir. 1985) .....................................................41

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020) .............................13, 18, 19, 27, 30

*Wolpoff v. Cuomo,*
    792 F. Supp. 964 (S.D.N.Y. 1992) ...............................................35

## Constitutional Provisions and Statutes

U.S. Const. art. I, § 4, cl. 1 ....................................................................39

N.C. Const. art. VI, § 2(1)...............................................................4, 6, 39

N.C. Const. art. VI, § 3(1)........................................................................4

N.C. Const. art. VI, § 2(4).......................................................................39

N.C. Const. art. VI § 3(2).......................................................................39

N.C. Const. art. VIII..........................................................................4, 39

28 U.S.C. § 1291 .....................................................................................3

28 U.S.C. § 1441 ................................................................10, 14, 31, 32, 33, 36, 48

28 U.S.C. § 1442 .........................................................................................27

28 U.S.C. § 1443 ..............................................2, 10, 13, 14, 26, 27, 31, 32, 33, 35, 48

28 U.S.C. § 1451 .........................................................................................33

52 U.S.C. § 20302 .................................................................................5, 24, 39

52 U.S.C. § 20507 .................................................................................5, 24, 39

52 U.S.C. § 21081 .................................................................................5, 24, 39

52 U.S.C. § 21083 .................................................................................5, 24, 39

N.C. Gen. Stat. § 7A-25 ..............................................................................6, 22

N.C. Gen. Stat. § 7A-26 ..............................................................................6, 22

N.C. Gen. Stat. § 163-22 .............................................................................6, 21

N.C. Gen. Stat. § 163-28 .............................................................................6, 21

N.C. Gen. Stat. § 163-82.1 ...........................................................................4, 6

N.C. Gen. Stat. § 163-82.4 ...........................................................4, 5, 37, 38, 39

N.C. Gen. Stat. § 163-166.16 .......................................................................5, 6

N.C. Gen. Stat. § 163-182.10 .........................................................................39

N.C. Gen. Stat. § 163-182.11 ......................................................................6, 38

N.C. Gen. Stat. § 163-182.12 ......................................................................6, 21

N.C. Gen. Stat. § 163-182.12 ...........................................................................8

N.C. Gen. Stat. § 163-182.14 ......................................................................6, 22

N.C. Gen. Stat. § 163-230.1 .....................................................................5, 6, 39

N.C. Gen. Stat. § 163-231 ...............................................................5, 6, 39

N.C. Gen. Stat. § 163-239 ...................................................................5, 6

N.C. Gen. Stat. § 163-258.2 ....................................................................5

N.C. Gen. Stat. § 163-258.17 ..................................................................5

**Other Authorities**

17A *Federal Practice and Procedure* § 4242 (3d ed.) ...........................................27

2 Russell J. Davis et al., *Cyclopedia of Federal Procedure* § 3:25
    (3d ed. Westlaw 2024) ...................................................................32

# INTRODUCTION

This is "a textbook case" for federal abstention. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 417 (5th Cir. 2020) (Costa, J., concurring in the judgment). Last month, Appellee Jefferson Griffin petitioned the Supreme Court of North Carolina for a writ of prohibition, asking his state's highest court to decide whether a state agency could lawfully count ballots cast in violation of North Carolina's voting laws. The Supreme Court of North Carolina was well positioned to decide Judge Griffin's claims expeditiously—until the Board removed this case to the district court below. Flouting the Supreme Court's longstanding directive that "[s]tate courts are adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), the Board insisted that only a federal court can resolve the application of North Carolina's laws in light of related federal interests. The district court correctly rejected that premise, recognized that there is no reason this case must be in federal court, and appropriately exercised its discretion to abstain from venturing guesses about these weighty state-law questions.

That should have been the end of federal proceedings. But the Board now seeks to delay things even more, asking this Court to resolve whether the district court's abstention decision was correct. It plainly was. This is a paradigmatic example of a dispute that presents difficult questions of uncommonly important state laws that are best resolved by a state court system charged with "establish[ing] a coherent policy with respect to a matter of

substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996). North Carolina's voting laws arise from the state's sacrosanct duty to safeguard the legitimacy of its elections by ensuring that only lawful ballots are cast and counted. And those very laws are being considered *at this very moment* by the Supreme Court of North Carolina, the only tribunal that can definitively decide their meaning. Indeed, that court might resolve Judge Griffin's claims in a matter of days. Whether as an application of *Burford* or *Pullman*, the district court's abstention decision is justified many times over.

The judgment below should be affirmed on that basis, but there are alternative grounds to affirm. As an initial matter, the district court lacked removal jurisdiction because a petition for a writ of prohibition is not a "civil action" subject to removal. Moreover, section 1443(2) permits removal only when a defendant is sued for "refusing to do any act," but here, Judge Griffin challenges *action*, not *inaction*. By its very nature, Judge Griffin's petition for a writ of prohibition asks the Supreme Court of North Carolina to command the Board to refrain from counting unlawful ballots.

Even if these jurisdictional and substantive barriers could be overcome, this Court cannot force a state court to return a remanded case. As the Board's own cases recognize, there is no "formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 80 (1st Cir. 2021). The absolute farthest reach of this Court's power would be to order the district court below to "request" that the North Carolina courts "return" this case.

*Id*. (cleaned up). But such a request might not even be granted, and in this case, there is no reason to even make the request in the first place. The state courts are best positioned to swiftly and finally resolve this time-sensitive dispute without further distraction or delay. *See United States v. Sastrom*, 96 F.4th 33, 40 (1st Cir. 2024) (declining to "direct[] the district court to attempt to retrieve th[e] case" because that would "require expending significant judicial resources" and "[t]he likelihood of this process providing any practical benefit" was "remote").

The decision below should be affirmed.

## STATEMENT OF JURISDICTION

For the reasons set out below, *see infra* Section II, the district court lacked removal jurisdiction. This Court has jurisdiction to review the district court's order abstaining and remanding under 28 U.S.C. § 1291. *See Quackenbush*, 517 U.S. at 711-15.

## ISSUES PRESENTED

1. Whether the district court appropriately exercised its discretion when it abstained from deciding the complex questions of state law presented in this state-election proceeding.

2. Whether the district court lacked removal jurisdiction.

3. Whether this Court should decline to order the district court to request the return of this case from the Supreme Court of North Carolina.

## STATEMENT OF THE CASE

### I. North Carolina Exercises Its Sovereign Prerogative to Regulate Voting and Decide Who May Vote.

Under the federal constitution, states have the power to determine "the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices." *Oregon v. Mitchell*, 400 U.S. 112, 125 (1970). Exercising that sovereign prerogative, the people of North Carolina have created a complex administrative system, grounded in the state constitution, in which the state's legislative, judicial, and administrative agencies all play an important role. Relevant here, North Carolina's constitution sets out several foundational requirements for voting in state elections, including the requirement that voters reside in the state. N.C. Const. art. VI, §2(1). That residency requirement has been in the state's constitution since 1776. N.C. Const. of 1776 art. VIII. The constitution further provides that only "legally registered" voters may vote in state elections. N.C. Const. art. VI, §3(1).

In addition to those bedrock constitutional guarantees, the North Carolina legislature has enacted various laws prescribing registration and voting requirements. It has codified by statute what the constitution already requires: Voters must register as "provided by law" to participate in the state elections. N.C. Gen. Stat. § 163-82.1(a). And since 2004, state law has required that voters provide their driver's license and social security numbers when they register to vote. N.C. Gen. Stat. § 163-82.4(a)(11). Additionally, since

2018, Article 20 of Subchapter VII of Chapter 163 General Statutes has required overseas voters to submit a copy of their photo identification along with their absentee ballot. *Id.* §§ 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1), 163-166.16(a). A separate state statute, Article 21A of that subchapter or the Uniform Military and Overseas Voters Act ("UMOVA"), layers on additional requirements for overseas absentee ballots, but it does not modify Article 20's requirements. *Id.* § 163-239.

