Nos. 25-1018, 25-1019, 25-1024

# In the United States Court of Appeals for the Fourth Circuit

JEFFERSON GRIFFIN;

*Plaintiff-Appellee,*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Defendant-Appellant,*

*and*

ALLISON RIGGS; NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, ET AL.,

*Intervenor-Appellants*

_____

From the United States District Court
for the Eastern District of North Carolina

_____

**BRIEF OF RESTORING INTEGRITY & TRUST IN ELECTIONS AS**
***AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE**

_____

PHILLIP J. STRACH
JORDAN A. KOONTS
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
301 HILLSBOROUGH ST., SUITE 1400
RALEIGH, NORTH CAROLINA 27603
PH: (919) 329-3800
PHIL.STRACH@NELSONMULLINS.COM
JORDAN.KOONTS@NELSONMULLINS.COM
*Counsel for Amicus Curiae Restoring
Integrity & Trust In Elections*

# <u>TABLE OF CONTENTS</u>

Interest of *Amicus Curiae* ...................................................................................3

Introduction ...........................................................................................................4

BACKGROUND ....................................................................................................4

Argument................................................................................................................6

   I. The Question of Never Resident Voting is a Novel Question of State Law
     Which a State Court Should Address as an issue of First Impression ...............7

    a. The NCSBE solely argues federal defenses, none of which confer
      jurisdiction. ...................................................................................................8

   II.  The District Court Recognized These Federalism Concerns and Properly
     Abstained ........................................................................................................11

    a.  *Burford* abstention.....................................................................................12

    b.  *Louisiana Power* abstention .......................................................................14

    c. The District Court did not abuse its discretion in applying either *Burford* or
      *Louisiana Power* abstention doctrine ..........................................................15

Conclusion ...........................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                      **<u>Page(s)</u>**

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ................................................................... 11, 12

*Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*,
   669 F.2d 940 (4th Cir. 1982) ................................................................ 16

*Dixon v. Coburg Dairy, Inc.*,
   369 F.3d 811 (4th Cir. 2004) .................................................................. 8

*Dunn v. Blumstein*,
   405 U.S. 330 (1974) ............................................................................. 10

*First Penn-Pac. Life Ins. Co. v. Evans*,
   304 F.3d 345 (4th Cir. 2002) ................................................. 11, 12, 13

*Flying Pigs, LLC v. RRAJ Franchising, LLC*,
   757 F.3d 177 (4th Cir. 2014) .................................................................. 8

*Hall v. Wake Cnty. Bd. of Elections*,
   280 N.C. 600, 187 S.E.2d 52 (1972) ...................................................... 6

*Harper v. Pub. Serv. Comm'n*,
   396 F.3d 348 (4th Cir. 2005) ................................................................ 11

*Hoke Cnty. Bd. of Educ. v. State*,
   382 N.C. 386, 879 S.E.2d 193 (2022) .................................................... 8

*Johnson v. Collins Entertainment Co., Inc.*,
   199 F.3d 710 (1999) ............................................................................. 13

*Louisiana Power & Light Co. v. City of Thibodaux*,
   360 U.S. 25 (1959) .................................................................... 14, 15, 17

*Martin v. Stewart*,
   499 F.3d 360 (2007) ...................................................................... 13, 14

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ............................................................................. 12

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ............................................................................. 13

**<u>Constitution</u>**
N.C. Const. art. VI § 2 ................................................................... 4, 6, 10

**<u>Statutes</u>**
52 U.S.C. § 20302(a) ................................................................................ 9
N.C.G.S. § 163-258 .................................................................................. 7

## <u>Other Authorities</u>

*Burford* Abstention and Judicial Policy Making,
   88 NYU L. Rev. 763 ............................................................................ 12

The Abstention Doctrine Reconsidered,
   37 Texas L Rev. 815 (October 1959)............................................... 10, 11

## INTEREST OF *AMICUS CURIAE*[1]

Amicus Restoring Integrity and Trust in Elections ("RITE") is a 501(c)(4) non-profit organization whose mission is to protect the rule of law in elections throughout the United States. RITE supports laws and policies that promote secure elections and enhance voter confidence in the electoral process. RITE also opposes unlawful executive and administrative actions such as allowing the counting of votes by ineligible nonresident voters. Pursuant to this mission, RITE has successfully litigated against unlawful ballot access practices across the nation and routinely files briefs in state and federal courts across the country on important issues regarding the qualifications for voting, including residency requirements. RITE has a very direct interest in the outcome of the appeal pending before the Court as it relates to Never Resident voting, an unlawful practice striking at RITE's core organizational mission.