The federal government has enacted its own laws to govern certain aspects of voting. Relevant here are the Help America Vote Act ("HAVA"), the Uniformed and Overseas Absentee Voting Act ("UOCAVA"), and the National Voter Registration Act, ("NVRA"). While those laws are substantively similar to North Carolina's laws, they apply only to elections for federal office. *See* 52 U.S.C. §§ 21081(a), 21083(A)(1)(a)(viii) (HAVA); *id.* §§ 20302 (a)(1)-(3), (6)-(8), (b)(1), (c) (UOCAVA); *id.* §§ 20507(a), (c)(2) (NVRA). For instance, HAVA imposes registration requirements similar to those in section N.C. Gen. Stat. § 163-82.4(a). But that North Carolina statute does not incorporate HAVA by reference. *See* N.C. Gen. Stat. § 163-82.4(a). Additionally, the federal UOCAVA sets out certain requirements for overseas absentee voters. And the state's UMOVA imposes some requirements like UOCAVA's. But the relevant sections of UMOVA do not incorporate UOCAVA by reference. *See* N.C. Gen. Stat. §§ 163-258.2(1), 163-258.17(b). In any event, the state constitution's residency and registration requirements, as well as the provisions of Article 20 of the North Carolina General Statutes

are untethered to any federal law. *See* N.C. Const. art. VI, § 2(1); N.C. Gen. Stat. §§ 163-82.1(a), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1), 163-166.16(a), 163-239.

Beyond the state's constitutional and statutory provisions, the administration of North Carolina's voting laws occurs in part through administrative agencies. In particular, the North Carolina legislature has invested the Board with the power to exercise "general supervision" over the state's elections, and, within the bounds of state law, to make "rules and regulations" governing them. N.C. Gen. Stat. §§ 163-22, 163-28. Further, the Board is authorized to sit as a quasi-judicial body to decide election protests through which candidates or voters may challenge the outcome of an election. *Id.* §§ 163-182.11, 163-182.12.

The state judiciary, for its part, reviews the Board's orders on election protests to ensure that they comply with state law. Judicial review of those orders is concentrated in one state trial court, the Superior Court of Wake County. *Id.* § 163-182.14(b). That court's decisions are subject to review only by North Carolina's two appellate courts. *Id.* §§ 7A-25, 7A-26. Moreover, North Carolina has an established policy of deciding election protests in a "fast-paced" manner, which is designed to swiftly resolve election disputes. *Bouvier v. Porter*, 386 N.C. 1, 16 (2024).

## II. Judge Griffin and Justice Riggs End the November 2024 Election in a Virtual Tie, and Judge Griffin Timely Files Election Challenges.

Judge Griffin is a U.S. Army veteran from a small town in eastern North Carolina. He has been a member of the state judiciary since 2015, and he has served as a judge on the North Carolina Court of Appeals since his election to that court in 2020.

In the November 2024 general election, Judge Griffin ran as a candidate for Seat 6 on the Supreme Court of North Carolina. His opponent, Justice Allison Riggs, had been appointed to Seat 6 by the North Carolina governor in 2023. After an initial canvass of the over 5.5 million votes cast in that election, fewer than a thousand votes separated the two candidates. JA34, 36.

Soon after the election concluded, Judge Griffin timely identified numerous irregularities involving ballots that violated the state constitutional and statutory provisions outlined above. JA369. As relevant here, those irregularities fell into three categories: (1) overseas absentee ballots cast by individuals who have never resided in the United States, let alone North Carolina; (2) ballots cast by voters who had failed to provide their driver's license or social security number when they registered to vote; and (3) overseas absentee ballots that had been submitted without photo copies of the voter's photo identification. JA107-08.

Accordingly, Judge Griffin timely filed a series of election protests with the county boards across the state, seeking to prohibit the counting of ballots

cast in violation of state law. *Id.* These protests identified the North Carolina state laws described above that provided the basis for Judge Griffin's challenges. None of the protests identified any federal law as a basis for his protest. As to relief, Judge Griffin requested only that the Board correct the vote count—that is, retabulate the election results without including those unlawful ballots. JA93. He did not ask the Board to remove any voters from the state's registration rolls. *Id.* Concurrently, Judge Griffin sent notice of his protests to affected voters. JA148-52.

Thereafter, pursuant to N.C. Gen. Stat. § 163-182.12, the Board assumed jurisdiction over those three categories of protests because they presented "legal questions of statewide significance." JA108. After a hearing, the Board issued a written order denying each of Judge Griffin's protests on state-law grounds. JA105-47. To begin, the Board determined that Judge Griffin had failed to properly serve voters with his protests under regulations the Board had promulgated. JA110-15. Then, as to the substance of Judge Griffin's state-law arguments, the Board first rejected Judge Griffin's argument that ballots cast by overseas voters who had never resided in the state violated the state constitution's residency requirement, reasoning that a state statute nonetheless permitted them to vote. JA133-36. Second, the Board determined that state law prohibited it from removing ballots cast by individuals who had not submitted their driver's license or social security numbers when they registered to vote because the Board had failed to instruct voters to do so and because not counting those votes would be contrary to the intent of

state law. JA124-27, 131-33. And third, the Board interpreted Article 20's photo-identification requirements not to apply to the UMOVA provisions under which overseas voters had submitted their absentee ballots (citing one of the Board's regulations in support) and rejected Judge Griffin's third category of protests on those grounds. JA136-41.

Although the Board rejected each of Judge Griffin's protests on state-law grounds, it raised in the alternative several federal laws that it claimed would have independently required the rejection of Judge Griffin's protests. First, the Board declared that Judge Griffin's method of service violated the Fourteenth Amendment's procedural-due-process requirements. JA115-18. Next, it declared that HAVA and the NVRA prohibited it from sustaining his protests regarding voters who had failed to properly register. JA130-31. Third, it explained that rejecting ballots cast by overseas voters who failed to provide copies of their photo identification would likely conflict with UOCAVA. JA141-43. And finally, with regard to each category of protest, the Board determined that enforcing state law would violate substantive due process. JA127, 136, 143. Having issued its order, the Board sat poised to issue a certificate of election to Justice Riggs, thereby mooting all of Judge Griffin's protests.

## III. Judge Griffin Asks the Supreme Court of North Carolina to Stay Certification Until His Timely Protests Are Lawfully Resolved.

Following the Board's decision, Judge Griffin timely filed a petition for a writ of prohibition in the Supreme Court of North Carolina, asking that

court to stop the Board from issuing a certificate of election and to prevent it from counting ballots cast in violation of state law. JA19-104. Judge Griffin's petition—like his election protests—arose under state law and argued that the Board was acting outside of its authority by threatening to count the contested ballots in violation of the state's constitutional and statutory requirements. *Id.* Judge Griffin's petition also asked the Supreme Court to reject the federal defenses that the Board had raised to defend its decision not to enforce state law. *Id*. Shortly after, Judge Griffin also petitioned the Superior Court of Wake County to set aside the Board's decision, asserting the same arguments he had made in the Supreme Court. *See Griffin v. N. Carolina State Bd. of Elecs.*, No. 5:24-cv-731 (E.D.N.C.), D.E. 1-4, 1-5, 1-6.

The Board subsequently removed Judge Griffin's petitions to federal court. As relevant here, the Board argued that the district court had removal jurisdiction over Judge Griffin's petition for a writ of prohibition under 28 U.S.C. §§ 1441(a) and 1443(2). JA13-18. Under section 1441(a), the Board argued that its federal defenses satisfied the U.S. Supreme Court's test for removing state-law claims raising federal questions. JA13-14. And under section 1443(2), the Board asserted that it had refused to sustain Judge Griffin's protests under the NVRA and the Fourteenth Amendment. JA14. The Board also declared in its notice of removal that the federal Civil Rights Act and the federal Voting Rights Act supported its decision. *Id.* But the Board never mentioned those statutes in its order denying Judge Griffin's protests. *Id*.; *cf.* JA105-47.

Soon after the Board removed this case, the district court permitted Justice Riggs and a nonprofit organization to intervene. Judge Griffin then moved for a preliminary injunction to halt the Board from issuing a certificate of election. In that motion, he argued (among other things) that the district court should abstain and remand the case. JA183-84. The district court thereafter ordered the Board to show cause why that court should not remand the case. JA9. But in its response to that order, the Board entirely disregarded Judge Griffin's abstention argument, and it failed to raise any argument why abstention was not appropriate. JA223-253. The district court ultimately issued an order abstaining and remanding this case to the Supreme Court of North Carolina. JA301-327. That same day the district court transferred jurisdiction over this case to the state's highest court by sending a letter regarding the remand to its clerk. JA328. The Board and Intervenors appealed, but they never requested that the district court stay its remand order. JA329-33.

After remand, the Supreme Court of North Carolina expedited further proceedings to reach a swift and just resolution of this election dispute. It entered an order prohibiting the Board from issuing a certificate of election and set an expedited briefing schedule for consideration of Judge Griffin's petition. JA334-35. Judge Griffin and the Board have now filed their opening briefs pursuant to that schedule. *Id.*

Meanwhile, the Board has moved this Court for a temporary administrative stay and a stay pending appeal. The Court did not rule on either, and

instead deferred consideration of both motions until it conducts plenary re-view on the merits. Dkt. 10, 33. This Court thereafter expedited briefing and oral argument. Dkt. 33.