---

[1] No persons or entities other than amicus curiae, its members, and its counsel, assisted in the preparation of this brief or financially contributed to its preparation.

## INTRODUCTION

Foundational principles of federalism dictate that federal courts should refrain from ensnaring themselves in pure issues of state law. This is especially true when the question presented is a novel issue of first impression. Here, one of those novel questions is: may persons who have never resided in the state of North Carolina lawfully vote in the state's elections? Under North Carolina law, the answer is, unequivocally, "no." However, in order to reach that answer, a court must confront and interpret questions purely of North Carolina law. The district court properly recognized that a state court should be the forum to decide these questions and in so recognizing, it abstained from further ruling. This Court should affirm the district court's well-reasoned exercise in discretion and its correct conclusion to abstain in favor of the matter proceeding in state court. To hold otherwise would turn the ideals of federalism on their head.

## BACKGROUND

The North Carolina Constitution establishes certain bedrock principles which dictate who may participate in the state's elections and who may not. One of those foundational prerequisites is that of residency; specifically, only residents of North Carolina may vote in its elections. N.C. Const. art. VI § 2. This requirement has existed since 1868, and for good reason. North Carolinians have a vested interest in

deciding their elected representatives at all levels. Persons who have never resided in the state do not.

Despite this threshold requirement, the North Carolina State Board of Elections ("NCSBE") allowed individuals who were born overseas and have never resided in North Carolina ("Never Residents"), to vote in the November 5, 2024 general election, including in Appellee's contest. This is a direct violation of the North Carolina constitution and an affront to state sovereignty. The NCSBE spurned its state law duties when it allowed Never Residents' votes to be counted. Qualified North Carolinian voters and candidates suffered the consequences.

The district court recognized the significant and unsettled questions of state law presented by Never Resident voting in Appellee's contest for the North Carolina Supreme Court. This reality, coupled with the serious federalism concerns which would be implicated in a federal court being the first to confront them, drove the district court to abstain from further ruling. The district court properly exercised its discretion in abstaining and remanding the matter to state court for continued proceedings. Amicus respectfully requests that this Court affirm the district court's decision and allow this matter to expeditiously progress in state court where it belongs.

# **ARGUMENT**

Allowing Never Residents to vote in Appellee's contest is "quite plainly unconstitutional." *Griffin v. NCSBE*, No. 320P24 (N.C. Jan. 7, 2025) (Dietz, J, dissenting on procedural grounds) (citing N.C. Const. art. VI § 2). The North Carolina constitution explicitly limits voting eligibility to residents of the state, providing: "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State." N.C. Const. art. VI § 2(1). This principle has been repeatedly reaffirmed by the North Carolina Supreme Court. *See, e.g., Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972). Nothing in state or federal law even permits, let alone requires, the NCSBE to extend voting franchise to Never Residents, but that is exactly what it has done.

Although straightforward, the district court properly recognized that addressing the novel question of Never Resident voting would require it to wade into an issue of state law as a matter of first impression. Accordingly, it abstained and remanded the matter to state court for expeditious resolution. This was both a proper exercise of discretion and well-grounded in established abstention doctrines. State courts have a vested interest in interpreting their own statutes and constitution. This Court should decline appellants' invitation to disrupt that balance.

6

## I.  The Question of Never Resident Voting is a Novel Question of State Law Which a State Court Should Address as an Issue of First Impression

North Carolina General Statute § 163-258.1—the Uniform Military and Overseas Voting Act ("UMOVA")—enumerates several categories of United States citizens who may vote in the state's elections despite living overseas. Many of these categories are non-controversial, mirroring those same persons who are enfranchised courtesy of federal law, including military personnel, their spouses and dependents, and certain civilians. However, North Carolina law addresses a category of covered person beyond those covered in federal law which federal law does not: an overseas person "who was born outside the United States . . . and, except for a State residency requirement" would be eligible to vote if their parent was eligible to vote in North Carolina and the person has not registered in another state. N.C.G.S. § 163-258.2(1)(e). Appellee has identified that the NCSBE allowed Never Residents to vote in his contest, presumably under this application of state law.