This appeal is now ripe for consideration.

## SUMMARY OF THE ARGUMENT

**I.A.** The district court did not abuse its discretion by abstaining. *Burford* abstention applies in cases that present "difficult questions of state law bear-ing on policy problems of substantial public import whose importance trans-cends the result in the case" or where "adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 726-27 (cleaned up). Judge Griffin's state-law claims satisfy this test twice over.

**1.** First, these complex state-law questions are difficult because the par-ties offer competing interpretations of those laws, they are subject to multi-ple constructions, and neither of the state's appellate courts has interpreted them. Those laws implicate significant state policy choices regarding its sov-ereign prerogative to set the rules for state elections. And any decision re-garding those state laws would set the standard for how the state conducts future state elections.

**2.** Second, if a federal court decides these issues, that would disrupt the state's efforts to adhere to a coherent policy of referring election-protest

12

questions to a narrow set of state trial and appellate courts. That makes this a textbook case for *Burford* abstention.

**3.** None of Appellants' arguments against abstention is sound. Appellants' primary response is that a district court may not abstain from cases removed under 28 U.S.C. § 1443(2). But the United States Supreme Court has held that "the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718. Judge Griffin's petition clearly seeks discretionary relief. *State v. Inman*, 224 N.C. 531, 542 (1944). Moreover, federal courts have previously abstained in such cases. *See, e.g., Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997).

Appellants also argue that abstention is categorically inappropriate in voting-rights cases. But this Court recently abstained in such a case. *Wise v. Circosta*, 978 F.3d 93, 100-03 (4th Cir. 2020). And other courts "have stated that 'traditional abstention principles apply to civil rights cases,' including election-law cases involving important and potentially dispos[i]tive state-law issues." *Tex. Democratic Party*, 961 F.3d at 397 n.13 (citation omitted).

**B.** Alternatively, this Court may affirm the district court's decision under *Pullman*. If the Supreme Court of North Carolina were to decide these state-law questions in Appellants' favor, that would moot all the federal constitutional issues they have raised as defenses in this action. That makes this a "textbook case for *Pullman* abstention." *Id.* at 417 (Costa, J., concurring in the judgment).

13

**II.** The remand order should be affirmed for an alternative and independent reason: The district court lacked removal jurisdiction under 28 U.S.C. § 1443(2) and 1441(a).

**A.** As an initial matter, Judge Griffin's petition for a writ of prohibition is not a "civil action," as required for removal under both statutes. *See N.C. Pub. Serv. Co. v. S. Power Co.*, 104 S.E. 872, 873 (N.C. 1920); *see also Marshall v. Crotty*, 185 F.2d 622, 626 (1st Cir. 1950).

**B.** Judge Griffin's petition is not removable under section 1443(2), which permits removal where a party is sued for *refusing to act*. 28 U.S.C. § 1443(2); *see Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020). Here, Judge Griffin seeks to stop *action*—the wrongful certification of an election—not *inaction*.

**C.** Judge Griffin's petition is not removable under section 1441(a) because it arises under state law, and Appellants cannot satisfy the requirements set out in *Gunn v. Minton*. 568 U.S. 251, 258 (2013), to establish removal jurisdiction. Appellants primarily contend that Judge Griffin's state-law claims require courts to interpret federal law, but they misread *Republican National Committee v. North Carolina State Board of Elections*, which, unlike this case, involved claims inextricably bound up with federal provisions. 120 F.4th 390, 398-408 (4th Cir. 2024) ("*RNC*"). North Carolina has a sovereign prerogative to implement state laws providing additional requirements for voting in state elections, and it has done so here. There is no basis to conclude that the resolution of Judge Griffin's petition will have any substantial

14

impact on federal law as a whole, and there is no reason to doubt that the Supreme Court of North Carolina will fairly and conclusively resolve the state-law questions on which Judge Griffin's petition turns.

Appellants also argue that state courts are ill-equipped to decide questions regarding the federal defenses in this case. Not so. The United States Supreme Court has long held that "State courts are adequate forums for the vindication of federal rights." *Burt*, 571 U.S. at 19.

**III.** This Court should decline to order the "request" remedy Appellants seek. Appellants appear to recognize that this Court lacks the power to order the Supreme Court of North Carolina to return this case, and their lead case expressly confirms as much, as does a wall of authority from this and other Circuits. *See Cadence Educ.*, 15 F.4th at 80 (noting there is no "formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court"). The outermost limit of this Court's authority is to order the district court to respectfully request that the Supreme Court of North Carolina return this case. But it would be unwise to order that "request" remedy for multiple reasons. First, the Board and Justice Riggs insist that this dispute must be resolved expeditiously, but the way to ensure a speedy and just resolution is to allow North Carolina judges to decide North Carolina law without delay or distraction. Indeed, the parties have already submitted briefing to that court, and a conclusive decision resolving this dispute may arrive in a matter of days. Second, the "request" remedy rarely succeeds, and it is especially unlikely to do so here, where the parties and judiciary have already

15

expended considerable resources. It would be especially imprudent for this Court to expend even more judicial resources in a rush to judgment on the serious and complex issues of abstention and removal jurisdiction this appeal presents only to order a remedy that may be futile.

The decision below should be affirmed.

## STANDARD OF REVIEW

Because "a district court's decision to abstain" is discretionary, the Board cannot prevail without showing an "abuse of discretion." *Hennis v. Hemlick*, 666 F.3d 270, 274 (4th Cir. 2012). This standard of review is highly "deferential," *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 101 (4th Cir. 2022), and a district court's exercise of discretion is permissible "even if an appellate court suspects that it might have ruled otherwise in the first instance," *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002).

Whether the district court had removal jurisdiction is reviewed de novo. *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022). "The party seeking removal bears the burden of showing removal is proper." *Id.* (citation omitted). And because "removal jurisdiction raises significant federalism concerns," this Court "must strictly construe removal jurisdiction." *Id.* (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (citation omitted).

## ARGUMENT

## I. The District Court Did Not Abuse Its Discretion When It Abstained and Remanded This Fundamentally State-Law Dispute.

Applying highly deferential review, *see First Penn*, 304 F.3d at 348, there is no basis to disturb the district court's eminently reasonable decision to abstain from deciding the complex questions of state law Judge Griffin presented to the Supreme Court of North Carolina. Whether as an application of *Burford* or *Pullman*, it is not appropriate for a federal court to issue guesses as to the proper application of complex and critical state laws when the relevant state supreme court stands ready to resolve those very same questions.

## A. The District Court correctly abstained under *Burford*.

*Burford* gives district courts discretion to abstain when either of two circumstances is present. The first is when a dispute "presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Quackenbush*, 517 U.S. at 726-27 (cleaned up). The second arises when "adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*. (cleaned up). Federal courts apply these considerations to ensure due respect for "our system of dual sovereignty," *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 418 (4th Cir. 2013) (cleaned up).

Both of those circumstances are present in this case concerning the application of state voting laws to an internal statewide election. Accordingly, abstention is warranted twice over.

> **1.    This case presents difficult questions of state election law bearing on the state's sovereign power to regulate elections for state office, the importance of which transcends this case.**

The first *Burford* consideration—difficult questions of state law that transcend this dispute—supports abstention here.

First, Judge Griffin's state law claims implicate exceedingly important questions of North Carolina law. He raises, for example, whether North Carolina's photo-identification requirements apply to absentee ballots cast by overseas voters, JA71-77; whether the Board's regulations could lawfully permit overseas voters to cast absentee ballots without photo identification, JA75-77; or whether provisions of the state's Uniform Military and Overseas Voters Act—which, the Board says, allows overseas voters who have never resided in North Carolina to vote in state elections—are valid in light of the state constitution's residency requirement, JA62-71.

Those questions are unresolved, and the parties, through their sophisticated counsel, have raised "competing interpretations." *Wise*, 978 F.3d at 101. Indeed, the Board's order and Judge Griffin's arguments demonstrate that these state-law provisions are "susceptible to multiple interpretations." *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983). Yet neither the state's supreme court nor its court of appeals has so

18

much as hinted which is correct, let alone "conclusively" settled them. *Wise*, 978 F.3d at 101; *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013).[1] Any attempted resolution by federal courts would involve little more than a thin "prediction" about how the state's highest court would rule on these questions. *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S. Carolina*, 433 F.3d 365, 369 (4th Cir. 2005); *see Toloczko*, 728 F.3d at 398 (explaining that "North Carolina currently has no mechanism for [federal courts] to certify questions of state law to its Supreme Court.").