Because Never Residents admitted to having never resided and never intending to reside in North Carolina, they are prohibited from voting in the state's elections under the state constitution. *See id.* There is simply no plausible reading of state law or the state constitution which could permit the NCSBE's actions. The NCSBE's unlawful actions have very real consequences, including in Appellee's contest. Those consequences demand redress and a state court is the proper forum in which to seek it. *See Hoke Cnty. Bd. of Educ. v. State*, 382 N.C. 386, 457, 879 S.E.2d

7

193, 238 (2022) ("[C]onstitutional violations demand a just remedy," and the North Carolina Supreme Court "has the responsibility to protect the constitutional rights of the citizens.") (citation omitted).

At their core, the issues presented regarding Never Resident voting are intensely and exclusively matters of state law, predominating all related claims. The NCSBE cannot articulate any colorable basis which would confer jurisdiction to a federal court. And even if it could, the district court rightly abstained from further rulings due to the novel state law issues with which it was confronted.

### a. **The NCSBE solely argues federal defenses, none of which confer jurisdiction.**

"[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when **every** legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law[.]" *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 818 (4th Cir. 2004).

In this case, Appellee has done nothing more than assert that the NCSBE's conduct is in violation of the constitution of the state of North Carolina. There is no need to interpret any federal law, whether statutory or constitutional. All it calls for

is a comparison of a state statute to a state constitution. In short, there is nothing "federal" about Appellee's well-pled allegations at all.

As a threshold matter, Appellee's contest is for a state office and as such, state law applies. The NCSBE could not plausibly argue that the federal Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") applies to exclusively state elections, since it regulates only elections for federal offices. *See* 52 U.S.C. § 20302(a).[2] Further, even with respect to elections for federal offices, UOCAVA does not confer rights on Never Residents, who are entirely absent from its definitions of covered persons. Thus, whether North Carolina's constitution prohibits Never Residents from voting is purely one of state law. *See* § 20310(1) and (5).

The NCSBE attempts to conflate federal law's coverage for certain distinct categories of overseas voters with the UMOVA provision they used to allow Never Resident voting. That simply does not work. For UOCAVA to have any relevance, it must apply to Never Residents. Its application to other types of overseas voters is

---

[2] Notably, the NCSBE's arguments regarding federal law providing the basis for removal are further undercut by the fact that a factually similar matter—albeit one seeking relief for all state elections and not just Appellee's—has been pending in the North Carolina Supreme Court since October, 2024. *See Kivett, et al. v. NCSBE, et al.*, 281P24 (N.C. Sup. Ct. 2024).The NCSBE did not remove that matter, indicating that they believe a state court is the proper tribunal to resolve such claims.

of no moment. In fact, its lack of coverage for the voters at issue in this case *confirms* that Appellee's challenge on this issue presents no federal question.

Some proponents of Never Resident voting have attempted to infuse a federal constitutional question into this case, challenging the continued validity of North Carolina's residency requirement in the aftermath of the Supreme Court case *Dunn v. Blumstein*, 405 U.S. 330 (1974).[3] But *Dunn* and its progeny simply confirm the lack of any federal jurisdiction in this case. Even if a constitutional defense could establish jurisdiction those cases make clear that a state's *bona fide* residency requirements, such as the one found in Article VI, Section 2, raise no constitutional concerns. *See id.* at 343; *see also Holt Civic Club v. City of Tuscaloosa*, 439, U.S. 60, 68-69 (1978). *Dunn* struck down durational residency requirements while expressly carving out a state's continuing authority to craft *bona fide* residency requirements limiting voting to only residents of that state. *Dunn*, 405 U.S. 334. In other words, NCSBE could not, consistent with its obligations to follow the law, invoke the United States Constitution to defend its indefensible decision to allow Never Residents to participate in the state's elections. Accordingly, *Dunn* cannot plausibly be the source of federal jurisdiction in this case. In the end, Appellee has

---

[3] *See* State Board Defendants' Response in Opposition to Plaintiffs' Petition for Writ of Supersedeas and For Discretionary Review, *Kivett, et al. v. NCSBE, et al.*, 281P24, at p.3.

articulated theories for relief which do not implicate or require interpretation of federal law. Federal court jurisdiction is entirely lacking..