And these unresolved questions are exceedingly important to North Carolina's sovereign interest in regulating its internal elections. The Supreme Court has long recognized that "[n]o function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices." *Oregon v. Mitchell*, 400 U.S. 112, 125 (1970). It is hard to imagine a regime more "intimately involved" with a state's "sovereign prerogative," *La. Power & Light co. v. City*

---

[1] Intervenor NCARA points to a single state trial court's denial of a temporary restraining order, Dkt. 51 at 20, but that non-precedential ruling does not inform a federal court's prediction of how the Supreme Court of North Carolina would rule. *See Toloczko*, 728 F.3d at 398 (explaining that federal courts rely only on decisions of the state's highest court and intermediate appellate court).

*of Thibodaux*, 360 U.S. 25, 28 (1959), or that more strenuously calls for federal courts to avoid intervention and leave the state and its institutions "free to perform their separate functions in their separate way." *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 149 (4th Cir. 2024) (citation omitted). There can therefore be no doubt that the questions of state election law presented in this case bear on "policy problems of substantial public import." *Quackenbush*, 517 U.S. at 726-27. And these questions bear not only on this election, but future ones, too, as the district court correctly recognized. JA324.

*Burford* abstention exists to avoid sending federal courts into these "uncharted waters," *Toloczko*, 728 F.3d at 397, of critical state laws. This Court has counseled that federal courts should avoid the "treacherous waters of state political controversy," and that state courts—which are the "proper home for such questions of significant state policy"—should be "permitted the first opportunity" to resolve them. *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 720-21 (4th Cir. 1999). The district court simply honored that sage advice.

### 2. Federal intervention would unduly disrupt the establishment of a coherent state election policy.

The second *Burford* consideration also supports abstention. The integrity of North Carolina's internal elections is "a matter of substantial public concern," and a state-court ruling is the only way "to ensure uniform treatment." *Id.* at 719.

First, the application of North Carolina's voting laws to elections "for filling local public offices" is "essential" to the State's very "existence." *Oregon*, 400 U.S. at 125. Appellants do not dispute that the application of these laws is a matter of public concern.

Second, federal adjudication would "disrupt[] . . . efforts to establish a coherent policy." *Johnson*, 199 F.3d at 719. Only the North Carolina courts can "ensure uniform treatment" of these state-election issues. *Id.* The Supreme Court of North Carolina is the only "tribunal whose interpretation [of state law] could be controlling." *Thibodaux*, 360 U.S. at 30.

There is every reason for the federal courts to respect that sovereign interest in uniformity and abstain from needlessly interfering with the "complex administrative system," *Wash. Gas Light Co*, 711 F.3d at 418, that North Carolina uses to administer elections for state office. That system includes several elements. The North Carolina Assembly drafts the principal voting laws, and the Board, which exercises "general supervision" over North Carolina's elections, possesses the power to make "rules and regulations" within the bounds of state law. N.C. Gen. Stat. §§ 163-22, 163-28. The Board also often sits as a quasi-judicial body to decide, among other things, election protests—like it did when it issued the erroneous order which gave rise to Judge Griffin's petition. *See id.* §§ 163-182.11, 163-182.12; *Ponder v. Joslin*, 262 N.C. 496, 501 (1964) (explaining that the Board acts as a quasi-judicial body when resolving election protests). Indeed, state laws expressly state that the Board's orders are subject to review by the state judiciary, and they

21

specifically "concentrate[]" review in one state court, the Superior Court of Wake County. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*"); *see* N.C. Gen. Stat. § 163-182.14(b). In turn, the decisions of that state trial court may be reviewed only by North Carolina's appellate courts. *See* N.C. Gen. Stat. §§ 7A-25, 7A-26.[2]

This intricate framework indicates a policy choice that only those courts have the expertise to deal with the complications of state election protests—which in turn indicates the need for "comprehensive regulation" and "coherent polic[ies]." *Johnson*, 199 F.3d at 715-17, 723. These are the precise circumstances in which federal courts "must decline to interfere." *NOPSI*, 491 U.S. at 361 ("Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the . . . orders of state administrative agencies . . . ."); *see also Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 386 (4th Cir. 2000) ("[G]enerally federal courts review federal agencies and state courts review state agencies."). That this

---

[2] Contrary to the Board's suggestion, Dkt. 52 at 49, Judge Griffin both petitioned for judicial review in the Superior Court of Wake County and, given the need for expeditious review, petitioned for a writ of prohibition in the Supreme Court of North Carolina. *See Griffin v. N. Carolina State Bd. of Elecs.*, No. 5:24-cv-731 (E.D.N.C.), D.E. 1 (removing to federal court Griffin's petitions for judicial review from the Superior Court of Wake County). Petitioning the state appellate court that reviews rulings out of the Superior Court of Wake County is not "forsak[ing] the advantages of the single state forum in order to proceed in federal court." *Gross v. Weingarten*, 217 F.3d 208, 224 (4th Cir. 2000).

administrative scheme implicates the state's most sensitive public-policy concerns is even more reason to abstain. *See Johnson*, 199 F.3d at 723 (noting state courts "possess greater competence than the federal courts" to "decide questions of state law impacting state public policy").

In these circumstances, the federal courts should not risk the possibility of an incorrect guess about state law, which could lead to "different results" on the same claim, "as various courts might see things differently." *First Penn*, 304 F.3d at 350.

### 3.   None of the arguments against abstention are sound.

Appellants and amici raise five principal categories of counterarguments against the district court's decision to abstain. None demonstrates any error at all, much less an abuse of discretion.

***First***, they argue that federal interests predominate because the state laws underlying Judge Griffin's claims implement federal law. On the contrary, North Carolina exercised its sovereign prerogative to enact these laws, and they establish substantive rules subject to independent constructions by the state's highest court. Judge Griffin's claims therefore run squarely through state—not federal—law, and require an interpretation only of the former, not the latter.

Unlike the provisions of state law at issue in *Republican National Committee v. North Carolina State Board of Elections*, the statutes at issue here do not incorporate federal law by reference. 120 F.4th at 390. In that case, this Court reasoned that a federal district court could not decide the plaintiffs'

23

state-law claims without interpreting HAVA because the state law allegedly violated in that case did "nothing more than require the State Board to 'meet the requirements of [S]ection 303(a) of [HAVA].'" *RNC*, 120 F.4th at 401 (quoting N.C. Gen. Stat. § 163-82.11(c)). In this case, by contrast, the relevant state statutes set out their own substantive rules which are subject to independent constructions by the state's highest court. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State" even if the state and "federal statutes contain[] identical language"). Judge Griffin's claims therefore require an interpretation of state law, and federal law does not "dictate[]" that construction. *Cf.* Dkt. 65-1 at 10.

The fact that North Carolina uses a "unified" registration system for state and federal elections changes nothing. HAVA, UOCAVA, and the NVRA apply only to elections for *federal* office. *See* 52 U.S.C. §§ 21081(a), 21083(A)(1)(a)(viii) (HAVA); *id.* §§ 20302 (a)(1)-(3), (6)-(8), (b)(1), (c) (UOCAVA); *id.* §§ 20507(a), (c)(2) (NVRA). They cannot reach the counting of ballots in the state election at issue in this case. States have independent power to set the "qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices." *Oregon*, 400 U.S. at 125. North Carolina has done so here, and those laws control. Whether they should be interpreted to parallel federal

requirements for federal elections is a question for the Supreme Court of North Carolina, but one that need not be answered in this case.

The Board errs further when it suggests that Judge Griffin seeks "declaratory" rulings regarding federal statutes and the Fourteenth Amendment. Dkt. 52 at 16, 33. To be sure, Judge Griffin asks the Supreme Court of North Carolina to reject the Board's federal-law defenses, but the fact that federal issues "lurk[]" only as "defense[s]" to Judge Griffin's state-law claims supports abstention. *Educ. Servs.*, 710 F.2d at 174 (quoting *AFA Distr. Co., Inc. v. Pearl Brewing Co.*, 470 F.2d 1210, 1214 (4th Cir. 1973)).[3] Further, "the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *NOPSI*, 491 U.S. at 365. Indeed, "[s]tate courts are adequate forums for the vindication of federal rights" such as those the Board has raised as defenses here. *Burt*, 571 U.S. at 19. Ultimately then, the "mere presence" of these federal defenses "cannot mask the quintessentially state character of this controversy," where issues

---

[3] Justice Riggs relies on *Freeman v. Burlington Broadcasters, Inc.*, *see* Dkt. 50 at 26-29 (citing 204 F.3d 311 (2d Cir. 2000)), but that out-of-circuit decision does not support Appellants' argument. Even under their theory that Judge Griffin sought declaratory relief regarding the meaning of federal law, *see* Dkt. 52 at 16, *Freeman* would not apply. It expressly distinguished suits "seeking a declaratory judgment" and recognized that such a suit "might well not have been removable" because removability would turn on analysis of "the coercive action as to which a declaration is sought." *Freeman*, 204 F.3d at 318 & n.4.