## II.   The District Court Recognized These Federalism Concerns and Properly Abstained

Federal courts have developed and applied the doctrine of abstention in response to "special problems which beset a federal union." Charles Alan Wright, The Abstention Doctrine Reconsidered, 37 Texas L Rev. 815, 815 (October 1959). One of the "special problems" to which abstention has regularly been applied is when a federal court with jurisdiction will nevertheless refrain from exercising that jurisdiction so as to "avoid unnecessary conflict with important state functions or a needless prediction as to matters on which the states speak with final authority." *Id.* The standard of review for a district court's order abstaining from exercising jurisdiction is abuse of discretion. *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 357–58 (4th Cir. 2005). "We may not disturb a district court's decision to abstain under *Burford* unless we find an abuse of discretion. That standard is a deferential one. A district court ruling may be a permissible exercise of discretion, even if an appellate court suspects that it might have ruled otherwise in the first instance." *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (internal citations omitted).

Even assuming the district court had jurisdiction—which it clearly did not— it did not come close to abusing its discretion in this case. In its order, the district

11

court rightly exercised its discretion after careful application of relevant precedents of the Supreme Court and this Court.

### a. *Burford* abstention

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) the Supreme Court articulated the principle that even if a federal court has jurisdiction over a proceeding, it "may, in its sound discretion . . . refuse to enforce or protect legal rights the exercise of which may be prejudicial to the public interest" because it is in the public interest that "federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Id.* at 317–18. Importantly, the *First Penn* court noted that *Burford* abstention is a factor "even in the absence of a state administrative proceeding." *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 351 n.3 (2002).

Subsequent opinions from the Supreme Court have funneled these general principles from *Burford* into a more concrete analytical framework. In *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989), the Supreme Court explained that, since it was first decided, the "*Burford* doctrine" had been distilled down to the principle that a federal court must "decline to interfere with [state] proceedings [ ]" when either of two situations are present: "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2)

where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 361 (internal quotation marks omitted).

The Fourth Circuit has tended to be particularly sensitive to federalism concerns in its application of the *Burford* doctrine. *See generally,* Kade N. Olsen, Note, *Burford* Abstention and Judicial Policy Making, 88 NYU L. Rev. 763, 774–775. For instance, in *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710 (1999), this court characterized *Burford* abstention as a balancing test requiring "assess[ment] [of] the interest in having federal rights adjudicated in federal court against state interests in the control of state regulatory programs." *Id.* at 723. The *Johnson* court noted that "the state system does possess greater competence than the federal courts to decide questions of law impacting state public policy, especially where state courts can fully vindicate any federal interest that may arise" and, thus, "*[t]he adequacy of state court review diminishes plaintiffs' interest in a federal forum.*" *Id.* (citations omitted) (emphasis added).

Several years after deciding *Johnson*, this Court reaffirmed its emphasis on the federalism concerns at the heart *Burford* abstention. In *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345 (2002), this Court emphasized that the "general concern" informing a *Burford* abstention question is "careful consideration of the federal interests in retaining jurisdiction and the competing concern for

'independence of state action,' that the State's interests are paramount and the dispute would best be adjudicated in a state forum." *Id.* at 348 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)) (internal citation omitted).

Finally, in *Martin v. Stewart*, 499 F.3d 360 (2007), this Court once again emphasized the broad federalism concerns inherent in the *Burford* abstention doctrine by noting that, while there is a strict duty to exercise jurisdiction as it is conferred on federal courts by Congress, *Burford* stands for the principle that a court may abstain from exercising that jurisdiction "only when the importance of difficult questions of state law or the state's interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 365.

**b. *Louisiana Power* abstention**

In addition to *Burford* abstention, another version of abstention was employed by the Supreme Court in *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). As the Fourth Circuit has acknowledged in its articulation of the *Burford* doctrine, the Court in *Louisiana Power* recognized that abstention was a "reflecti[on] [of] a deeper policy derived from our federalism." *Id.* at 28. The *Louisiana Power* Court noted that abstention is appropriate in certain proceedings which "intimately involve a sovereign prerogative" and "avoiding hazards or serious disruption by federal courts of state government or needless friction between state and federal authorities." *Id.* at 28. This Court has affirmed that *Louisiana Power*

14

presents an independent basis for abstention in cases "raising issues 'intimately involved with [the State's] sovereign prerogative,' where proper adjudication might be impaired by unsettled questions of state law." *Martin*, 499 F.3d at 364 (alteration in original).