"of state law and state public policy have dominated" this case from "day one." *Johnson*, 199 F.3d at 720, 722.

**Second**, Justice Riggs and the Board contend that abstention does not apply in cases removed under 28 U.S.C. § 1443, but "the authority of a federal court to abstain from exercising its jurisdiction extends to *all cases* in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718 (emphasis added). Justice Riggs and the Board insist that section 1443 "guarantees" a federal forum, Dkt. 50 at 21-26; Dkt. 52 at 42, but that could be said of all removal statutes. Abstention is nonetheless appropriate under removal statutes generally, *see, e.g.*, *Johnson*, 199 F.3d at 729 (ordering abstention and remand in a case removed on the basis of federal question jurisdiction), and section 1443 specifically, *see, e.g.*, *Neal*, 112 F.3d at 356; *Sones v. Simpson*, No. 10-CV-2475, 2010 WL 5490801, at *5 (M.D. Pa. Dec. 3, 2010).[4]

The Board and amici's reliance on *Greenberg v. Veteran*, 889 F.2d 418 (2d Cir. 1989), is unavailing. *See* Dkt. 53 at 15. That old, out-of-circuit decision devoted a single sentence of dicta to whether abstention is permitted in section 1443 removal cases even though the parties did "not address

---

[4] Justice Riggs also cites *Hammer v. U.S. Department of Health & Human Services*, an out-of-circuit decision about a different removal statute. *See* Dkt. 50 at 24 (citing 905 F.3d 517 (7th Cir. 2018)). But that case turned on the fact—absent here—that "*the federal government* ha[d] properly removed [the] case," and even that opinion allowed abstention in "extraordinary and exceptional circumstances." *Hammer*, 905 F.3d at 533 (emphasis added). These are such circumstances, as the district court correctly concluded. D.E. 50 at 22-27.

abstention" on appeal. *Greenberg*, 889 F.2d at 422. Appellants also cite cases discussing abstention after a section 1442 removal, *see* Dkt. 50 at 22, but those cases not only are distinguishable but also have been overruled by *Quackenbush*'s holding that "the authority of a federal court to abstain from exercising its jurisdiction extends to *all cases* in which the court has discretion to grant or deny relief." 517 U.S. at 718 (emphasis added).

*Third*, the Board and its supporters argue that abstention is categorically inappropriate in voting-rights cases, *see* Dkt. 52 at 46, but this Court recently abstained in such a case, *see Wise*, 978 F.3d at 100-03 (*Pullman* abstention in vote-dilution case). Other courts likewise "have stated that 'traditional abstention principles apply to civil rights cases,' including election-law cases involving important and potentially dispos[i]tive state-law issues." *Tex. Democratic Party*, 961 F.3d at 397 n.13 (citation omitted). Then-Judge Costa was quick to declare a recent Texas voting-rights case "a textbook case for *Pullman* abstention," *id.* at 417 (Costa, J., concurring in the judgment), specifically rejecting the argument "that *Pullman* does not apply to voting rights cases," *id.* at 418; *see also Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009); *Harrison v. NAACP*, 360 U.S. 167, 176-77 (1959). "[I]t is clear that there is no rule" providing "that there should not be abstention in civil rights cases." 17A *Federal Practice and Procedure* § 4242 (3d ed.) (collecting cases); *see also Quackenbush*, 517 U.S. at 718 (explaining that abstention applies in "all cases" seeking discretionary relief).

*Fourth*, Appellants suggest they were not given a chance to address abstention below, *see* Dkt. 50 at 16, but the record shows otherwise. Judge Griffin expressly raised abstention in his motion for a preliminary injunction, JA183-84, and the district court ordered the Board to explain why this case should not be remanded, JA9. The Board's filing nonetheless failed to mention abstention at all. JA223-253; *see* JA259 (noting that the Board and Intervenors failed to respond to Judge Griffin's abstention argument). That Judge Griffin framed his abstention argument around *Pullman* did not prevent the district court from considering *Burford*. Even a complete "failure to urge abstention on appeal does not prevent [courts] from applying it at [their] own instance." *Caleb Stowe Asscs., Ltd. v. Albemarle Cnty.*, 724 F.2d 1079, 1080 (4th Cir. 1984); *see MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, at 272, 277 (4th Cir. 2008) (affirming sua sponte abstention under *Burford*).

*Finally*, Appellants and amici object to the district court's invocation of *Thibodaux* because this is not a diversity case. *See* Dkt. 52 at 38 n.7. The district court did not err by citing *Thibodaux*'s reasoning in support of its decision to remand under *Burford*. JA324-26. This Court has explained that "[o]verlapping rationales" motivate all the abstention doctrines, and therefore "considerations that support abstaining under one will often support abstaining under another." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). Indeed, one of the Board's amici agrees, categorizing *Thibodaux* as one "example" of *Burford* abstention, and explaining that it should be "considered together

with *Burford*." Dkt. 51 at 21. The district court therefore did not err in buttressing its *Burford* analysis with references to *Thibodaux*'s reasoning.

*   *   *

The district court did not abuse its discretion when it abstained under *Burford*.

## B.    Alternatively, this Court should affirm the district court's decision to abstain under *Pullman*.

*Pullman* provides an alternative basis on which to affirm the district court's decision to abstain. This Court may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) (citation omitted). Judge Griffin argued below that the district court should abstain under *Pullman*, JA183-84; *see* JA275-77, and *Pullman* remains a proper basis for abstention.

Courts apply *Pullman* abstention when there is (1) "an unclear issue of state law presented for decision" (2) "the resolution of which may moot or present in a different posture the federal constitutional issues such that the state law issue is potentially dispositive." *W. Va. Parents for Religious Freedom v. Christiansen*, 124 F.4th 304, 306 (4th Cir. 2024). Both requirements are met here.

First, Judge Griffin's petition rests on interpretations of state law that remain unresolved. *See supra* Section I.A.1. As the parties' briefing reveals, these issues are hotly disputed, and "[t]his very conflict suggests that the

issue is far from settled." *Wise*, 978 F.3d at 101. The Board applied these unsettled state laws to deny Judge Griffin's protests in the first instance. *See generally* JA105-47. Only then did it alternatively deny the protests, claiming that sustaining them under state law would violate the Fourteenth Amendment. JA115-18, 127-29, 136, 143.

Second, were the Supreme Court of North Carolina to endorse the Board's interpretation of state law, the federal constitutional issues the Board has raised would be rendered moot. That makes this "a textbook case for *Pullman* abstention." *Tex. Democratic Party*, 961 F.3d at 417 (Costa, J., concurring in the judgment); *see also id.* at 397 n.13; *Wise*, 978 F.3d at 102 ("*Pullman* abstention [is] appropriate where the resolution of an issue concerning state [law] would moot the constitutional questions presented").

The NCARA intervenors counter that, even if *Pullman* applies, it cannot support remand. Dkt. 53 at 24 n.4. But "federal courts have the power" to "remand cases based on abstention principles" where "the relief begin sought" is "discretionary." *Quackenbush*, 517 U.S. at 731. As explained above, Judge Griffin's petition for a writ of prohibition indisputably seeks discretionary relief. Remand is therefore appropriate under *Pullman*. *See Toloczko*, 728 F.3d at 395 n.4 (stating that where "claims for discretionary relief are removed to federal court and a district court decides to abstain, the court should 'remand'"(citation omitted)).

Therefore, *Pullman* abstention provides an alternative basis for this Court to affirm the district court's remand order.

\*   \*   \*

The district court's decision to abstain and remand was not an abuse of discretion. This Court should therefore affirm the district court's order, which reflects a "wise and productive discharge" of its "judicial duty." *Thibodaux*, 360 U.S. at 29.