    c. <u>**The District Court did not abuse its discretion in applying either the *Burford* or *Louisiana Power* abstention doctrines**</u>

Assuming the district court had jurisdiction—which it did not—its abstention conclusion in this case was correct. First,  the issues raised in this case reflect unsettled questions of state constitutional and statutory law bearing directly on North Carolina's right to self-government. This observation clearly aligns with the principle that abstention is warranted when an issue involves a state's sovereign prerogative. Here that prerogative is the manner in which states conduct election contests for state office. As the district court rightly observed, states are generally free to establish their own rules and qualifications for state election contests. *See* JA314. That is exactly what is at issue here.

Second, the district court's hesitancy to disrupt North Carolina's election dispute resolution process is also solidly grounded in the *Louisiana Power* goal of "avoiding hazards or serious disruption by federal courts of state government or needless friction between state and federal authorities." *Louisiana Power & Light Co.,* 360 U.S. at 28; *see also* JA324. In this case, defendants ask the federal courts to rule that federal law requires states to permit voting *in elections for state office* by

15

Never Residents—persons who have never lived in the state and have no intention of doing so—notwithstanding state constitutional prohibitions to the contrary. Such friction between state and federal authorities could easily spark a fire.

Finally, the district court found that abstention was warranted because the federal interest in this case is tenuous, and a state tribunal is competent to protect federal constitutional rights. *See* JA324-25. More accurate, the federal interest is best characterized as *null*. There's no federal statute at issue and the Supreme Court has clearly stated that there's no constitutional provision at issue either.

These rationales exemplify sound discretion in applying the *Burford* and *Louisiana Power* doctrines. As established, the question of Never Resident voting is intensely one of North Carolina law. And although its answer is "quite plainly unconstitutional," it is true that no state court has definitively addressed it. The district court properly concluded that a state court should be the first to  do so. Accordingly, abstention was warranted under either *Burford* or *Louisiana*. This Could should not disturb the district court's well-reasoned decision.

Should this Court direct the district court to resurrect a matter which it has already divested itself of jurisdiction, the risk of disruption and competing judgments becomes increasingly real. Neither Appellants nor *amici* in support of Appellants can cite to any authority empowering this Court or the district court to renege on the remand and retroactively halt ongoing state court proceedings. Indeed, the *Cox v.*

16

*Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940 (4th Cir. 1982) cited by the Democratic National Committee as amicus in support of Appellants makes clear that abstention under *Burford* requires dismissal of the federal matter. *Id.* at 942. There is simply no cognizable basis for the extraordinarily novel relief Appellants seek.

As established, nothing presented in Appellee's arguments touches on or impacts federal law in any way. Thus, even if this Court somehow determined a manner in which the case could return to a district court who has divested itself of jurisdiction, this Court would be requiring the district court to proceed, abstention doctrines notwithstanding. Requiring the district court to interpret the North Carolina constitution in this manner undoubtedly creates "needless friction between state and federal authorities." *Louisiana Power & Light Co.* 360 U.S. at 28.

## CONCLUSION

The district court did not abuse its discretion when it reaffirmed the applicability of certain well-established abstention principles touching on these foundational issues of federalism. This Court should affirm that decision and allow the matter to continue proceeding in North Carolina state court.

Respectfully submitted this, the 23rd day of January, 2025.

[*Signature on following page*]

17

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina Bar No. 29456
Jordan A. Koonts
North Carolina State Bar No. 59363
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
T: (919) 329-3800
F: (919) 329-3799
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Amicus Curiae Restoring
Integrity and Trust in Elections*

18

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing amicus brief complies with Local Rules 29(a)(5) and 32(g)(1) as it complies with all type-volume and page limitations, as indicated by the word-processing system used to prepare the document. The foregoing contains fourteen-point font and does not exceed 15 pages of text, excluding the items enumerated in Local Rule 32(f).

Respectfully submitted, this the 23rd day of January, 2025.

/s/ Phillip J. Strach
Phillip J. Strach

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 23rd day of January, I filed a true and accurate copy of the foregoing document with the Clerk of Court via the CM/ECF electronic filing system, which will send a copy to all counsel of record in the matter.

/s/ Phillip J. Strach
Phillip J. Strach

20