## II.   The District Court Lacked Removal Jurisdiction.

The remand order below should be affirmed for an alternative and independent reason: The district court lacked removal jurisdiction under sections 1443(2) and 1441. *See Flores-Granados*, 783 F.3d at 491 (this Court is "entitled to affirm on any ground appearing in the record"(citation omitted)). A petition for a writ of prohibition is categorically shielded from removal because it is not a "civil action" as sections 1443(a) and 1441 use that term. On top of that, section 1443(2) does not support removal jurisdiction because Judge Griffin's petition challenges action, not inaction. And section 1441 does not support removal jurisdiction because Judge Griffin's claims arise under state law.[5]

---

[5] The Board now attempts to belatedly invoke the federal Voting Rights Act and the federal Equal Protection Clause as bases for removal under section 1443(2), but its decision did not rely on those statutes, *see* JA105-47. It is too late to raise that new argument now. *See Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 206 (4th Cir. 2022).

## A. Judge Griffin's petition for a writ of prohibition could not be removed because it is not a "civil action."

As an initial matter, Judge Griffin's petition for a writ of prohibition is exempt from removal because it is not a "civil action" as sections 1443 and 1441 use that term. Rather, "civil action" is a term of art that simply does not encompass certain extraordinary writs including mandamus and prohibition.

That rule originates in the common law and has been squarely recognized by state and federal courts. Over a hundred years ago, the Supreme Court of North Carolina established "that a proceeding for a writ of mandamus in a state court is not a suit of a civil nature at law or in equity which can be removed from the state to the federal courts." *N.C. Pub. Serv. Co.*, 104 S.E. at 873; *see also Marshall*, 185 F.2d at 626. This Court itself has recognized that "a mandamus proceeding is not removable." *N.C. Pub. Serv. Co. v. S. Power Co.*, 282 F. 837, 840 (4th Cir. 1922). While these cases refer to "mandamus," the same reasoning applies to prohibition. Mandamus and prohibition are closely related; they are essentially two sides of the same coin, serving complementary purposes in directing or restraining judicial action. *State v. Whitaker*, 19 S.E. 376, 376 (N.C. 1894) ("The writ of prohibition is the converse of mandamus. It prohibits action, while mandamus compels action"). More recent authorities have affirmed that a mandamus proceeding "instituted in a state court is not removable." *Tasner v. U.S. Indus., Inc.*, 379 F. Supp. 803, 808 n.5 (N.D. Ill. 1974); *see also* 2 Russell J. Davis et al., *Cyclopedia of*

*Federal Procedure* § 3:25 (3d ed. Westlaw 2024) ("Removal of mandamus proceedings from a state court has been denied on the ground that the federal court has no original jurisdiction of them or that they are not civil actions.").[6]

There is every reason to think Congress chose to respect that longstanding history when it enacted sections 1443 and 1441, both of which limit removal to "civil actions." Indeed, Congress placed several deliberate limitations in the removal statutes. In 28 U.S.C. § 1451(2), Congress defined "[s]tate court," as used in sections 1443 and 1441, narrowly to exclude appellate courts. Specifically, Congress defined "[s]tate" to "include[] the District of Columbia," but "[s]tate court" to include only "the Superior Court of the District of Columbia." *See* 28 U.S.C. § 1451(2). Congress thereby specifically excluded the appellate court sitting above the D.C. Superior Court—the District of Columbia Court of Appeals. *See, e.g.*, *Shafique v. Equity Residential Real Est. Inv. Tr.*, No. 1:24-CV-00380 (UNA), 2024 WL 1989113, at *2 (D.D.C. May

---

[6] The Board attempts to support removal jurisdiction by citing three cases. But the first, *In re Smith*, 114 F.3d 1247, 1250 (D.C. Cir. 1997), concerns the Prison Litigation Reform Act, not a removal statute. The second, *Ponder v. Joslin*, 138 S.E.2d 143, 144 (N.C. 1964), merely suggested in passing that a case involving *both* mandamus *and* injunctive relief was a civil action. The third, *Harris v. U.S. Department of Transportation FMCSA*, 122 F.4th 418 (D.C. Cir. 2024), addresses different removal statutes and fact patterns. *See Harris*, 122 F.4th at 422 ("liberally constru[ing]" federal-officer-removal statute). None of these cases cast doubt on *North Carolina Public Service Co.*, much less hold that a writ of mandamus standing by itself constitutes a removable "civil action."

33

1, 2024) (case cannot be removed from the District of Columbia Court of Appeals); *Victoria Palms Resort Inc. v. City of Donna*, 234 F. App'x 179, 180 (5th Cir. 2007) (finding "no support for removal of *any* non-FIRREA cases to federal district courts while still on appeal in the state court system").

Because Judge Griffin's petition for a writ of prohibition is not a "civil action," it is not removable under sections 1443 or 1441. The judgment below can be affirmed on this alternative basis.

## B.   Section 1443(2) does not support removal jurisdiction.

By its terms, section 1443(2) applies only when a defendant is sued "for *refusing* to do an[] act," not when a defendant is sued for *acting* affirmatively or threatening to do so. 28 U.S.C. § 1443(2) (emphasis added). A "state court action" is not removable when it "is not brought against the . . . Defendants 'for refusing to do' anything." *Common Cause*, 358 F. Supp. 3d at 510. "[T]he 'refusal to act' clause is unavailable where the removing party's *action*, rather than its *inaction*, is the subject of the state-court suit." *City & Cnty. of S.F. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, No. 3:02-cv-3462, 2002 WL 1677711, at *4 (N.D. Cal. July 24, 2002).

Judge Griffin's petition does not challenge any refusal to act. By requesting "a writ of prohibition to stop the State Board of Elections from counting unlawful ballots," it seeks to prevent the Board from taking unlawful action. JA32; *see* Dkt. 52 at 9 ("Griffin filed a petition for writ of prohibition in the North Carolina Supreme Court seeking an order *prohibiting* Respondent

34

North Carolina State Board of Elections from counting certain ballots." (emphasis added)). It does not seek "to punish [the Board] for refusing to do any act." *Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (affirming remand to state court); *see also McQueary v. Jefferson Cnty.*, 819 F.2d 1142, 1987 WL 37567, at *1 (6th Cir. 1987) (table) (per curiam) (state officials who were sued for firing employees could not invoke section 1443(2) because they were not being sued for "refusing to do any act inconsistent" with federal law); *Wolpoff v. Cuomo*, 792 F. Supp. 964, 968 (S.D.N.Y. 1992) (the refusal clause does not allow "legislators who are sued because of the way they cast their votes[] to remove their cases to federal courts"); *Mass. Council of Constr. Emps., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980) (holding section 1443(2)'s refusal clause did not permit removal because "the defendants' actions, rather than their inaction, are being challenged").

Indeed, the very nature of a writ of prohibition is just what the name implies: It stops the respondent from acting. Accordingly, section 1443(2) does not support removal jurisdiction. *See Common Cause*, 358 F. Supp. 3d at 511 (holding the refusal clause did not apply because "Plaintiffs' prayer for injunctive relief" sought "to enjoin defendants from" acting and did "not seek an injunction compelling the Legislative Defendants to act").

### C.   Section 1441 does not support removal jurisdiction.

The district court correctly determined that removal under section 1441 was not proper. Section 1441 provides for removal as to certain cases that would fall under the district court's "original jurisdiction." 28 U.S.C. § 1441(a); *see Gunn*, 568 U.S. at 257 (noting removal is appropriate when federal law creates the cause of action); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. __, __, No. 23-677, 2025 WL 96212, at *9 (Jan. 15, 2025) ("[O]riginal jurisdiction and removal jurisdiction generally mirror each other in scope.").

Here, Judge Griffin's petition and election protests arise under state law rather than federal law, as the district court properly recognized. *See* JA19. The Supreme Court has identified a narrow category of state-law cases in which parties may invoke federal-question jurisdiction—those in which the federal question is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) resolvable in federal court without disrupting the federal-state balance. *See Gunn*, 568 U.S. at 258 (explaining that this is a "slim category" of cases); *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 307 (4th Cir. 2022) (same). All four requirements must be satisfied in order for the federal courts to exercise removal jurisdiction. *See W. Va. State Univ. Bd. of Governors*, 23 F.4th at 307 (explaining that all four requirements must be met for jurisdiction to be proper). Appellants come nowhere close to making the necessary showing.

36

*First,* under the well-pleaded complaint rule, federal jurisdiction depends on whether the plaintiff's claim necessarily raises a federal question, without regard for defenses or counterarguments. *See Wullschelger*, 2025 WL 96212, at *3 (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983)); *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 351 (4th Cir. 2024). Judge Griffin's election protests arise solely under state law and challenge the application of North Carolina election statutes. *See generally* JA19-104. Federal issues mentioned in his petition are limited to rebutting the Board's reliance on federal law as a defense. Because the core claims involve state-law violations without requiring interpretation or resolution of federal law, no federal question is "necessarily raised."

The Board and amici's arguments that federal laws like HAVA and UOCAVA are implicated fail because North Carolina's statutes establish the relevant rules without incorporating federal law by reference. *See* N.C. Gen. Stat. § 163-82.4(a)(11) (requiring a form to "request the applicant's . . . Drivers license number or . . . the last four digits of the applicant's social security number"). The Board acknowledges that Judge Griffin has brought "only state-law claims" but erroneously asserts that those claims "necessarily" raise federal-law issues. JA232-33. Judge Griffin expressly disclaimed any reliance on federal statutes, and his protests focus solely on state law. *See id.* at 284 ("HAVA and NVRA have nothing to do with this case"). The Board's invocation of federal laws as alternative defenses does not meet the jurisdictional threshold, again, because defenses cannot establish a federal question.

*See Wullschleger*, 2025 WL 96212, at *3 (citing *Franchise Tax Bd.*, 463 U.S. at 9-10); *Anne Arundel County.*, 94 F.4th at 351.

Amici's argument that HAVA is a necessary element of Judge Griffin's claim and that state law implements HAVA is a mischaracterization of the state law at issue here. Judge Griffin's claims can be resolved solely by reference to state law—a crucial fact that amici miss. *Compare* JA313, *with* Dkt. 65-1 at 4-11. Further, amici's reliance on *RNC* for this point is misplaced. *See* Dkt. 65-1 at 11. As the district court noted, "Section 163-82.4 is distinguishable in a key respect from the state statute at issue in *RNC*, which incorporated by express reference a federal standard. *See RNC*, 2024 WL 4523912, at *9 (evaluating N.C.G.S. § 163-82.1 l(c), which required State Board to 'update the statewide computerized voter registration list and database to meet the requirements of section 303(a) of [HAVA]')." JA312. Moreover, that relevant provisions of state law may be "coextensive with [] analogous federal [] provisions" does not mean that a state-law argument necessarily raises a federal-law issue. *Vlaming v. W Point Sch. Bd.*, 10 F.4th 300, 307 (4th Cir. 2021)*.*

**Second**, and on top of that, Appellants fail the "substantial" prong. Federal courts can exercise jurisdiction over federal questions only if those questions are "substantial," meaning significant "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id*. The Board cannot satisfy this "high bar," *Friedler v. Stifel, Nicolaus, & Co.*, 108 F.4th 241, 247 (4th Cir. 2024) (citation omitted), because the federal statutes it invokes do

not regulate state elections. *See* 52 U.S.C. §§ 21081(a), 21083(A)(1)(a)(viii) (HAVA); *id.* §§ 20302 (a)(1)-(3), (6)-(8), (b)(1), (c) (UOCAVA); *id.* §§ 20507(a), (c)(2) (NVRA); *see also* U.S. Const. art. I, § 4, cl. 1; *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (recognizing that Congress's Elections Clause authority does not extend to state elections). Instead, they regulate only federal elections. *See id*. So anything that a state court might say about those federal statutes in resolving an internal state election governed by state law necessarily cannot have any "substantial" impact on "the federal system as a whole." *Gunn*, 568 U.S. at 260.

What is more, the relief sought by Judge Griffin would not involve removing voters from rolls for federal elections, which is the federal interest those federal statutes seek to protect. Instead, it would only correct the vote count for his state election. Such relief falls outside the scope of these federal laws. *See* N.C. Gen. Stat. § 163-182.10(d)(2)(e)(1)-(2); *Bouvier*, 386 N.C. at 4. There thus is no basis to conclude that any relief Judge Griffin seeks is significant "to the federal system as a whole." *Gunn*, 568 U.S. at 260.

The Board's efforts to manufacture a "substantial" federal interest by invoking due process is equally flawed. The state laws at issue have been in force for years, *see* N.C. Const. of 1776, art. VIII; N.C. Const. art. VI, §§ 2(1), (4), 3(2); N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1), and interpreting them would not constitute a "new principle of law" under the Due Process Clause. *See Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 180, 191-93 (1990). Additionally, the Board's claims rest

on fact-specific questions, such as whether voters received sufficient notice through postcards with QR codes and whether the Board's failure to enforce state laws excused noncompliance. Fact-bound questions of this nature do not meet the substantiality standard for federal jurisdiction. *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2019).

There is another reason Appellants fail at the "substantial" prong: Appellants provide no evidence that the Supreme Court of North Carolina will disregard federal precedents when interpreting the federal statutes or constitutional provisions raised by the Board. *See Gunn*, 568 U.S. at 262 (that "state courts can be expected to hew closely to the pertinent federal precedents" counsels against finding that the federal questions in a case are substantial). Any novel federal questions, if significant, will eventually reach federal courts for resolution in other cases. *See id.* Further, this case concerns a state election, not a federal one, which further diminishes any potential effect on the federal system. For these reasons, the federal questions the Board raises are insubstantial, and its attempts to manufacture jurisdiction fail under well-established legal standards.

***Third,*** exercising federal jurisdiction in this case would disrupt the federal-state balance by intruding on the states' primary authority to regulate elections and review state agency decisions. *See Kirkpatrick*, 216 F.3d at 386 ("[G]enerally federal courts review federal agencies and state courts review state agencies."). Judge Griffin's claims arise under North Carolina law and addressing them in federal court would undermine state sovereignty. *See*

*Hutchison v. Miller*, 797 F.2d 1279, 1280 (4th Cir. 1986) (holding the "conduct of elections" for state offices is a "matter committed primarily to the control of states"); *see also Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("The Constitution grants States broad power to prescribe the Times, Places and Manner of holding Elections for Senators and Representatives, which power is matched by state control over the election process for state offices." (cleaned up)); *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) (explaining that under our federal system, "states are primarily responsible for regulating their own elections").

Federal courts generally avoid interpreting state constitutions or directing state officials to comply with state law, as such actions infringe on state sovereignty. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) (noting it is "fundamental" that state courts should be "left free and unfettered by [federal courts] in interpreting their state constitutions"); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995). Ultimately, it is the Supreme Court of North Carolina—and not the federal courts—which possesses "independent authority to interpret state constitutional provisions" thereby reflecting "the unique role of state constitutions and state courts within our system of federalism." *State v. Kelliher*, 381 N.C. 558, 580 (2022).

41

Exercising federal jurisdiction here would also incentivize removal of similar disputes, burdening federal courts with cases traditionally resolved at the state level. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315, 318-19 (2005) (noting that courts must consider whether maintaining jurisdiction over the federal questions will "attract[] a horde of original filings and removal cases raising other state claims" or "portend only a microscopic effect" on "the normal currents of litigation.").

The Supreme Court of North Carolina, not federal courts, is the appropriate forum to resolve issues involving the state's constitution and election laws, preserving the balance of judicial responsibilities in the federal system.

*       *       *

Whether the district court properly abstained, or whether it lacked removal jurisdiction in the first place, the outcome is the same: This case properly belongs in the Supreme Court of North Carolina.

## III. The Court Should Decline to Order the District Court to "Request" the Return of This Case from the Supreme Court of North Carolina.

Appellants appear to acknowledge that this Court lacks the power to formally order the Supreme Court of North Carolina to send this case back to federal court. They concede that the remand order below has already been fully effectuated. And their lead case explains that returning this case to federal court requires "the state court's cooperation" because federal courts lack "any formal procedural mechanism for the retrieval of a removed case

42

erroneously returned to a state court." *Cadence Educ.*, 15 F.4th at 80, 81.[7] So Appellants instead ask this Court to attempt to "retrieve" this case through the remedy *Cadence* recognized: an order directing the district court to "request" that the Supreme Court of North Carolina "return" it. Appellants are correct that this "request" remedy is the outermost limit of this Court's power, but this Court should decline to exercise its discretion to issue a "request" remedy for multiple reasons.

---

[7] This Court's precedents agree. It is black-letter law that once a case reaches a court outside this Court's appellate jurisdiction, this Court cannot claw the case back. That is why this Court generally refuses to review transfer orders (which are plainly analogous to remand orders) once they have already taken effect. *E.g.*, *In re Levy*, 173 F.3d 424, 1999 WL 134191, at *1 (4th Cir. 1999) (table) (per curiam) (holding "that the physical transfer of the Maryland district court's file to the Northern District of California divested this court of jurisdiction to entertain" a mandamus petition challenging the transfer); *Manchester v. U.S. Org. Crime Drug Enf't Task Force of Mid-Atl. Region*, 900 F.2d 253, 1990 WL 36734, at *1 (4th Cir. 1990) (table) (per curiam) (similar); *In re Manchester*, 892 F.2d 1041, 1989 WL 156941, at *1 (4th Cir. 1989) (table) (per curiam) (similar); *In re Martin*, 861 F.2d 265, 1988 WL 109303, at *1 (4th Cir. 1988) (table) (per curiam) (similar). This is consistent with the practice in other circuits: "It seems uncontroversial in this situation that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly." *In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015); *see also, e.g.*, *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 655 (6th Cir. 2009) (similar); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1517 (10th Cir. 1991) (similar); *In re Nine Mile Ltd.*, 673 F.2d 242, 244 (8th Cir. 1982) (similar); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc) (similar).

As an initial matter, the "request" remedy Appellants invoke appears to have been developed as a response to the reality that once a case has been transferred to a court of a different jurisdiction, appellate courts "lack jurisdiction to order the transferee district court to return the case." *Red Barn*, 794 F.3d at 484 (emphasis added) (footnote omitted). Indeed, *Cadence Education* cited *Alstom Caribe, Inc. v. George P. Reintjes Co., Inc.*, a case about the transfer of money between courts. 484 F.3d 106 (1st Cir. 2007). Recognizing that it could not "order a district court in another circuit to take a specific action," *Alstom* hoped the district courts would "act cooperatively" *Id.* at 116. Similarly, *Alstom* relied on *In re Warrick*, in which the underlying case had already been effectively transferred out of circuit. 70 F.3d 736, 740 (2d Cir. 1995). As a result, the *Alstom* court could "direct[] the district court to request return of the case" from the other district court but recognized it had "no power to compel the [other district] court to comply with the request." *Id.* at 737.

The principle prohibiting a court of appeals from ordering an out-of-circuit court to return a transferred case applies *a fortiori* after a case is remanded to state court. If this Court cannot compel lower federal courts outside the Fourth Circuit to act, then certainly it cannot compel a state court outside the federal judicial system to act. This Court lacks appellate jurisdiction over the Supreme Court of North Carolina just as surely as it lacks appellate jurisdiction over district courts in other circuits. "[T]he [*Rooker-Feldman*] doctrine reinforces the important principle that review of state court decisions must be made . . . eventually to the Supreme Court, not by federal

44

district courts or courts of appeals." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997).

Thus, as with transferred cases, the most this Court could do is "direct[] the . . . district court to request return of the file." *Levy*, 1999 WL 134191, at *1 (assuming *arguendo* the Fourth Circuit "possess[es] authority to" do so in the transfer context). This Court is "not, however, obligated to provide such a solution." *Sastrom*, 96 F.4th at 40. The First Circuit—in an opinion authored by Judge Selya, the author of *Cadence Education*—wisely declined to order such relief when "directing the district court to attempt to retrieve th[e] case" would have "require[d] expending significant judicial resources" and "[t]he likelihood of this process providing any practical benefit" was "remote." *Id.*

Here, there is no guarantee this case could be returned to federal court. Even when the court of appeals "direct[s] the district court and the clerk . . . to take every reasonable action possible in asking" for a case's "return," it "cannot predict whether the" case "will be returned." *Nine Mile*, 673 F.2d at 244 n.5.

Consider the Fifth Circuit's recent inability to retrieve a case transferred to the U.S. District Court for the District of New Jersey. A Texas federal district court had ordered "transfer to a district court outside the Fifth Circuit," meaning the Fifth Circuit "lack[ed] power to order a return of the case to our circuit." *Def. Distributed v. Bruck*, 30 F.4th 414, 423 (5th Cir. 2022). Accordingly, the appellate court settled for "[a] writ of mandamus . . . directing the

district court to: . . . [r]equest the District of New Jersey to return the transferred case to the Western District of Texas." *Id.* at 436-37.

But the New Jersey district court refused to send the case back. *See Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 240 (D.N.J. 2022). So the Fifth Circuit tried again, "respectfully ask[ing] the District of New Jersey to return the case to the Western District of Texas as requested." *Def. Distributed v. Platkin*, 48 F.4th 607, 608 (5th Cir. 2022) (Ho, J., joined by Elrod, J., concurring). But again, the New Jersey district court said no: "[T]his Court is not obligated to apply nonbinding out-of-circuit law in this case, and the doctrine of comity is not a valid means to achieve such a result." *Def. Distributed v. Platkin*, No. 3:19-cv-4753, 2022 WL 14558237, at *4 (D.N.J. Oct. 25, 2022). Eventually, the Fifth Circuit had to give up: "Although this court has politely requested that the New Jersey district court return the case, we can do no more." *Def. Distributed v. Platkin*, 55 F.4th 486, 493 (5th Cir. 2022).

Against this backdrop, this Court has little reason to exercise its discretion to attempt the "request" remedy here. First, Appellants have repeatedly insisted that speed is paramount, and Justice Riggs has insisted that the merits of this dispute must be resolved in the next few days, before the Supreme Court of North Carolina takes the bench for its February sitting. But the way to achieve swift and just resolution is to allow the state judiciary to explicate the application of state law to this dispute without distraction or further delay. A "request" remedy will only forestall the resolution Justice Riggs and the Board claim are urgently needed. And they cannot properly object to a

state court resolving their arguments about federal law, as the Supreme Court has squarely held that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt*, 571 U.S. at 19.

Second, as *Defense Distributed* and many other transfer cases make clear, the "request" remedy is unlikely to result in the return of this case. 55 F.4th at 493. Yet to fashion a "request" remedy, this Court first would have to invest substantial judicial resources in the rushed preparation of an emergency opinion resolving weighty questions of abstention and removal jurisdiction—serious matters of Circuit law that deserve careful deliberation. It would be unwise to hastily resolve the complex questions this appeal presents in order to rush out a remedial order likely to be little more than "a futile exercise," *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 376 (6th Cir. 2007), should the Supreme Court of North Carolina deny its "cooperation." *Cadence Educ.*, 15 F.4th at 80, 81.

All told, the better course is to allow the Supreme Court of North Carolina to resolve this dispute swiftly and with finality. This Court should "exercise [its] remedial discretion and decline to grant" the "return" remedy Appellants request. *Sastrom*, 96 F.4th at 40.[8]

---

[8] Some amici have raised remedial arguments that Appellants have not preserved here or in the district court. Federal appellate courts do "not consider arguments raised by an amicus that the party it is supporting never made." *Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 775 n.6 (5th Cir. 2018) (citation omitted); *see also United States v. Buculei*, 262 F.3d 322, 333 n.11 (4th Cir. 2001) ("An appellant and an amicus may not split up the issues and

CONCLUSION

This Court should affirm the district court's decision to abstain and re-mand, because the district court did not abuse its discretion. Alternatively, this Court should affirm because the district court lacked removal jurisdiction under 28 U.S.C. §§ 1443(2) and 1441. In any event, the Court cannot order the Supreme Court of North Carolina to return the case, and it should decline to direct the district court to seek such a return voluntarily.[9]

_____

expect the court to consider that they have all been raised on appeal." (cleaned up).

[9] Intervenors note that Judge Griffin asked the district court for a preliminary injunction enjoining the Board from certifying the election, and they ask this Court to issue an order denying Judge Griffin's requested injunction in the first instance. Dkt. 50 at 26-37; Dkt 53 at 27-28. The district court did not rule on Judge Griffin's motion for a preliminary injunction, and this Court should not do so either, as it is "a court of review, not of first view." *Pendleton v. Jividen*, 96 F.4th 652, 658 (4th Cir. 2024). Moreover, the Supreme Court of North Carolina has already effectively granted that motion by staying the Board's threatened certification, JA338-39, and no Appellant argues this Court has the power to set aside that state-court stay order.

Respectfully submitted.

/s/ *William T. Thompson*

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
  *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
will@lkcfirm.com

*Counsel for Petitioner-Appellee*

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitations in this Court's Local Rules and the Federal Rules of Appellate Procedure because it contains 12,329 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface: 14-point Palatino Linotype font.

Dated: January 22, 2025

*/s/ William T. Thompson*

William T. Thompson

## CERTIFICATE OF SERVICE

I certify that on January 22, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ William T. Thompson*

William T. Thompson